# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————x
                                                    :
In re SCOTTISH RE GROUP                 :        **Master File No. 06-cv-5853 (SAS)**
SECURITIES LITIGATION                    :
                                                    :
——————————————————————x

## <u>STIPULATION AND AGREEMENT OF SETTLEMENT</u>

WHEREAS, Scottish Re Group Limited ("Scottish Re" or the "Company"), certain of its current and former officers and directors (the "Individual Defendants" as defined below), the Underwriter Defendants (as defined below) and Ernst & Young LLP ("E&Y") have been named as defendants in one or more putative class actions brought by the State Teachers Retirement System of Ohio ("Ohio STRS") and other plaintiffs, on their own behalf and on behalf of specified class members, alleging that the defendants engaged in certain conduct in violation of the federal securities laws; and

WHEREAS, the class actions are pending before the Honorable Shira A. Scheindlin in the United States District Court for the Southern District of New York (the "Court"), and the Court has consolidated the class actions under the caption *In re Scottish Re Group Securities Litigation*, Master File No. 06-cv-5853 (SAS) (the "Action"); and

WHEREAS, Ohio STRS (the Court-appointed Lead Plaintiff for the Action), Scottish Re, the Individual Defendants, the Underwriter Defendants and E&Y have agreed to a settlement of the Action that, as set forth more fully below, is intended to fully and finally resolve the claims that purchasers of Scottish Re Securities during the Class Period (as defined below) have or could have asserted in the Action relating to their purchases of those securities;

1

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the undersigned, including Ohio STRS (individually and in its representative capacity) and Defendants, by and through their duly authorized respective counsel, that the Action and the matters raised by it are hereby settled and compromised as to each of the Defendants, that the Action will be dismissed on the merits and with prejudice as to each of the Defendants, and that the Plaintiffs' Released Claims will be released as to the Releasees based upon the terms and conditions set forth in this Stipulation and Agreement of Settlement (including the Release), subject to the Court's approval and its becoming Final.  This Stipulation and Agreement of Settlement is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure and Rule 408 of the Federal Rules of Evidence.

## I.    INTRODUCTION AND DEFINITIONS

### A.    Procedural History

1.    Beginning on or about August 2, 2006, eight putative class actions were filed by certain purchasers of Scottish Re securities against Scottish Re, certain of Scottish Re's officers and directors, certain banks who underwrote (and/or were Forward Purchasers) of two public securities offerings, and Scottish Re's independent auditors, E&Y, alleging violations of the federal securities laws.  The actions were styled: *Zuckerman v. Scottish Re Group Ltd., et al.*, Civil Action No. 06-05853 (SAS); *Komito v. Scottish Re Group Ltd., et al.*, Civil Action No. 06-05994 (SAS); *Dalos v. Scottish Re Group Ltd., et al.*, Civil Action No. 06-06005 (SAS); *Hickock v. Scottish Re Group Ltd., et al.*, Civil Action No. 06-06173 (SAS); *Margulies v. Scottish Re Group Ltd., et al.*, Civil Action No. 06-06385; *Rabin v. Scottish Re Group Ltd., et al.,* Civil Action No. 06-06414 (SAS); *Borroni v. Scottish Re Group Ltd., et al.*, Civil Action No. 06-07123 (UA), and *Baehr v. Scottish Re Group Ltd., et al*., Civil Action No. 06-cv-07907 (SAS).

2.      By Order Appointing the State Teachers Retirement System of Ohio as Lead Plaintiff, Approving Its Selection of Counsel as Lead Counsel for the Class, and Consolidating Related Actions entered October 13, 2006 ("October 13, 2006 Order"), these actions, together with any subsequently filed or transferred actions on behalf of purchasers of Scottish Re securities related to the claims asserted in these actions were consolidated for all purposes (the "Action").

3.      The October 13, 2006 Order, appointing Ohio STRS as Lead Plaintiff in the Action also approved its selection of Bernstein Litowitz Berger & Grossmann LLP as lead counsel for the putative class ("Lead Counsel").

4.      On December 4, 2006, Lead Plaintiff filed a Consolidated Class Action Complaint (the "First Complaint"), on behalf of a class consisting of all persons and entities who purchased or otherwise acquired Scottish Re Ordinary Shares, Non-Cumulative Perpetual Preferred Shares and/or convertible preferred shares of Hybrid Capital Units during the period February 17, 2005 through and including July 31, 2006, either in the Offerings pursuant to a Registration Statement or in the market and, who, upon disclosure of certain facts alleged in the First Complaint, were injured thereby excluding certain named persons and entities (the "Putative Class").

5.      The First Complaint asserted claims under Sections 11, 15 and 12(a)(2) of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.  The First Complaint generally alleges violations of the federal securities laws through, among other things, misstatements and omissions by the Defendants regarding the Company's accounting for deferred tax assets in its financial statements and its certifications of the adequacy of the Company's internal controls.

6.      In March 2007, Defendants filed motions to dismiss all claims against them in the Action.  By Order dated November 1, 2007, the Court denied the motions, except with respect to the claim asserted against E&Y for violation of Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

7.      On December 21, 2007, Defendants filed their respective Answers to the First Complaint.

8.      On July 11, 2008, Lead Plaintiffs filed the Amended Consolidated Class Action Complaint (the "Amended Complaint") which (i) extended the Class Period through and including February 20, 2007 (the "Extended Class Period") based on allegations of additional misrepresentations and omissions relating to Scottish Re's accounting for its deferred tax assets and internal controls during the Extended Class Period, (ii) repled the previously dismissed Section 10(b) claim against E&Y; and (iii) added additional factual allegations relating to Plaintiffs' previously pled claims;

9.      On July 18, 2008, E&Y moved to dismiss the repled Section 10(b) claim against it as well as the claim for the Extended Class Period and, on July 23, 2008, the Scottish Re Defendants and the Underwriter Defendants each filed motions to dismiss the claims for the Extended Class Period.

10.      On August 1, 2008, following three full-day mediation sessions, Lead Plaintiff reached an agreement in principle to settle with Scottish Re, the Individual Defendants and the Underwriter Defendants.  These defendants agreed to withdraw their pending motions to dismiss the Amended Complaint.  The Court was notified of these agreements.

11.      On August 1, 2008, Lead Plaintiff filed its opposition to E&Y's motion to dismiss.

4

12.     On August 6, 2008, after additional negotiations, Lead Plaintiff reached an agreement in principle to settle with E&Y.  The parties advised the Court that there now was an agreement in principle for a global settlement of the Action.

**B.     Discovery**

1.     On December 7, 2007, Lead Plaintiff served its first set of requests for document production on Defendants.  Thereafter, Lead Plaintiff issued subpoenas for document production on certain third parties and additional requests for production on certain of the Defendants.

2.     On January 15, 2008, Defendants served their responses and objections to Lead Plaintiff's first set of requests for production.  There were extensive negotiations between the parties regarding the scope of production and the protocol for electronic production of documents.

3.     In total, Defendants and certain third parties have produced millions of pages of documents in response to Lead Plaintiff's requests.  Plaintiffs have expended considerable time and effort to review and analyze the documents.

4.     At the time the agreement in principle to settle was reached, numerous fact depositions were scheduled to begin which, according to the Court-ordered schedule, were to be completed no later than September 15, 2008.

5.     Lead Plaintiff also retained experts to consult on issues relating to liability, accounting, damages and materiality.  Lead Counsel was working with these experts to analyze the issues and documents produced as well as to prepare for expert discovery.

C.      Settlement Discussions

1.      In February 2008, counsel for Scottish Re and the Individual Defendants broached the subject of settlement with Lead Counsel.  On February 20, 2008, these defendants' counsel made a detailed presentation to Lead Counsel setting forth their view of the case and its strengths and weaknesses.  Lead Counsel advised defendants' counsel that it was premature to discuss settlement at that time as they had only begun to receive documents in response to their discovery requests and would not discuss settlement until they had the opportunity to review the evidence and make their own assessment of the strengths and weaknesses of the case.

2.      On May 21–22, 2008, the parties engaged in a mediation session under the auspices of the Honorable Layn R. Phillips, formerly United States District Judge in Oklahoma City.  In connection with that mediation, the parties each prepared detailed mediation statements which they exchanged, as well as statements in reply.  After two-full days of intense arm's-length negotiations no agreement to settle was reached and the parties resumed the active litigation of the case.

3.      In June and July, with the assistance of Judge Phillips, the parties continued to explore the possibility of settlement and a third day of mediation before Judge Phillips was scheduled for July 30, 2008.  At the close of that day's session Lead Plaintiff was close to an agreement with Scottish Re, the Individual Defendants and the Underwriter Defendants which, pursuant to further discussions over the next two days, was reached on August 1, 2008.

4.      Discussions with defendant E&Y continued over the next week under the auspices of Judge Phillips and, on August 6, 2008, an agreement in principle to settle was reached with E&Y, the last remaining defendant.

D.      **Settlement Considerations**

1.      Based upon their investigation and evaluation of the facts and law relating to the Claims alleged in this Action, Lead Counsel's pre-filing investigation, the discovery already obtained from Defendants and from certain third parties, Lead Plaintiff and Lead Counsel have agreed to settle the Action and release the Releasees with respect to the Plaintiffs' Released Claims pursuant to the terms of this Settlement Agreement and subject to Court approval after considering, among other things:  (*i*) the substantial benefits that the terms of this Settlement Agreement would provide to Class Members; (*ii*) the attendant risks of litigation, especially in complex actions such as this, the defenses available to Defendants, and the difficulties and delays inherent in such litigation; (*iii*) the attendant risk that the Court would grant Defendants' motions to dismiss the claims for the Extended Class Period and/or E&Y's motion to dismiss the repled Section 10(b) claim against it; (*iv*) the financial condition of Scottish Re; (*v*) the desirability of consummating this Settlement Agreement promptly to provide effective relief to Class Members, and (*vi*) Lead Plaintiff's and Lead Counsel's belief, supported by the discovery record, that the settlement is fair, reasonable, and adequate, and in the best interests of Class Members.

2.      Each Defendant expressly denies the wrongdoing alleged in this Action and does not concede any wrongdoing or liability in connection with any facts or Claims that have been or could have been alleged against it in the Action. However, Defendants consider it desirable for the Action to be settled and dismissed because the proposed settlement will, among other things:  (*i*) bring to an end the substantial expense, burdens, and uncertainties associated with continued litigation of the Claims made in this Action; (*ii*) finally put to rest those Claims and the underlying matters, and (*iii*) confer substantial benefits upon Defendants, including, without limitation, the avoidance of further expense and the disruption of the management and

operation of their respective businesses due to the pendency and defense of the Action. This Settlement Agreement, the offer of this Settlement Agreement, and compliance with this Settlement Agreement shall not constitute or be construed to be an admission by Defendants or the Releasees, or any of them individually, of any wrongdoing or liability.

3.     Except as provided in Subsection XIV.R below, this Settlement Agreement shall not be admissible in any judicial, administrative, or other proceeding or cause of action as an admission of liability or for any purpose other than to enforce the terms of this Settlement Agreement or any related insurance release.

**E.     Definitions**

As used in this Settlement Agreement, the following terms have the meanings set forth herein:

1.     "Action" means the consolidated securities class action pending in this Court under the caption *In re Scottish Re Group Securities Litigation*, Master File No. 1:06-cv-05853 (SAS), including all cases consolidated therein.

2.     "Amended Complaint" means the Amended Consolidated Class Action Complaint filed by the Lead Plaintiff in the Action, on or about July 11, 2008.

3.     "Approval Date" means the date on which the Final Judgment and Order of Dismissal is entered by the Court.

4.     "Attorneys' Fees and Expenses Application" means the motion for fees and expenses to be made by Lead Counsel pursuant to Section IX below.

5.     "Attorneys' Fees and Expenses Award" means the amounts awarded to Lead Counsel to compensate them for their fees and expenses in connection with investigating, prosecuting, and/or settling the Action as provided for in Section IX below.

6.      "Authorized Claimant" means a Class Member (or the representative of such Class Member, including, without limitation, agents, administrators, executors, heirs, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.(b), or assigns) who submits a valid and timely Proof of Claim to the Claims Administrator, in accordance with the requirements established by the Court.

7.      "Claim" or "Claims" means any and all actions, causes of action, proceedings, adjustments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, damages, demands (whether written or oral), agreements, promises, liabilities, controversies, costs, expenses, attorneys' fees, and losses whatsoever, whether in law, in admiralty, or in equity and whether based on any federal, state, or foreign statutory or common-law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, existing now or to be created in the future, including Unknown Claims.

8.      "Claimant" means a person or entity that submits a Claim Form to the Claims Administrator seeking to share in the proceeds of the Settlement Fund.

9.      "Claims Administrator" means, subject to Court approval, the third-party agent(s) or administrator(s) that the Court shall appoint in the Preliminary Approval Order to effectuate providing notice to the potential Class Members, to process Proof of Claim forms, and to administer and distribute the Net Settlement Amount in accordance with the terms of this Settlement Agreement.

10.      "Class" or "Class Members" means, for purposes of this settlement only, all persons and entities who purchased or otherwise acquired Scottish Re Ordinary Shares, Non-Cumulative Perpetual Preferred Shares ("Preferred Shares") and/or Convertible Preferred Shares

of Hybrid Capital Units ("HyCU Shares") in the Offerings, or on the open market, between February 17, 2005 and February 20, 2007, inclusive, and who, upon disclosure of certain facts alleged in the Amended Complaint, were injured thereby.  Excluded from the Class are:  (a) Defendants; (b) Immediate Family Members of the Individual Defendants; (c) the majority-owned subsidiaries and affiliates of Defendants; (d) any person or entity who is or during the Class Period was a partner, executive officer, director, or controlling person of Scottish Re (including any of its subsidiaries of affiliates) or any other Defendant; (e) any entity in which any Defendant has a Controlling Interest, provided that any Investment Vehicle shall not be deemed an excluded person or entity by definition); and (f) the legal representatives, heirs, successors and assigns of any such excluded party.  Also excluded from the Class are any persons who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.

11.     "Class Period" means, for the purposes of this Settlement only, the period between February 17, 2005 and February 20, 2007, inclusive.

12.     "Class Period Shares" means shares of Scottish Re Securities, as defined below, purchased or acquired during the Class Period.

13.     "Complete Bar Order" means the bar order, the text of which is set forth in Subsection XI.C below.

14.     "Confidentiality Order" means the Stipulated Protective Order entered into by Lead Plaintiff and Defendants and so ordered by the Court on May 5, 2008.

15.     "Controlling Interest" means an interest in an entity where such interest is sufficient to allow the interest holder directly or indirectly to direct or cause the direction of the management and policies of the entity, whether through the ownership of voting shares, by contract, or otherwise; provided that any disputes as to whether any of the Releasees have a

Controlling Interest in an entity or whether an entity has a Controlling Interest in any of the Releasees shall, for purposes of determining whether a Controlling Interest exists under this Settlement Agreement and for that purpose only, be submitted to the Court for resolution, and the Releasee shall, as the case may be, bear the burden of proof as to whether or not the interest is or was a Controlling Interest for purposes of this Settlement Agreement.

16.    "Court" means the United States District Court for the Southern District of New York, in which this Action is pending.

17.    "Defendants" means Scottish Re, the Individual Defendants, the Underwriter Defendants, and defendant E&Y.

18.    "Defendants' Counsel" means the law firms of Dewey & LeBoeuf LLP, Davis Polk & Wardwell, Hughes Hubbard & Reed LLP and Latham & Watkins LLP.

19.    "Defendants' Released Claims" means each and every Claim or Unknown Claim that has been or could have been asserted in the Action by any of the Defendants and their respective Releasees against the Lead Plaintiff, other Class Members, or their attorneys arising out of or relating in any way to the institution, prosecution, or settlement of the Action (except for claims to enforce the Settlement).

20.    "Escrow Account" means the interest-bearing account described in Section II below, into which the Settlement Amount shall be paid, which account shall be treated for tax purposes as a Qualified Settlement Fund, as defined below.

21.    "Escrow Agent" means the individual or entity acting as escrow agent for the Escrow Account.

22.    "Execution Date" means the date by which this Settlement Agreement has been executed by all Settling Parties.

23.    "E&Y" means defendant Ernst & Young LLP.

24.    "E&Y Releasees" means each and all of E&Y, any and all of its parents, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), divisions, business units, subsidiaries, and entities in which E&Y has a Controlling Interest or that have a Controlling Interest in it, and each of the member firms of Ernst & Young Global Limited.

25.    "Fairness Hearing" means the hearing at or after which the Court will be asked to make a final decision, pursuant to Fed. R. Civ. P. 23, as to whether this Settlement Agreement is fair, reasonable, and adequate to settle the Class Members' Claims against the Defendants and, therefore, should be approved by the Court.

26.    "Final" means, when used in connection with any court order or judgment, that the relevant order or judgment will be final:

a.    if no appeal is taken therefrom, on the date on which the time to appeal therefrom (including any potential extension of time) has expired; or

b.    if any appeal is taken therefrom, on the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc, and petitions for certiorari or any other form of review, have been finally disposed of, such that the time to appeal therefrom (including any potential extension of time) has expired, in a manner resulting in an affirmance of the Final Judgment and Order of Dismissal.

27.    "Final Judgment and Order of Dismissal" means the judgment entered by the Court as contemplated in Section XI of this Settlement Agreement, which judgment shall be substantially in the form set out as Exhibit B.

28.    "Final Settlement Date" means the date on which the Final Judgment and Order of Dismissal becomes Final.

29.     "HyCU Shares" means Scottish Re convertible preferred shares of Hybrid Capital Units.

30.     "Immediate Family Members" means an individual's father, mother, grandfather, grandmother, sister, brother, spouse/partner, son, and/or daughter.

31.     "Individual Defendants" means Scott Willkomm, Elizabeth Murphy, Dean E. Miller, Michael C. French, Michael Austin, William Caulfeild-Browne, Robert Chmely, Lord Norman Lamont, and Hazel O'Leary.

32.     "Individual Notice" means the notice described in Subsection III.A substantially in the form of Exhibit A-1 hereto, as approved by the Court, that Lead Counsel or the Claims Administrator will disseminate to potential Class Members informing them of the settlement contemplated by this Settlement Agreement.

33.     "Investment Decision" means a decision regarding an investment in Scottish Re Securities, including, without limitation, a decision to buy, sell, otherwise dispose of, or hold Scottish Re Securities.

34.     "Investment Vehicle" means any investment company or pooled investment fund, including but not limited to mutual fund families, exchange-traded funds, fund of funds and hedge funds, in which any Underwriter Defendant has or may have a direct or indirect interest, but in which the Underwriter Defendant is not a majority owner and does not hold a majority beneficial interest.  This definition does not bring into the Class any of the Underwriter Defendants.

35.     "Lead Counsel" means the law firm of Bernstein Litowitz Berger & Grossmann LLP.

36.    "Lead Plaintiff" means the State Teachers Retirements System of Ohio ("Ohio STRS"), in its individual capacity and in its capacity as the representative of the Class.

37.    "Net Settlement Amount" or "Net Settlement Fund" means the balance remaining in the Escrow Account (including any interest that has accrued less Tax Expense paid or owing) after payments of the Notice and Administration Expenses and the Attorneys' Fees and Expenses Award pursuant to Sections II and IX below have been made.

38.    "Nominees" means brokerage firms, banks, and other institutions that hold Scottish Re Securities in street name or other similar fashion for the benefit of another person or entity.

39.    "Notice and Administration Expenses" means all expenses associated with the administration of the settlement contemplated by this Settlement Agreement, including, but not limited to, the fees and expenses associated with printing and sending the Individual Notice to potential Class Members, publishing the Summary Notice, assisting Class Members with filing Proofs of Claim, processing Proofs of Claim, setting up and maintaining the toll-free telephone number, and distributing the Net Settlement Amount; *provided*, *however*, that Notice and Administration Expenses shall not include the amount of the Attorneys' Fees and Expenses Award.

40.    "Offerings" means, collectively, the July 2005 public offering and sale of Scottish Re Preferred Shares and the December 2005 public offering of Scottish Re Ordinary Shares pursuant to registration statements.

41.    "Ordinary Shares" means the ordinary shares of Scottish Re that were listed on the New York Stock Exchange under the symbol "SCT" during the Class Period.

42.    "Plaintiffs' Counsel" means Lead Counsel, and all other counsel who, at the direction and under the supervision of Lead Counsel, represent members of the Class in the Action.

43.    "Plaintiffs' Released Claims" means each and every Claim or Unknown Claim that Lead Plaintiff, or any other Class Member (*i*) asserted against any of the Releasees in the Action (including all Claims asserted in the First Complaint or the Amended Complaint) and (*ii*) could have asserted or could assert against any of the Releasees, whether arising under any federal, state, or foreign statutory or common-law rule, in any court, tribunal, agency, or other forum, that arises out of or relates to the conduct alleged in the First Complaint or the Amended Complaint and to the purchase, sale, other disposition of, or decision to hold or any other Investment Decision concerning any securities of Scottish Re during the Class Period by any person or entity during the Class Period.

44.    "Plan of Allocation" means the terms and procedures for allocating the Net Settlement Amount among, and distributing the Net Settlement Amount to, Authorized Claimants, or such other Plan of Allocation as the Court shall approve.

45.    "Preferred Shares" means Scottish Re's Non-Cumulative Perpetual Preferred Shares.

46.    "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order.

47.    "Preliminary Approval Hearing" means the hearing at or after which the Court preliminarily approves this Settlement Agreement.

48.    "Preliminary Approval Order" means the order to be entered by the Court, substantially in the form set out in Exhibit A hereto, (*i*) preliminarily approving the proposed

settlement, (*ii*) certifying the Class for settlement purposes, (*iii*) appointing the Claims Administrator, (*iv*) preliminarily determining that the proposed provision of notice to potential members of the Class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, the PSLRA, the Constitution of the United States, and any other applicable law, and that such notice is the best practicable notice under the circumstances and constitutes due and sufficient notice to all persons entitled to such notice, and (*v*) scheduling the Fairness Hearing.

49.    "Proof of Claim" means the claim form substantially in the form of Exhibit A-2 hereto, and as approved by the Court, that will be delivered to potential Class Members and pursuant to which such Class Members will submit a claim under the procedures set out in this Settlement Agreement.

50.    "PSLRA" means the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78u-4, *et seq.*

51.    "PSLRA Contribution Bar Order" means the order, the text of which is set forth in Subsection XI.B below, to be entered by the Court pursuant to section 21D(f)(7)(A) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(f)(7)(A) and the agreement of the parties.

52.    "Putative Class" means all persons and entities who or which purchased or otherwise acquired Scottish Re Securities during the period from February 17, 2005, through February 20, 2007, inclusive.

53.    "Qualified Settlement Fund" means a fund within the meaning of Treasury Regulations § 1.468B-1.  The Escrow Account shall be treated for tax purposes as a Qualified Settlement Fund under this Settlement Agreement.

54.    "Releasee" means each and every one of, and "Releasees" means all of the following:

a.      As to Scottish Re, the Underwriter Defendants and E&Y, the Scottish Re Releasees, the Underwriter Defendants' Releasees, and the E&Y Releasees and their respective past and present directors, executive committee members, officers, employees, members, partners, principals, agents, attorneys (including their General Counsel and other inside or outside attorneys employed by any of these Defendants), advisors, trustees, administrators, fiduciaries, consultants, representatives, accountants, accounting advisors, auditors, and insurance carriers for any actual or alleged conduct, act, or omission occurring or engaged in on behalf of their respective insureds at any time; and

b.      The Individual Defendants and their respective Immediate Family Members.

55.     "Scottish Re" means Scottish Re Group, Limited.

56.     "Scottish Re Releasees" means each and all of Scottish Re, any and all of its parents, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), divisions, business units, subsidiaries, and entities in which Scottish Re has a Controlling Interest or that have a Controlling Interest in it.

57.     "Scottish Re Securities" means the Ordinary Shares, Preferred Shares and HyCU Shares, collectively.

58.     "Settlement" means the settlement contemplated by this Settlement Agreement.

59.     "Settlement Agreement" or "Stipulation" means this Stipulation and Agreement of Settlement and any accompanying Exhibits, including any subsequent amendments thereto and any Exhibits to such amendments.

60.     "Settlement Amount" means thirty-seven million, five-hundred thousand dollars ($37,500,000) in cash, to be paid to the Class as follows: (1) thirty-one million dollars ($31,000,000) in cash to be paid by or on behalf of Scottish Re and the Individual Defendants; of which twenty-five million, two hundred and fifty thousand dollars ($25,250,000) will be paid by Scottish Re's insurers; and  (2) six million, five-hundred thousand dollars ($6,500,000) in cash to be paid by or on behalf of E&Y.

61.     "Settlement Fund" means the Settlement Amount plus interest accrued thereon.

62.     "Settling Parties" means Lead Plaintiff (on behalf of itself and the other Class Members) and Defendants Scottish Re, the Individual Defendants, the Underwriter Defendants, and E&Y.

63.     "Summary Notice" means the notice described in Subsection III.B. and substantially in the form of Exhibit A-3 hereto.

64.     "Tax Expenses" means (*i*) all taxes on the income of the monies in the Escrow Account and (*ii*) any expenses and costs incurred in connection with the taxation of the Escrow Account (including, without limitation, expenses of tax attorneys and accountants).

65.     "Underwriter Defendants" means Lehman Brothers Inc.; Bear, Stearns & Co. Inc.; Banc of America Securities LLC; Keefe, Bruyette & Woods, Inc.; Oppenheimer & Co. Inc.; Advest, Inc.; RBC Dain Rauscher Inc.; Stifel, Nicolaus & Company, Incorporated; Goldman, Sachs & Co.; Wachovia Capital Markets, LLC; A.G. Edwards & Sons, Inc.; Fox-Pitt, Kelton Incorporated; Bear Stearns International Limited; and Lehman Brothers OTC Derivatives.

66.     "Underwriter Defendants' Releasees" means each and all of the Underwriter Defendants, any and all of their respective past or present parents, predecessors,

successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), divisions, business units, subsidiaries, and entities in which any Underwriter Defendants had or has a Controlling Interest or that have a Controlling Interest in it.

      67.    "Unknown Claims" means any and all Plaintiffs' Released Claims that Lead Plaintiff, or any other Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Releasees, and any Defendants' Released Claims that the Releasees do not know or suspect to exist in their favor, which, if known by Lead Plaintiff, any other Class Member, or the Releasees, might have affected his, her, its, or their decision(s) with respect to the Settlement.  As to any and all Plaintiffs' Released Claims and Defendants' Released Claims, the Settling Parties stipulate and agree that, upon entry of the Final Judgment, Lead Plaintiff, and Defendants shall expressly waive, and each other Class Member shall be deemed to have waived, and by operation of the Final Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or of any other country, or any principle of common law, that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiff, and Defendants acknowledge, and the other Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Plaintiffs' Released Claims and Defendants' Released Claims was separately bargained for and was a key element of the Settlement.

F.    **Capitalized Terms**

1.    Capitalized terms used in this Settlement Agreement, but not defined above, shall have the meaning ascribed to them in this Settlement Agreement.

II.    **TERMS AND CONDITIONS OF THE SETTLEMENT**

A.    **The Escrow Account**

1.    Within thirty (30) days after entry of the Preliminary Approval Order, Defendants shall pay or cause to be paid their respective portions of the Settlement Amount into the Escrow Account as provided in paragraph I.E.60.  If the Settlement Amount is not transferred to the Escrow Account within thirty (30) days after entry of the Preliminary Approval Order, Lead Plaintiff may, subject to Section XIV below, terminate this Settlement Agreement.

2.    This is not a claims-made settlement.  Once the Final Settlement Date occurs, there will be no reversion or return of consideration paid, and neither Defendants nor any other person or entity who or that paid any portion of the settlement monies may get back any of those monies.

B.    **The Escrow Agent**

1.    The Escrow Agent shall administer the Escrow Account and shall invest the Settlement Amount in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  The Escrow Agent shall bear all risks related to investment of the amounts in the Escrow Account.

2.    The Escrow Agent shall establish the Escrow Account as a separate bank account, segregated from all other assets of the Escrow Agent, and the proceeds of which shall be disbursed only as provided in this Settlement Agreement or by an order of the Court; *provided,*

*however*, that disbursements from the Escrow Account for the payment of Tax Expenses or Notice and Administration Expenses, as set forth herein, shall be made by the Escrow Agent at the direction of Lead Counsel.  After the Final Settlement Date, Lead Counsel shall have sole responsibility for the administration of the Escrow Account in accordance with the terms of this Settlement Agreement.

        3.      Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions on behalf of the Class Members as are consistent with the terms of this Settlement Agreement.

        4.      The Settlement Amount and the Net Settlement Amount shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as they may be distributed pursuant to this Settlement Agreement and/or further order(s) of the Court.

        5.      Before the Final Settlement Date, Lead Counsel may direct the Escrow Agent to pay from the Settlement Amount in the Escrow Account all reasonable Notice and Administration Expenses.  After the Final Settlement Date, Lead Counsel may, without further Order of the Court, direct the payment from the Settlement Amount of any Notice and Administration Expenses that Lead Counsel believes in its discretion are necessary and appropriate to carry out the terms of this Settlement Agreement.

      **C.**      **Qualified Settlement Fund**

        1.      All counsel agree to take all necessary steps to enable the Escrow Account to be treated as a Qualified Settlement Fund for tax purposes, including the timely filing by Lead Counsel and/or their agents for tax purposes of all elections and statements required pursuant to Treas. Reg. §§ 1.468B-0 through 1.468B-5, or any other relevant statutes, regulations, or

published rulings now or hereafter enacted or promulgated, for all taxable years of the Escrow Account, beginning with the date of its establishment.  Lead Counsel shall be the "administrator" of the Qualified Settlement Fund for tax purposes under Treas. Reg. §§ 1468 B-0 through B-5, and shall file or cause to be filed on a timely basis any required federal, state, and local tax returns and shall cause any taxes due on the income of the Qualified Settlement Fund to be paid from the Escrow Account.  The parties hereto agree that the Escrow Account shall be treated as a Qualified Settlement Fund, as provided in Treas. Reg. §§ 1.468B-0 through 1.468B-5, from the earliest date possible, and hereby agree to any relation-back election required to treat the Escrow Account as a Qualified Settlement Fund from the earliest date possible.  In no event shall Defendants have any responsibility whatsoever for filing election or other required statements, or tax returns, or for paying the costs associated therewith, any taxes due, or the expenses of notice or administration of the Escrow Account.  Lead Counsel and Defendants' Counsel shall cooperate to the extent necessary to comply with this Subsection II.C.  Defendants agree to provide promptly to Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e).

        2.      Upon request by Defendants' Counsel, Lead Counsel shall promptly provide to Defendants' Counsel all information available to Lead Counsel and requested in connection with any tax returns Defendants or any Releasee must file or with any other report or filing Defendants or any Releasee must make with respect to the Settlement Amount or any portion of it.

        **D.**      **Distribution of the Net Settlement Amount**

        1.      If the proposed Settlement becomes Final, the Net Settlement Amount shall be distributed pursuant to such Plan of Allocation as the Court approves for the certified Class.

2.      No person or entity shall have any Claim against Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent, or any of their agents, or against Defendants' Counsel or any Releasee, with respect to or arising out of any distributions or lack thereof made under any Court-approved Plan of Allocation, this Settlement Agreement, or orders of the Court.

3.      The Settling Parties understand and agree that, notwithstanding any other provision of this Settlement Agreement, the proposed Plan of Allocation is not a part of this Settlement Agreement, and no order or proceedings relating to the Plan of Allocation shall operate to modify, terminate, or cancel this Settlement Agreement or affect the finality of the Final Judgment and Order of Dismissal or any other orders entered by the Court giving effect or pursuant to this Settlement Agreement.

4.      Defendants, the Releasees, and their respective counsel, including, but not limited to, Defendants' Counsel, shall have no role in, responsibility for, or liability with respect to the Plan of Allocation, the form, substance, method, or manner of allocation, administration, or distribution of the Net Settlement Amount, or any tax liability that a Class Member might incur as a result of this Settlement Agreement, or as a result of any action taken pursuant to this Settlement Agreement, the administration or processing of claims submitted by Claimants, including, without limitation, determinations as to the validity of Proofs of Claim, the amounts of claims or distribution of the Net Settlement Amount, or (except as set out in Subsection II.C above) the maintenance of the Escrow Account as a Qualified Settlement Fund.

5.      Class Members shall look solely to the Net Settlement Amount for settlement and satisfaction of all Plaintiffs' Released Claims and only to the extent expressly provided by this Settlement Agreement, the Court-approved Plan of Allocation, or an order of the

Court.  Under no circumstances will any of the Settling Parties or any Releasee be responsible for the payment of any fees, costs, expenses, or other funds associated with or arising out of the settlement contemplated by this Settlement Agreement.

    6. To the extent that any monies remain in the Escrow Account after the Claims Administrator has caused initial distributions to be made from the Net Settlement Amount to all Authorized Claimants, whether by reason of uncashed distributions or otherwise, such monies shall be:  (a) used for the payment of any unpaid costs or fees incurred in administering the Escrow Account for such re-distribution and then (b) distributed to Class Members who have cashed their initial distribution checks and who would receive at least $10.00 from such re-distribution.  If after six (6) months after such re-distribution any funds remain in the Escrow Account, Lead Counsel shall make an application to the Court to distribute the sum of the unpaid residue to a non-sectarian, not-for-profit, section 501(c)(3) organization.

  **E.**  **Plan of Allocation**

    1. All cash distributions to Authorized Claimants shall be from the Net Settlement Amount pursuant to a Plan of Allocation approved by the Court.

    2. The Plan of Allocation is not a necessary term of this Settlement Agreement, and this Settlement Agreement is not conditioned on the approval of any particular Plan of Allocation.

    3. To receive a cash distribution from the Net Settlement Amount pursuant to any approved Plan of Allocation, a Class Member must be an Authorized Claimant pursuant to the procedures set out in this Settlement Agreement or by order of the Court, and must submit a Proof of Claim.

4.      Unless otherwise authorized by the Court, each Authorized Claimant who wishes to receive a distribution from the Net Settlement Amount must complete and submit a Proof of Claim, as directed in the Individual Notice or the Proof of Claim, postmarked no later than the date stated on the Proof of Claim form.  The address to which the Proof of Claim must be sent shall be stated in the Proof of Claim form itself.

5.      The Proof of Claim must be sworn on oath or made subject to the penalties of perjury pursuant to 28 U.S.C. § 1746, and be supported by such documents and other information as called for in the Proof of Claim

6.      The validity of each filed Proof of Claim initially will be determined by the Claims Administrator in accordance with the Plan of Allocation approved by the Court.  The Claims Administrator shall promptly advise the Class Member in writing if it determines to reject the claim.  Lead Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive, in the interests of achieving substantial justice, what Lead Counsel deems to be formal or technical defects in any Proofs of Claim submitted.  Lead Counsel, its designees or agents, Lead Plaintiff, Defendants' Counsel, Defendants, and Releasees shall not have any liability arising out of any such determination.

7.      If any Class Member whose claim has been rejected in whole or in part desires to contest such rejection, the Class Member must, within twenty (20) days after the date of such rejection, submit to the Claims Administrator and Lead Counsel a notice and statement of reasons explaining the Class Member's grounds for contesting the rejection, along with any supporting documentation, and request a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.  The administration of the Escrow Account and the Net Settlement Amount, and

decisions on all disputed questions of law and fact with respect to the validity of any Proof of Claim or regarding the rejection or amount of any claim, shall remain under the jurisdiction of the Court.  All Class Members and Settling Parties expressly waive trial by jury (to the extent any such right might exist) and any right of appeal or review with respect to such determinations. Any Class Member pursuing a dispute shall be responsible for his, her, or its own costs, including, without limitation, attorneys' fees, incurred in pursuing the dispute.

        8.     Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for an order approving the Claims Administrator's determinations concerning the acceptance and rejection of the claims submitted by Class Members and approving any fees and expenses of the Claims Administrator not previously applied for, including the balance of any unpaid fees and expenses of the Claims Administrator and, if the Final Settlement Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants.

        9.     Unless otherwise ordered by the Court, any Class Member who fails to submit a valid and timely Proof of Claim shall be barred from receiving a distribution from the Net Settlement Amount but shall nevertheless be bound by the Release and all proceedings, orders, and judgments in the Action even if he, she, or it has pending, or subsequently initiates, any litigation, arbitration, or other proceeding, or has any Claim, against any or all of the Releasees that is a Plaintiffs' Released Claim.

## III.    NOTICE TO THE CLASS

### A.    Individual Notice

        1.     Subject to the requirements of the Preliminary Approval Order, and in accordance with all applicable laws, Lead Counsel shall cause to be delivered a copy of the Individual Notice and the Proof of Claim by first-class mail to all potential Class Members who

can be identified through reasonable efforts from Scottish Re's stock-transfer records and/or from related inquiries conducted by the Claims Administrator.

       **B.**       **Summary Notice**

       1.       Subject to the requirements of the Preliminary Approval Order, and in accordance with all applicable laws, Lead Counsel shall cause to be published a copy of the Summary Notice once each in the global edition of *The Wall Street Journal* and *The Financial Times*.

## IV.    APPOINTMENT OF CLAIMS ADMINISTRATOR

       A.       As provided in the Preliminary Approval Order, the Claims Administrator shall be appointed to help implement the settlement contemplated by this Settlement Agreement.

       B.       The Claims Administrator shall perform various tasks as directed by Lead Counsel, including, without limitation:  (*i*) distributing the Individual Notice to potential Class Members; (*ii*) arranging for publication of the Summary Notice; (*iii*) publishing the Individual Notice on the Claims Administrator's website; (*iv*) answering written inquiries from potential Class Members and/or forwarding such inquiries to Lead Counsel; (*v*) providing additional copies of the Individual Notice, upon request, to Nominees or potential Class Members; (*vi*) receiving and maintaining on behalf of the Court any requests for exclusion from the settlement received from potential Class Members; (*vii*) receiving and processing Proofs of Claim from Class Members; (*viii*) mailing or causing to be mailed to Authorized Claimants their distributions under the Plan of Allocation, and (*ix*) otherwise administering and implementing this Settlement Agreement.

       C.       As ordered by the Court in the Preliminary Approval Order or in subsequent Orders, the Claims Administrator shall establish and staff with representatives knowledgeable about this Settlement Agreement and the Plan of Allocation a toll-free telephone number for

responding to inquiries from potential Class Members about this Settlement Agreement and any issues relating to the Action.

## V.   RIGHT TO COMMUNICATE WITH CLASS MEMBERS

A.    Lead Plaintiff acknowledges and agrees that the Releasees have the right to communicate orally and in writing with Scottish Re investors and to respond to inquiries from potential Class Members, including, without limitation:

1.    Communications regarding the subject matter of this Settlement Agreement between potential Class Members and representatives of the Releasees whose responsibilities include investor relations, to the extent such communications are initiated by the potential Class Members, and in such circumstances the Releasees shall use their best efforts to direct such potential Class Members to the Claims Administrator or to the Claims Administrator's website, or to Lead Counsel;

2.    Communications as may be necessary to implement the terms of this Settlement Agreement; and

3.    Such communications as may be made in the conduct of the Releasees' business.

B.    Subject to Subsection XIV.E below, Lead Plaintiff, Lead Counsel, Defendants, and Defendants' Counsel agree to cooperate in good faith to ensure that any comments about or descriptions of the settlement contemplated by this Settlement Agreement are balanced, fair, and accurate.  Lead Plaintiff, Lead Counsel, Defendants, and Defendants' Counsel agree that they will refrain from asserting that the Action was brought or defended in bad faith.

## VI.   REQUESTS FOR EXCLUSION FROM THE CLASS

A.    Any potential Class Member who wishes to be excluded from the Class must mail by first-class mail or otherwise deliver a written request for exclusion to the Claims

Administrator, care of the address provided in the Individual Notice, such that it is received no later than twenty-one (21) days before the Fairness Hearing, or as the Court may otherwise direct.  A list of the persons and entities who have validly and timely requested exclusion from the Class shall be provided by the Settling Parties to the Court at or before the Fairness Hearing.

B.      A potential Class Member's request for exclusion shall be directed to include the following information:  (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) identification of the Scottish Re Securities and the number of shares of the Scottish Re Securities purchased or sold during the Class Period, (*v*) prices paid or value received, and (*vi*) the date of each such transaction involving such Scottish Re Securities.

C.      Unless otherwise ordered by the Court, any potential Class Member who does not submit a timely written request for exclusion as provided by this Section VI shall nevertheless be bound by the Release and by all proceedings, orders, and judgments in the Action, even if he, she, or it has pending or subsequently initiates any litigation, arbitration, or other proceeding, or has any other Claim, against any or all of the Releasees relating to any of the Plaintiffs' Released Claims.

## VII.    OBJECTIONS TO SETTLEMENT

A.      Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of this Settlement Agreement, to any term(s) of this Settlement Agreement, to the Plan of Allocation, or to the proposed Attorneys' Fees and Expenses Award must both serve on counsel for the respective parties and file with the Court a statement of his, her, or its objection(s); *provided, however*, that a potential Class Member who requests exclusion from the Class shall not be entitled to submit an objection.  Any such objection must be received by counsel for the respective parties and the Court as provided in the Individual Notice, or as the Court may otherwise direct.

B.       The Class Member's statement of objection shall state the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of such objection.  Any objection also must include the following information about the Class Member: (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) identification of the Scottish Re Securities and the number of shares of the Scottish Re Securities purchased, otherwise acquired or sold during the Class Period, (*v*) prices paid or value received, and (*vi*) the date of each transaction.

C.       Any Class Member may file an objection on his, her, or its own, or through an attorney hired at his, her, or its own expense.  If a Class Member hires an attorney to represent him, her, or it in connection with filing an objection, the attorney must both serve on counsel for the respective parties and file with the Court a notice of appearance.  Any such notice of appearance must be received by counsel for the respective parties and the Court by no later than twenty-one (21) days before the Fairness Hearing, or as the Court otherwise may direct.

D.       Any requests by Class Members, or by an attorney hired at their expense, for access to the discovery materials in the Action shall be governed by the provisions of the Preliminary Approval Order.

E.       Lead Counsel shall inform Defendants' Counsel promptly of any request by Class Members or their attorneys for access to the discovery materials in the Action, and identify for Defendants' Counsel any such Class Member (as well as his, her, or its attorney (if any)) who requests access to the discovery materials and the date on which such access is requested.

F.       Any Class Member who files and serves a written objection pursuant to this Section VII – and, unless otherwise ordered by the Court, only such Class Members – may appear at the Fairness Hearing, either in person or through counsel hired at the Class Member's

expense, to object to the fairness, reasonableness, or adequacy of this Settlement Agreement, to any term(s) of this Settlement Agreement, or to the proposed Attorneys' Fees and Expenses Award. Class Members or their attorneys intending to make an appearance at the Fairness Hearing must both serve on Lead Counsel and file with the Court a notice of intention to appear. Any such notice must be received by Lead Counsel and the Court by the date set in the Individual Notice, or as the Court otherwise may direct.

G.      Any Class Member who fails to comply with any of the provisions of this Section VII shall waive and forfeit any and all rights he, she, or it might otherwise have to appear separately at the Fairness Hearing and/or to object to this Settlement Agreement, and shall be bound by all the terms of this Settlement Agreement and by all proceedings, orders, and judgments in the Action.

H.      Lead Counsel promptly shall forward to each of Defendants' Counsel copies of all objections, notices of appearance, and other materials received pursuant to this Section VII.

## VIII.   RELEASE AND WAIVER, AND ORDER OF DISMISSAL

### A.      Release and Waiver

1.      Pursuant to the Final Judgment and Order of Dismissal, without further action by anyone, and whether or not a Proof of Claim has been executed and/or delivered by or on behalf of any such Class Member, and subject to Subsection VIII.A.4 below, on and after the Final Settlement Date, Lead Plaintiff, and any and all Class Members, on behalf of themselves, their heirs, executors, administrators, beneficiaries, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), and assigns, and any person or entity claiming by or through any of the Class Members, for good and sufficient consideration, shall be deemed to have, and by operation of law and of the Final Judgment and Order of Dismissal shall have, fully, finally, and forever released, relinquished, settled, and discharged:

a. all Plaintiffs' Released Claims against each and every one of the Releasees;

b. all Claims, damages, and liability as to any or all of the Lead Plaintiff, Lead Counsel, Defendants' Counsel, and each and every one of the Releasees that relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, the prosecution, defense, or settlement of the Action or to this Settlement Agreement; and

c. all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Lead Counsel or other counsel representing Lead Plaintiff, or the other Class Members (or any of them) in the Action, or any of them, in connection with or related in any manner to the Action, the settlement of the Action, or the administration of the Action and/or its settlement except to the extent otherwise specified in this Settlement Agreement.

2. Pursuant to the Final Judgment and Order of Dismissal, without further action by anyone, and subject to Subsection VIII.A.4 below, on and after the Final Settlement Date, Defendants' Counsel and any or all Releasees, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), assigns, any person or entity claiming by or through any of the Defendants, and any person or entity representing Defendants, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Judgment and Order of Dismissal shall have, fully, finally, and forever released, relinquished, settled, and discharged Lead Counsel, Lead Plaintiff and all other named plaintiffs

in the cases consolidated in the Action and their respective counsel from any and all Claims, whether known Claims or Unknown Claims, that relate in any way to any and all acts directly or indirectly relating to the initiation, prosecution, defense, or settlement of the Action, or to this Settlement Agreement.

3.      Pursuant to the Final Judgment and Order of Dismissal, without further action by anyone, and subject to Subsection VIII.A.4 below, on and after the Final Settlement Date, Lead Counsel, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), assigns, and any person or entity claiming by or through any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Judgment and Order of Dismissal shall have, fully, finally, and forever released, relinquished, settled, and discharged Defendants' Counsel and all Releasees from any and all Claims, whether known Claims or Unknown Claims, that relate in any way to any and all acts directly or indirectly relating to the prosecution, defense, or settlement of the Action, or to this Settlement Agreement.

4.      Notwithstanding Subsections VIII.A.1, VIII.A.2, and VIII.A.3 above, nothing in the Final Judgment and Order of Dismissal shall bar any action or Claim by the Settling Parties to enforce the terms of this Settlement Agreement or the Final Judgment and Order of Dismissal.

5.      The releases and waivers contained in this Section VIII were separately bargained for and are essential elements of this Settlement Agreement.

B.      **Final Judgment and Order of Dismissal**

1.      The Settling Parties will seek and obtain from the Court a Final Judgment and Order of Dismissal as further described in Section XI below.

IX.   **ATTORNEYS' FEES AND EXPENSES**

A.      **Attorneys' Fees and Expenses**

1.      Lead Counsel may apply for an award of Attorneys' Fees and Expenses at or after the time of the Fairness Hearing.  Defendants shall take no position on any request for Attorneys' Fees by Lead Counsel.

2.      Subject to Subsections IX.A.3 and IX.A.4, below, the Attorneys' Fees and Expenses Award shall be paid to Lead Counsel from the Escrow Account within five business days after the Court issues the order setting out the Attorneys' Fees and Expenses Award.  Such payment shall be made pursuant to this Subsection IX.A.2 notwithstanding the existence of any timely filed objections or appeals to the Attorneys' Fees and Expenses Award; *provided, however*, that such payment shall be subject to Lead Counsel's obligation to make appropriate repayment to the Escrow Account (plus interest calculated at the same net rate as earned by the balance of the Escrow Account, such calculation to begin as of the day the Attorneys' Fees and Expenses Award was paid and to end as of the day the repayment is made pursuant to this Subsection IX.A.2) within five (5) business days if, as a result of any reconsideration proceedings, appellate review, and/or further proceedings on remand, the Attorneys' Fees and Expenses Award is reduced or reversed, or if this Settlement Agreement is properly and timely terminated in accordance with its terms.

3.      As a condition of receiving the Attorneys' Fees and Expenses Award, Lead Counsel, on behalf of themselves and each of their partners and/or shareholders, agree that the law firms and their partners and/or shareholders are subject to the jurisdiction of the Court for the

purpose of enforcing this obligation.  Without limitation, Lead Counsel and each of their partners and/or shareholders agree that the Court may, upon application of Defendants, on notice to Lead Counsel, summarily issue orders, including, but not limited to, judgments and attachment orders, and may make appropriate findings of or sanctions for contempt, against them or any of them (if applicable), should any of Lead Counsel fail timely to repay any amounts pursuant to this Subsection IX.A.

4.       No Releasee shall be liable or obligated to pay any fees, expenses, costs, or disbursements to, or incur any expense on behalf of, any person or entity (including, without limitation, Lead Plaintiff, and Lead Counsel), directly or indirectly, in connection with the Action or this Settlement Agreement, except as expressly provided for in this Settlement Agreement.

5.       Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the prosecution and settlement of the Action with the Defendants.

## X.    PRELIMINARY APPROVAL HEARING AND PRELIMINARY APPROVAL ORDER

A.       Promptly after this Stipulation has been fully executed, Lead Counsel and Defendants' Counsel jointly shall apply to the Court for entry of a Preliminary Approval Order, substantially in the form annexed hereto as Exhibit A.

B.       Lead Plaintiff and Defendants stipulate to the certification of the Class and certification of Lead Plaintiff as representative of the Class solely for the purpose of this Settlement.  If the Settlement is not approved by the Court or is not consummated for any other reason, Defendants reserve the right to oppose certification of the Class, or any other class, and to oppose certification or appointment of Lead Plaintiff as representative of the Class, or any other class, in the Action.

## XI.  FINAL APPROVAL, AND FINAL JUDGMENT AND ORDER OF DISMISSAL

A.     If the Court approves the Settlement contemplated by this Stipulation, Lead Counsel and Defendants' Counsel jointly shall request that the Court enter a Final Judgment and Order of Dismissal substantially in the form annexed hereto as Exhibit B.

B.     The Settling Parties shall request that the Court enter a PSLRA Contribution Bar Order as follows:  (i) Any person or entity is hereby permanently enjoined from commencing, prosecuting, or asserting against any of the Releasees any Claim, however denominated, where the Claim is, arises from, or relates to Plaintiffs' Released Claims or the alleged injury to such person or entity arises from that person's or entity's alleged liability in this Action or payment in this Action to the Class or any Class Member, and (ii) the Releasees are hereby permanently enjoined from commencing, prosecuting, or asserting against any person or entity any such claim, and (iii) such claims are hereby permanently barred, extinguished, discharged, satisfied, and unenforceable.  In accordance with 15 U.S.C. § 78u-4(f)(7)(B) and the agreement of the parties, any final verdict or judgment that might be obtained by or on behalf of the Class or a Class Member against any person or entity for loss for which such person or entity and any Releasee are found to be jointly liable shall be reduced by the greater of (i) an amount that corresponds to the percentage of responsibility of any such Releasee(s) for common damages or (ii) the amount paid to the Class by or on behalf of each such Releasee for common damages.

C.     The Settling Parties also shall request that the Court enter a Complete Bar Order at the time the Court approves the Settlement Agreement.  The Complete Bar Order shall provide as follows:

1.     Any and all persons and entities, including, without limitation, Scottish Re, the Individual Defendants, the Underwriter Defendants, and E&Y, are permanently barred,

enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any Releasee arising under any federal, state, or foreign statutory or common-law rule, contract, or otherwise, however styled, whether for indemnification or contribution or otherwise denominated, including, without limitation, Claims for breach of contract and for misrepresentation, where the Claim is, arises from, or relates to a Plaintiffs' Released Claim or the alleged injury to such person or entity arises from that person's or entity's alleged liability in this Action or payment in this Action to the Class or any Class Member, including, without limitation, any Claim in which a person or entity seeks to recover from any of the Releasees (*i*) any amounts such person or entity has or might become liable to pay to the Class or any Class Member and/or (*ii*) any costs, expenses, or attorneys' fees from defending any Claim by the Class or any Class Member.  All such Claims are hereby extinguished, discharged, satisfied, and unenforceable, subject to a hearing to be held by the Court, if necessary.  The provisions of this Subsection XI.C shall preclude any liability of any of the Releasees to any person or entity (including Scottish Re, the Individual Defendants, the Underwriter Defendants, and E&Y) for indemnification, contribution, or otherwise on any Claim that is, arises from or relates to a Plaintiffs' Released Claim or where the alleged injury to such person or entity arises from that person's or entity's alleged liability in this Action or payment in this Action to the Class or any Class Member; *provided, however,* that if the Class or any Class Member obtains any judgment against any such person or entity based upon, arising out of, or relating to any Plaintiffs' Released Claim for which such person or entity and any of the Releasees are found to be jointly liable, that person or entity shall be entitled to a judgment credit equal to an amount that is the greater of (*i*) an amount that corresponds to the percentage of responsibility of any such Releasee(s) for common damages or (*ii*) the amount paid to the Class by or on behalf of each such Releasee for common damages.

2.       Each and every Releasee is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any other person or entity (including, without limitation, any other Releasee and any of the Defendants) arising under any federal, state, or foreign statutory or common-law rule, contract, or otherwise, however styled, whether for indemnification or contribution or otherwise denominated, including, without limitation, Claims for breach of contract and for misrepresentation, where the Claim is, arises from, or relates to a Plaintiffs' Released Claim or the alleged injury to such Releasee arises from that Releasee's alleged liability in this Action or payment in this Action to the Class or any Class Member, including, without limitation, any Claim in which any Releasee seeks to recover from any person or entity, including another Releasee or Scottish Re, the Individual Defendants, the Underwriter Defendants, and E&Y, (*i*) any amounts any such Releasee has or might become liable to pay to the Class or any Class Member and/or (*ii*) any costs, expenses, or attorneys' fees from defending any Claim by the Class or any Class Member.   All such Claims are hereby extinguished, discharged, satisfied and unenforceable.

3.       Notwithstanding anything stated in the Complete Bar Order, if any person or entity (for purposes of this Subsection XI.C.3, a "petitioner") commences against any of the Releasees any action either (*i*) asserting a Claim that is or arises from a Plaintiffs' Released Claim or where the alleged injury to such person or entity arises from that person's or entity's alleged liability in this Action or payment in this Action to the Class or any Class Member or (*ii*) seeking contribution or indemnity for any liability or expenses incurred in connection with any such Claim, and if, despite the intentions of the Settling Parties, such action or Claim is not barred by a court pursuant to this Subsection XI.C. or is otherwise not barred by the Complete Bar Order, neither the Complete Bar Order nor the Settlement Agreement shall bar Claims by that Releasee

against (*a*) such petitioner, (*b*) any person or entity who is or was controlled by, controlling, or under common control with the petitioner, whose assets or estate are or were controlled, represented, or administered by the petitioner, or as to whose Claims the petitioner has succeeded, and (*c*) any person or entity that participated with any of the preceding persons or entities described in items (*a*) and (*b*) of this Subsection XI.C.3 in connection with the assertion of the Claim brought against the Releasee(s); *provided, however,* that the Settlement Agreement and the Complete Bar Order shall not bar or enjoin the Class or any Class Member from bringing any and all Claims against any non-Releasee; *provided, further,* that nothing in the Complete Bar Order or Settlement Agreement shall prevent the Settling Parties from taking such steps as are necessary to enforce the terms of the Settlement Agreement.

4.      If any term of the Complete Bar Order entered by the Court is held to be unenforceable after the date of entry, such provision shall be substituted with such other provision as may be necessary to afford all of the Releasees the fullest protection permitted by law from any Claim that is based upon, arises out of, or relates to any Plaintiffs' Released Claim.

5.      Notwithstanding the Complete Bar Order or anything else in the Settlement Agreement, nothing shall release, interfere with, limit, or bar the assertion by any Releasee of any Claim for insurance coverage under any insurance, reinsurance, or indemnity insurance policy that provides coverage respecting the conduct at issue in the Action.

D.      Neither the PSLRA Contribution Bar Order nor the Complete Bar Order shall affect any Scottish Re obligation to indemnify and hold harmless each of the Underwriter Defendants for the Underwriter Defendants' costs of defending this Action or otherwise, pursuant to (*i*) an Underwriting Agreement, dated June 28, 2005, that Scottish Re entered into with Lehman Brothers Inc. on behalf of itself and as representative of Banc of America Securities

LLC; Keefe, Bruyette & Woods, Inc.; Oppenheimer & Co. Inc.; Advest, Inc.; RBC Dain Rauscher Inc.; Stifel, Nicolaus & Company, Incorporated; and (*ii*) an Underwriting Agreement, dated December 15, 2005, that Scottish Re entered into with Lehman Brothers Inc. and Bear, Stearns & Co. Inc. on behalf of themselves and as representatives of Banc of America Securities LLC, Goldman, Sachs & Co.; Wachovia Capital Markets, LLC; A.G. Edwards & Sons, Inc.; Fox-Pitt, Kelton Incorporated and Oppenheimer & Co. Inc.

## XII.   MODIFICATION OR TERMINATION OF THIS SETTLEMENT AGREEMENT

A.    The terms and provisions of this Settlement Agreement may not be altered or modified except pursuant to Subsection XIV.K; *provided, however*, that, after entry of the Final Judgment and Order of Dismissal, Lead Counsel, on behalf of Lead Plaintiff, and Defendants' Counsel, on behalf of Defendants, may by written agreement effect any amendments, modifications, or expansions of this Settlement Agreement and its implementing documents (including all exhibits to this Settlement Agreement) without notice to or approval by the Court if such changes are not materially inconsistent with the Court's Final Judgment and Order of Dismissal and do not materially limit the rights of Class Members under this Settlement Agreement.

B.    Subject to Sections XIII and XIV below, this Settlement Agreement will terminate at the sole option and discretion of Defendants' Counsel (as to their respective clients) and/or Lead Counsel (on behalf of Lead Plaintiff) if (*i*) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Settlement Agreement or the proposed settlement that the terminating Settling Party reasonably and in good faith determines is material, including, without limitation, the terms of relief, the findings of the Court, the provisions relating to notice, the definition of the Class, the Complete Bar Order, and/or the terms of the Release, or

(*ii*) the Court, or any appellate court(s), does not enter or completely affirm, or alters, limits or expands, any portion of the Preliminary Approval Order or the Final Judgment and Order of Dismissal that the terminating Settling Party reasonably and in good faith believes is material. The terminating Settling Party must exercise the option to withdraw from and terminate this Settlement Agreement, as provided in this Section XII, no later than thirty (30) days after receiving actual notice of the event prompting the termination.   Should the Settlement Agreement be terminated as to less than all Defendants pursuant to this provision, Lead Plaintiff shall have the right in its sole discretion to terminate the Settlement Agreement as to the remaining Defendants.

C.      Notwithstanding the preceding Subsection XII.B, neither Lead Plaintiff nor Lead Counsel may terminate this Settlement Agreement on the basis of the Attorneys' Fees and Expenses Award ordered by the Court, or as modified by any appellate court(s).

## XIII.  DEFENDANTS' TERMINATION RIGHTS

A.      Without limiting any other rights under this Settlement Agreement, by no later than two (2) days before the Fairness Hearing, each Defendant may withdraw from and terminate this Settlement Agreement but only as to the withdrawing Defendant if requests for exclusion are received from potential Class Members whose Class Period Shares of Scottish Re Securities, in the aggregate, exceed an amount equal to or larger than a specific percentage of the total number of shares of Scottish Re Securities eligible to participate in this Settlement that was agreed to by the Settling Parties as set forth in a separate agreement between them.

B.      Lead Counsel may attempt to cause retraction of any exclusion requests by potential Class Members.  If any of the Defendants have exercised their option to withdraw from and terminate the Settlement based on Subsection XIII.A, and if Lead Counsel succeed in causing the retraction (within the time period for such retractions specified in the next sentence)

of sufficient requests for exclusion such that the remaining requests for exclusion do not exceed the amount agreed to by the Settling Parties as set forth in the separate agreement described in the preceding paragraph, Defendants' notice of withdrawal from the Settlement automatically shall be deemed a nullity.  To retract a prior request for exclusion, a potential Class Member must provide to Defendants' Counsel, at least five business days before the Fairness Hearing, or any adjournment thereof, a written notice signed by the potential Class Member stating his, her, or its desire to retract the request for exclusion from the Class.

C.      Should any of the Defendants elect to withdraw from and terminate this Settlement Agreement as to itself/themselves pursuant to the provisions of Subsection XIII.A, Lead Plaintiff shall have the right in its sole discretion to terminate the Settlement Agreement as to the remaining Defendants.

## XIV.  GENERAL MATTERS AND RESERVATIONS

A.      If an option to withdraw from and terminate this Settlement Agreement arises under this Settlement Agreement, (*i*) neither Defendants nor Lead Plaintiff will be required for any reason or under any circumstance to exercise that option, and (*ii*) if Defendants or Lead Plaintiff exercises the option to withdraw from or terminate the Settlement, it shall exercise that option in good faith.

B.      Defendants warrant that, as to the payments made by them or on their behalf, at the times such payments were made or caused to be made pursuant to Subsection II.A.1 above, they were not insolvent, and the payments required to be made by or on behalf of Defendants will not render any of them insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof.  These representations are made by Defendants, and not by Defendants' Counsel.

C.      If a case is commenced in respect of any of the Defendants or any insurer contributing funds to the Settlement Amount on behalf of any of the Defendants under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver, conservator, or other fiduciary is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of any of the Defendants to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited to the Settlement Fund by others, then, at the election of Lead Counsel, the parties shall jointly move the Court to vacate and set aside the releases given and the Final Judgment and Order of Dismissal entered in favor of any of the Defendants, and the other Released Parties pursuant to this Settlement Agreement, which releases, and the Final Judgment and Order of Dismissal shall be null and void, and the parties shall be restored to their respective positions in the litigation immediately prior to August 1, 2008 (or with respect to E&Y, prior to August 6, 2008), and any cash amounts in the Escrow Account shall be returned as provided in paragraph XIV.D.2 below.

D.      If this Settlement Agreement does not become Final or is otherwise terminated pursuant to the terms hereof, then:

1.      This Settlement Agreement shall be null and void and shall have no force or effect, and no party to this Settlement Agreement shall be bound by any of its terms, except for the terms set out in this Section XIV;

2.      This Settlement Agreement, all of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of Defendants, Lead Plaintiff, or any other Class Member, whom shall be deemed to have been restored to their

respective status in this Action immediately prior to entering into their agreement in principle to settle the action (i.e., with respect to Scottish Re, the Individual Defendants, and Underwriter Defendants, prior to August 1, 2008 and with respect to E&Y, prior to August 6, 2008), except with respect to the payment from the Settlement Amount of such Notice and Administration Expenses and Tax Expenses as have been actually expended or incurred, as described in Section II above;

3.      Releasees and their current and former predecessors, successors, heirs, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), agents, attorneys, representatives, and assigns expressly and affirmatively reserve all defenses, arguments, and motions as to all Claims that have been or might later be asserted in the Action, including (without limitation) any argument that the Action may not be litigated as a class action;

4.      Lead Plaintiff, and its current and former predecessors, successors, heirs, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), agents, attorneys, representatives, and assigns expressly and affirmatively reserve all motions as to, and arguments in support of, all Claims that have been or might later be asserted in the Action, including (without limitation) any argument concerning class certification;

5.      Neither this Settlement Agreement nor the fact of its having been made shall be admissible or entered into evidence for any purpose whatsoever;

6.      Within five (5) calendar days after its receipt of notice of termination, the Escrow Agent shall return directly to the Releasees who paid money into the Escrow Account their respective portions of the Settlement Amount in the Escrow Account (less their proportionate share of reasonable Notice and Administration Expenses and Tax Expenses); and

7.      Except as specifically provided herein, nothing in this Settlement Agreement shall create any obligation on the part of any Settling Party to pay any other Settling Party's fees or expenses arising from or relating to this Settlement Agreement.

E.      Except as provided in this Section XIV, or as may otherwise be required by law, the Settling Parties and their counsel agree to keep the contents of this Settlement Agreement and all related negotiations confidential until the Execution Date and, with respect to any initial press release announcing the settlement described in this Settlement Agreement, to attempt in good faith to coordinate the timing of such press release, which coordination shall include, for each Settling Party issuing such release, affording the other Settling Party the opportunity to review and comment on such release in advance thereof; *provided, however*, that this Section XIV shall not prevent earlier disclosure of such information by Defendants' Counsel and Lead Counsel to any person or entity (such as clients, experts, courts, regulatory entities, and/or administrators) to whom the Settling Parties agree disclosure must be made to effectuate the terms and conditions of this Settlement Agreement; *provided further*, that Scottish Re and E&Y shall be entitled to make, without prior notification to or review or approval by Lead Counsel, any and all disclosures regarding this Settlement Agreement that it believes might be required or appropriate to its insurance carriers, the Securities and Exchange Commission, the Department of the Treasury, the Department of Homeland Security, the New York Stock Exchange, the Internal Revenue Service, any other regulatory or licensing body (including, without limitation, any Committee of the United States Congress), and the Releasees' former or current independent auditors, accountants, attorneys, financial institutions, or lenders when disclosure to such individuals or entities is required in the normal course of the Releasees' business; *provided, however*, that any and all such disclosures or statements shall be balanced, fair, and accurate, and

Defendants shall refrain from asserting that any Claim asserted in the Action was brought in bad faith; *provided further,* that Lead Counsel (subject to its agreement with Lead Plaintiff) and Defendants' Counsel shall be able to speak with media representatives regarding the terms of this Settlement Agreement before the Execution Date, but only to the extent consistent with this Settlement Agreement, and only if they obtain an agreement from such media representatives not to publish any information regarding this Settlement Agreement until on or after the Execution Date.

F.      All of the exhibits attached to this Settlement Agreement are incorporated by reference as though fully set forth herein.

G.      The parties to this Settlement Agreement intend that the Settlement Agreement shall be a final and complete resolution of all disputes that were, could have been, or could be asserted by the Class Members against the Releasees with respect to Plaintiffs' Released Claims. Accordingly, Lead Plaintiff and Defendants agree not to assert in any forum that any conduct of Lead Plaintiff or any other plaintiff in the Action and/or Defendants in connection with this Action, the settlement of this Action, or any of the Plaintiffs' Released Claims was in bad faith or was unreasonable.  No Settling Party shall assert any Claim that any other Settling Party violated Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Action.

H.      The Settling Parties agree that the amount paid and the other terms of the Settlement Agreement were negotiated at arm's length in good faith by the Settling Parties and reflect an agreement that was reached voluntarily, after consultation with experienced legal counsel.

I.       Lead Counsel and Defendants' Counsel signing this Settlement Agreement each represents that he or she is authorized to enter into this Settlement Agreement on behalf of his or her clients.

J.       Lead Plaintiff, through a duly authorized representative, represents that it (*i*) has agreed to serve as a representative of the Class proposed to be certified herein, (*ii*) has consulted with Lead Counsel about the Action, this Settlement Agreement, and the obligations of a representative of the Class, and (*iii*) will remain in and not request exclusion from the Class and will serve as a representative of the Class until the terms of this Settlement Agreement are effectuated, this Settlement Agreement is terminated in accordance with its terms, or the Court at any time determines that Lead Plaintiff cannot represent the Class.

K.       This Settlement Agreement sets forth the entire agreement among the Settling Parties with respect to its subject matter and may not be altered or modified except by a written instrument executed by Lead Counsel and Defendants' Counsel.  Lead Plaintiff, on the one hand, and Defendants, on the other, expressly acknowledge that there are no agreements, arrangements, or understandings among or between them with respect to the subject matter of this Settlement Agreement other than those expressed or referred to in this Settlement Agreement.  In entering into this Settlement Agreement, no Settling Party has relied upon any representation or warranty not set forth expressly herein.

L.       This Settlement Agreement shall be governed by and interpreted according to the laws of the State of New York, excluding its conflict-of-laws provisions.

M.       Any action arising under or to enforce this Settlement Agreement shall be commenced and maintained only in the Court, which shall retain continuing jurisdiction over all matters relating to the Settlement.

N.      Whenever this Settlement Agreement requires or contemplates that a Settling Party shall or may give notice to the other, notice shall be provided by facsimile and/or next-day (excluding Saturday, Sunday, and legal holidays) express delivery service as follows, and shall be deemed effective upon such facsimile transmission or delivery to the facsimile number or address, as the case may be, below:

1.      If to Lead Counsel:

        Bernstein Litowitz Berger & Grossmann LLP
        1285 Avenue of the Americas
        New York, New York 10019
        Telephone:  (212) 554-1400
        Facsimile:  (212) 554-1444
        Attn: Salvatore J. Graziano, Esq.

2.      If to Scottish Re and the Individual Defendants, other than Scott Willkomm:

        Dewey & LeBoeuf LLP
        1101 New York Avenue, N.W.
        Washington, D.C. 2005-4213
        Telephone:  (202) 326-8000
        Facsimile: (202) 346-8102
        Attn: Lyle Roberts, Esq.

3.      If to Scott Willkomm:

        Davis Polk & Wardwell
        450 Lexington Avenue
        New York, New York 10017
        Telephone:  (212) 450-4900
        Facsimile:  (212) 450-3900
        Attn: Dennis E. Glazer, Esq.

4.      If to the Underwriter Defendants:

        Latham & Watkins LLP
        885 Third Avenue
        New York, New York 10022
        Telephone:  (212) 906-1200
        Facsimile:  (212) 751-4864
        Attn: Jeff G. Hammel, Esq.

5.      If to E&Y:

               Hughes Hubbard & Reed LLP
               One Battery Park Plaza
               New York, New York 10004
               Telephone:  (212) 837-6000
               Facsimile:  (212) 299-6879
               Attn: William Maguire, Esq.

O.      All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Settlement Agreement or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in Court, a day on which weather or other conditions have made the office of the Clerk of Court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.  As used in this Section, "legal holiday" includes New Year's Day, the observance of the Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day appointed as a federal or New York state holiday in the United States.

P.      The Settling Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

Q.      All Settling Parties agree that this Settlement Agreement was drafted by counsel for the Settling Parties at arm's length and that no parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Settling Parties or their counsel, or the circumstances under which this Settlement Agreement was made or executed.

49

Nor shall there be any presumption for or against any Settling Party that drafted all or any portion of this Settlement Agreement.

R.      This Settlement Agreement, offer of this Settlement Agreement, and compliance with this Settlement Agreement shall not constitute or be construed as an admission by any of the Releasees of any wrongdoing or liability.  This Settlement Agreement is to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Amended Complaint and of the Plaintiffs' Released Claims.  The Settling Parties agree that no party was or is a "prevailing party" in this case.  In no event shall this Settlement Agreement, any of its provisions, or any negotiations, statements, or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or any judicial, administrative, regulatory, or other proceeding, except in a proceeding to enforce this Settlement Agreement.  Without limiting the foregoing, neither this Settlement Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, Defendants, or as a waiver by Defendants of any applicable defense, or as a waiver by Lead Plaintiff, or the Class of any Claims, causes of action, or remedies.

S.      No opinion or advice concerning the tax consequences of the proposed settlement to individual Class Members or any of the Settling Parties is being given or will be given by Defendants' Counsel and/or Lead Counsel; nor is any representation or warranty in this regard made by virtue of this Settlement Agreement.  Class Members will be directed to consult their own tax advisors regarding the tax consequences of the proposed settlement and any tax

reporting obligations they might have with respect to it. Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

T.       The Settling Parties, their successors and assigns, and their attorneys undertake to implement the terms of this Settlement Agreement in good faith and to use good faith in resolving any disputes that might arise in the implementation of the terms of this Settlement Agreement.

U.       The Settling Parties, their successors and assigns, and their attorneys agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use all reasonable efforts to effect the prompt consummation of this Settlement Agreement and the proposed settlement.

V.       This Settlement Agreement may be signed in counterparts, each of which shall constitute a duplicate original. Execution by facsimile shall be fully and legally binding on a Settling Party.

W.       All Releasees who are not Settling Parties are intended third-party beneficiaries who are entitled as of the Final Settlement Date to enforce the terms of the Release set forth in this Settlement Agreement.

Agreed to as of this 21st day of August, 2008.

**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**

By: *Salvatore J. Graziano*

    Max W. Berger
    Salvatore J. Graziano
    1285 Avenue of the Americas
    New York, New York 10019
    Telephone: (212) 554-1400
    Facsimile: (212) 554-1444

    **Counsel for Lead Plaintiff and
    Lead Counsel for the Class**

**DEWEY & LEBOEUF LLP**

By: _____

    Ralph C. Ferrara
    Lyle Roberts, *pro hac vice*
    George Anhang, *pro hac vice*
    Daniel K. Chang
    101 New York Avenue, N.W.
    Washington, D.C. 2005-4213
    Telephone: (202) 326-8000
    Facsimile: (202) 346-8102

    **Counsel for Defendants Scottish
    Re Group Limited, Elizabeth
    Murphy, Dean E. Miller, Michael
    C. French, Michael Austin,
    William Caulfeild-Browne,
    Robert Chmely, Lord Norman
    Lamont, and Hazel O'Leary**

**DAVIS POLK & WARDWELL**

By: _____

    Dennis E. Glazer
    Elliot Moskowitz
    450 Lexington Avenue
    New York, NY 10017
    Telephone: (212) 450-4900
    Facsimile: (212) 450-3800

    **Counsel for Defendant
    Scott Willkomm**

Agreed to as of this 21st day of August, 2008.

**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**

By: _____
      Max W. Berger
      Salvatore J. Graziano
      1285 Avenue of the Americas
      New York, New York 10019
      Telephone:  (212) 554-1400
      Facsimile:  (212) 554-1444

      **Counsel for Lead Plaintiff and
      Lead Counsel for the Class**

**DEWEY & LEBOEUF LLP**

By: _____
      Ralph C. Ferrara
      Lyle Roberts, *pro hac vice*
      George Anhang, *pro hac vice*
      Daniel K. Chang
      101 New York Avenue, N.W.
      Washington, D.C. 2005-4213
      Telephone:  (202) 326-8000
      Facsimile:  (202) 346-8102

      **Counsel for Defendants Scottish
      Re Group Limited, Elizabeth
      Murphy, Dean E. Miller, Michael
      C. French, Michael Austin,
      William Caulfeild-Browne,
      Robert Chmely, Lord Norman
      Lamont, and Hazel O'Leary**

**DAVIS POLK & WARDWELL**

By: _____
      Dennis E. Glazer
      Elliot Moskowitz
      450 Lexington Avenue
      New York, NY 10017
      Telephone: (212) 450-4900
      Facsimile: (212) 450-3800

      **Counsel for Defendant
      Scott Willkomm**

**LATHAM & WATKINS LLP**

**HUGHES HUBBARD & REED LLP**

By: _James E. Brandt_
     James E. Brandt
     Jeff G. Hammel
     885 Third Avenue
     New York, NY 10022
     Telephone: (212) 916-1200
     Facsimile: (212) 751-4864

**Counsel for the Underwriter Defendants**

By: _William Maguire_
     William Maguire, Esq.
     One Battery Park Plaza
     New York, New York 10004
     Telephone: (212) 837-6000
     Facsimile: (212) 299-6879

**Counsel for Ernst & Young LLP**

NY Doc # 322301.13

# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————————x
                                                        :
In re SCOTTISH RE GROUP                 :        Master File No. 06-cv-5853 (SAS)
SECURITIES LITIGATION                     :
                                                        :
————————————————————————x

### [Proposed] ORDER PRELIMINARILY
### <u>APPROVING PROPOSED SETTLEMENT</u>

WHEREAS, Lead Plaintiff the State Teachers Retirement System of Ohio, on behalf of

the Class (as defined below), has applied to the Court pursuant to Rule 23(e) of the Federal Rules

of Civil Procedure for an order approving (*i*) the settlement of the above-captioned litigation in

accordance with the Stipulation and Agreement of Settlement dated August 21, 2008 (the

"Stipulation"), which, together with the exhibits annexed thereto, sets forth the terms and

conditions for a proposed settlement of the Action (the "Settlement"), and for dismissal of the

Action with prejudice as against Scottish Re Group Limited ("Scottish Re"), certain of Scottish

Re's current and former officers and directors, namely, Scott Willkomm, Elizabeth Murphy,

Dean E. Miller, Michael C. French, Michael Austin, William Caulfeild-Browne, Robert Chmely,

Lord Norman Lamont, and Hazel O'Leary (the "Individual Defendants"); and the underwriters

of and forward purchasers of either or both the July 2005 public offering and sale of Scottish Re

Non-Cumulative Perpetual Preferred Shares and the December 2005 public offering of Scottish

Re Ordinary Shares, namely Lehman Brothers Inc.; Bear, Stearns & Co. Inc.; Banc of America

Securities LLC; Keefe, Bruyette & Woods, Inc.; Oppenheimer & Co. Inc.; Advest, Inc.; RBC

Dain Rauscher Inc.; Stifel, Nicolaus & Company, Incorporated; Goldman, Sachs & Co.;

Wachovia Capital Markets, LLC; A.G. Edwards & Sons, Inc.; Fox-Pitt, Kelton Incorporated;

Bear Stearns International Limited; and Lehman Brothers OTC Derivatives (the "Underwriter

Defendants"), and Scottish Re's independent auditors during the Class Period, Ernst & Young LLP ("E&Y"), (collectively, the "Defendants") upon the terms and conditions set forth in the Stipulation; and the Court having read and considered the Stipulation and the exhibits annexed thereto;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:[1]

1.   **Certification of Class Solely for Purposes of the Settlement.**   The Court preliminarily certifies for purposes of the Settlement only, pursuant to Rule 23 of the Federal Rules of Civil Procedure, a class defined as: all persons and entities who purchased or otherwise acquired Scottish Re Ordinary Shares, Non-Cumulative Perpetual Preferred Shares ("Preferred Shares") and/or Convertible Preferred Shares of Hybrid Capital Units ("HyCU Shares") in the Offerings, or on the open market, between February 17, 2005 and February 20, 2007, inclusive, and who, upon disclosure of certain facts alleged in the Amended Complaint, were injured thereby (the "Class" or "Class Members").  Excluded from the Class are:  (a) Defendants; (b) Immediate Family Members of the Individual Defendants; (c) the majority-owned subsidiaries and affiliates of Defendants; (d) any person or entity who is or during the Class Period was a partner, executive officer, director, or controlling person of Scottish Re (including any of its subsidiaries of affiliates) or any other Defendant; (e) any entity in which any Defendant has a Controlling Interest, provided that any Investment Vehicle shall not be deemed an excluded person or entity by definition); and (f) the legal representatives, heirs, successors and assigns of

---

[1]     Terms not defined in this Order shall have the definitions ascribed to them in the Stipulation.

any such excluded party.  Also excluded from the Class are any persons or entities who submit valid and timely requests for exclusion from the Class.

Also, the State Teachers Retirement System of Ohio is preliminarily certified for purposes of the Settlement only as Class Representative, and the law firm of Bernstein Litowitz Berger & Grossmann LLP is preliminarily appointed Class Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

2.    **Preliminary Findings on Proposed Settlement.**  The Court preliminarily finds that the proposed Settlement evidenced by the Stipulation is sufficiently fair, reasonable, and adequate to warrant sending notice of the proposed Settlement to the Class and scheduling a hearing for further review of the proposed Settlement.  By the time of that hearing, the Court will have had the benefit of any submissions from Class Members concerning the proposed Settlement.

3.    **Fairness Hearing.**  Pursuant to Fed. R. Civ. P. 23(e), the Court will hold a hearing (the "Fairness Hearing") on _____ __, 2008, at _:00 _.m., in Courtroom 15C of the United States District Court for the Southern District of New York, Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York 10007.  The Court may adjourn the Fairness Hearing and reconvene it at some other date without further notice to Class Members, and may approve the Settlement, at or after the Fairness Hearing with such modifications as may be consented to by the parties to the Stipulation and without further notice to the Class.

4.    The Fairness Hearing will consider, among other things:

a.    whether the proposed Settlement should be approved as fair, reasonable, and adequate;

b.      whether an Order and Final Judgment, substantially in the form attached as *Exhibit B* to the Stipulation, should be entered dismissing the Action on the merits and with prejudice as to Defendants, and whether the Class's release of the Plaintiffs' Released Claims, as set forth in the Stipulation, should be provided to the Releasees;

c.      whether the proposed Plan of Allocation is fair and reasonable and should be approved by the Court;

d.      whether the Individual Notice, Summary Notice, and notice methodology implemented pursuant to the Stipulation and this Order (*i*) constituted the best practicable notice, (*ii*) constituted notice that was reasonably calculated, under the circumstances, to apprise potential Class Members of the pendency of the Action, their right to object to the proposed Settlement, their right to appear at the Fairness Hearing, and their right to exclude themselves from the Class, (*iii*) were reasonable and constituted due, adequate, and sufficient notice to all persons entitled to notice, and (*iv*) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of the Court, the Private Securities Litigation Reform Act (the "PSLRA"), and any other applicable law;

e.      whether the Court should enter the PSLRA Contribution Bar Order and the Complete Bar Order, as described in the Stipulation;

f.      whether the Court should permanently bar and enjoin (*i*) all Class Members (and their heirs, executors, administrators, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b) and assigns) from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from any other lawsuit, arbitration, or other proceeding or order, in any jurisdiction,

A-4

that is based upon, arises out of, or relates to any Plaintiffs' Released Claim as to any Releasee, including, but not limited to, any claim that is based upon, arises out of, or relates to the Action and the transactions and occurrences referred to in the First Complaint or the Amended Complaint, and (*ii*) all persons and entities from organizing any Class Members for purposes of pursuing as a purported class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action) any lawsuit that is based upon, arises out of, or relates to any Plaintiffs' Released Claims as to any Releasees, including, but not limited to, any claim that is based upon, arises out of, or relates to the Action and the transactions and occurrences referred to in the First Complaint or the Amended Complaint and that arises out of or relates to the purchase, sale, other disposition of, or decision to hold, or any other Investment Decision concerning any securities of Scottish Re during the Class Period;

    g.  whether Lead Counsel's request for fees and reimbursement of expenses should be approved by the Court; and

    h.  any other matters that the Court may deem appropriate.

   5.  **Notice to Class Members.** The Court hereby approves, as to form and content, the Individual Notice annexed hereto as *Exhibit A-1*, the Proof of Claim annexed hereto as *Exhibit A-2*, and the Summary Notice annexed hereto as *Exhibit A-3*.  The Court finds that the publication of the Summary Notice and the mailing and distribution of the Individual Notice substantially in the manner and form set forth in paragraphs 6 though 9 of this Preliminary Approval Order meet the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the PSLRA, and constitute the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

6.      Within eight (8) days from the date of entry of this Preliminary Approval Order, Scottish Re and/or its transfer agent(s), to the extent they have not already done so, shall provide or cause to be provided to the Claims Administrator its or their lists of holders of Scottish Re Ordinary Shares, Preferred Shares and/or HyCU Shares ("Scottish Re Securities"), in electronic form, for providing notice to the Class (the "Security Holder Lists").  To the extent practicable, the Security Holder Lists shall contain the names and addresses of all purchasers of Scottish Re Securities during the Class Period.  Scottish Re shall bear all costs or expenses associated with providing the Claims Administrator with the Security Holder Lists.

7.      Lead Counsel shall mail or cause to be mailed the Individual Notice substantially in the form annexed hereto as *Exhibit A-1*, and the Proof of Claim substantially in the form annexed hereto as *Exhibit A-2*, by first-class mail, postage prepaid, no later than eighteen (18) days after entry of this Preliminary Approval Order, to all Class Members at the address of each such person as set forth in the Security Holder Lists, or who are identified by further reasonable efforts.  The cost of notice to Class Members will be paid out of the Escrow Account, as addressed in the Stipulation.  Lead Counsel is hereby empowered to supervise and administer the notice procedure as set forth below.

8.      Within twenty-five (25) days from the date of entry of this Preliminary Approval Order, Lead Counsel shall cause the Summary Notice to be published, substantially in the form annexed hereto as *Exhibit A-3*, once each in the global edition of *The Wall Street Journal* and in *The Financial Times*.  At least five (5) days before the Fairness Hearing, Lead Counsel shall serve and file with the Court proof by affidavit or declaration of such mailing and publication.

9.      Lead Counsel shall make reasonable efforts to identify all persons who are potential Class Members, including beneficial owners whose Scottish Re Securities are or were

A-6

held by banks, brokerage firms, or other nominees. Nominees who purchased or otherwise acquired Scottish Re Securities during the Class Period are directed either: (a) to request from the Claims Administrator, within fourteen (14) days after receipt of the Individual Notice, additional copies of the Individual Notice and the Proof of Claim for distribution to beneficial owners, or (b) to send a list of the names and addresses of such beneficial owners to the Claims Administrator within fourteen (14) days after receipt of the Individual Notice. If a nominee elects to send the Individual Notice to beneficial owners, such nominee is directed to mail the Individual Notice within fourteen (14) days after receipt of the copies of the Individual Notice from the Claims Administrator, and upon such mailing, the nominee shall send a statement to the Claims Administrator confirming that the mailing was made as directed, and the nominee shall retain the list of names and addresses for use in connection with any possible future notice to the Class. Upon full compliance with this Preliminary Approval Order, including the timely mailing of the Individual Notice to beneficial owners, such nominees may seek reimbursement of their reasonable expenses actually incurred in complying with this Preliminary Approval Order by providing the Claims Administrator with proper documentation supporting the reasonable expenses for which reimbursement is sought and reflecting compliance with these instructions, including timely mailing of the Individual Notice, if the nominee elected or elects to do so. Such properly documented reasonable expenses incurred by nominees in compliance with the terms of this Preliminary Approval Order shall be paid from the Escrow Account.

10. **Communications with Class Members**. The Releasees shall maintain the right to communicate orally and in writing with, and respond to inquiries from, potential Class Members, including (without limitation): (*i*) communications between potential Class Members and representatives of the Releasees whose responsibilities include investor relations, to the

extent such communications are initiated by potential Class Members, and, in such circumstances, the Releasees shall use their best efforts to direct such potential Class Members to the Claims Administrator or to the Claims Administrator's website, or to Lead Counsel; (*ii*) communications as may be necessary to implement the terms of the Stipulation, and (*iii*) communications as may be made in the conduct of the Releasees' businesses.

11.    **Administration.**

a.    **Retention of Claims Administrator.**    The Court approves Lead Plaintiff's selection of A.B. Data, Ltd.  to serve as claims administrator (the "Claims Administrator"), for the purposes of, among other things, effectuating the Individual Notice, the Summary Notice, and website, processing Proof of Claim forms, and distributing payments to Class Members from the Net Settlement Fund.  The Claims Administrator shall be responsible for the receipt of all responses from Class Members and shall preserve all Proofs of Claim and any and all other written communications from Class Members, nominees, or any other person in response to the Individual Notice or Summary Notice until one year following the date of distribution of the proceeds of the Net Settlement Fund to Class Members or pursuant to further order of the Court.

b.    **Notice and Administration Costs and Taxes.**    As provided in the Stipulation, (*i*) all reasonable costs incurred in identifying and notifying Class Members, as well as administering the Settlement, shall be paid as set forth in the Stipulation without further order of the Court, and (*ii*) Lead Counsel or the Claims Administrator or their agents are authorized and directed to prepare any tax returns required to be filed on behalf of or in respect of the Settlement Fund, to cause any Taxes due and owing to be paid from the Settlement Fund, and to

otherwise perform all obligations with respect to Taxes and any reporting or filings in respect thereof as contemplated by the Stipulation, without further order of the Court.

        c.     **Participation in Distribution of the Net Settlement Fund**.  In order to be entitled to participate in the Net Settlement Fund, in the event the Settlement is effected in accordance with the terms and conditions set forth in the Stipulation, each Class Member shall take the following actions and be subject to the following conditions:

        (i)     A properly executed Proof of Claim, substantially in the form attached hereto as Exhibit 2, must be submitted to the Claims Administrator, at the Post Office Box indicated in the Individual Notice, postmarked not later than one hundred twenty (120) calendar days after the date set for mailing the Individual Notice.  Such deadline may be further extended by Court Order.  Each Proof of Claim shall be deemed to have been submitted when postmarked (if properly addressed and mailed by first class mail, postage prepaid) provided such Proof of Claim is actually received prior to the motion for an order of the Court approving distribution of the Net Settlement Fund.  Any Proof of Claim submitted in any other manner shall be deemed to have been submitted when it was actually received at the address designated in the Individual Notice.

        (ii)     The Proof of Claim submitted by each Class Member must satisfy the following conditions:  (a) it must be properly completed, signed and submitted in a timely manner in accordance with the provisions of the preceding subparagraph; (b) it must be accompanied by adequate supporting documentation for the transactions reported therein, in the form of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional information found in a broker confirmation slip, or such other documentation as is deemed adequate by Lead Counsel;

(c) if the person executing the Proof of Claim is acting in a representative capacity, a certification of his current authority to act on behalf of the Class Member must be included in the Proof of Claim; and (d) the Proof of Claim must be complete and contain no material deletions or modifications of any of the printed matter contained therein and must be signed under penalty of perjury.

(iii)    As part of the Proof of Claim, each Class Member shall submit to the jurisdiction of the Court with respect to the claim submitted, and shall (subject to effectuation of the Settlement) release all claims as provided in the Stipulation.

12.    **Exclusion from Class**.  All potential Class Members who wish to exclude themselves from the Class must submit a timely, written request for exclusion to the Claims Administrator.  The exclusion request must include the following information:  (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) identification of the Scottish Re Securities and the number of shares of the Scottish Re Securities purchased or otherwise acquired or sold, (*v*) prices paid or value received, and (*vi*) the date of each transaction.  To be valid, any request for exclusion must be in writing, must contain all the required information, and must be received by the Claims Administrator no later than twenty-one (21) days before the date set for the Fairness Hearing.  If the proposed Settlement is approved, any potential Class Member who has not filed a timely and valid written request for exclusion from the Class (and his, her, or its heirs, executors, administrators, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 201.1-02.b) and assigns) shall be bound by the release provided for in the Stipulation and by all proceedings, orders, and judgments in the Action, even if he, she, or it has pending, or subsequently initiates, any litigation, arbitration, or other proceeding, or has any other Claim, against any or all of the Releasees relating to any of the Plaintiffs' Released Claims.  At or before the Fairness Hearing,

the Settling Parties shall provide to the Court a list of the persons and entities, if any, who have validly and timely requested exclusion from the Class.  Persons requesting exclusion from the Class shall not be entitled to receive any payment out of the Net Settlement Fund.

13.     **Preliminary Injunction**.  Pending final determination of whether the Settlement should be approved,

a.      Lead Plaintiffs and all Class Members (and their heirs, executors, administrators, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b) and assigns) who have not validly and timely requested exclusion from the Class are preliminarily enjoined from filing, commencing, prosecuting, intervening in, participating in, as class members or otherwise, or receiving any benefits or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding or order in any jurisdiction, as to the Releasees based on or relating in any way to (*i*) the claims and causes of action, or the facts and circumstances relating thereto, in the Action; and (*ii*) the Released Plaintiffs' Claims; and

b.      All persons are preliminarily enjoined from filing, commencing, or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) on behalf of any Class Members as to the Releasees, if such other lawsuit is based on or related in any way to the claims and causes of action, or the facts and circumstances relating thereto, in the Action and the Released Plaintiffs' Claims.

14.     **Objections**.  Any Class Member who has not filed a request for exclusion from the Class and who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, must serve on each of the parties' respective counsel as set forth in the Individual Notice and file with the Court a statement of his, her, or its objection(s), as well as the specific

reason(s), if any, for each such objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of such objection.  Any objection also must include the following information about the Class Member:  (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) identification of the Scottish Re Securities and the number of shares of the Scottish Re Securities purchased or otherwise acquired or sold, (*v*) prices paid or value received, and (*vi*) the date of each transaction.  Any such objection must be served on each of the parties' respective counsel and filed with the Court so that it is received no later than twenty-one (21) days before the date set for the Fairness Hearing.  If a Class Member hires an attorney (which shall be at his, her, or its own expense) to represent him, her, or it for the purposes of objecting, such attorney must serve a notice of appearance on each of the parties' respective counsel and file it with the Court so that it is received no later than twenty-one (21) days before the date set for the Fairness Hearing.  Any Class Member who does not make an objection in the time and manner set forth herein shall be deemed to have waived such objection, shall be bound by the terms of the Stipulation and the Order and Final Judgment, and shall be foreclosed forever from making any objection to the fairness or adequacy of the proposed Settlement, unless otherwise allowed by the Court.

15.    **Appearance at Fairness Hearing**.  Any Class Member who files and serves a timely, written objection in accordance with paragraph 14 above may also appear at the Fairness Hearing either in person or through counsel retained at the Class Member's expense.  Class Members or their attorneys intending to appear at the Fairness Hearing must serve a notice of intention to appear, setting forth, among other things, the name, address, and telephone number of the Class Member (and, if applicable, the name, address, and telephone number of the Class Member's attorney), on Lead Counsel (at the address set forth above) and file it with the Court

no later than twenty-one (21) days before the date set for the Fairness Hearing.  Any Class Member who does not timely file and serve a notice of intention to appear in accordance with this paragraph shall not be permitted to appear at the Fairness Hearing, except for good cause shown.

16.     **Access to Discovery Materials.**  Upon agreeing to be bound by the Protective Order entered by this Court, a Class Member (and his, her, or its counsel (if any)) will be provided access, at his, her, or its own expense, to the discovery materials in the Action for the sole purpose of assessing the Settlement.  The discovery materials in the Action shall be made available for inspection at the offices of Lead Counsel in New York, New York, for a period of no more than fifteen (15) days from the date on which a request of access is made and, in any event, no later than five (5) business days before the Fairness Hearing.

17.     **Filing of Papers**.  All papers in support of the Settlement shall be filed at least seven (7) days before the Fairness Hearing, with a courtesy copy sent to the Court's Chambers.

18.     **Qualified Settlement Fund.**  The Escrow Account into which the Settlement Amount will be paid shall be considered a Qualified Settlement Fund *in custodia legis* of the Court, in accordance with Treas. Reg. §§ 1.468B-0 through 1.468B-5.

19.     **Termination of Settlement**.  This Order shall become null and void, and shall be without prejudice to the rights of the Settling Parties, all of whom shall be restored to their respective positions as set forth in the Stipulation, if (*i*) the proposed Settlement is not finally approved by the Court, or does not become Final, pursuant to the terms of the Stipulation; or (*ii*) the proposed Settlement is  terminated in accordance with the terms of the Stipulation or does not become effective as required by the terms of the Stipulation for any other reason.  In such event,

the Stipulation shall become null and void and of no further force and effect, and shall not be used or referred to for any purpose whatsoever.

      20.    **Use of Order**.  This Order shall be of no force or effect if the Stipulation does not become Final.  This Order shall not be construed or used as an admission, concession, or declaration by or against the Releasees of any fault, wrongdoing, breach, or liability.  Nor shall this Order be construed or used as an admission, concession, or declaration by or against Lead Plaintiff or the Class Members that their claims lack merit or that the relief requested in the Amended Complaint is inappropriate, improper, or unavailable, or as a waiver by any party of any defenses or claims he, she, or it might have.

      21.    **Continuance of Hearing**.  The Court reserves the right to adjourn the date of the Fairness Hearing, and any adjournment thereof, without further notice to Class Members and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

Dated:      New York, New York
              _____, 2008


                       _____
                       SHIRA A. SCHEINDLIN
                      United States District Judge

#322465.6

A-14

# Exhibit A-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————x
                                                  :
In re SCOTTISH RE GROUP                           :    Master File No. 06-cv-5853 (SAS)
SECURITIES LITIGATION                             :
                                                  :
————————————————————————x


### NOTICE OF: (1) PENDENCY AND PROPOSED SETTLEMENT OF
### CLASS ACTION AND (2) HEARING ON PROPOSED SETTLEMENT

*A Federal Court authorized this Notice.  This is not a solicitation from a lawyer.*


**NOTICE OF PENDENCY OF CLASS ACTION:  Please be advised that your rights may be affected by a class action lawsuit pending in this Court (the "Action") if, during the period from February 17, 2005 through and including February 20, 2007, you purchased or otherwise acquired Scottish Re Group Limited ("Scottish Re") Ordinary Shares, Non-Cumulative Perpetual Preferred Shares and/or Convertible Preferred Shares of Hybrid Capital Units.**


**NOTICE OF SETTLEMENT:  Please also be advised that Lead Plaintiff, on behalf of the Class (as defined below), has reached a proposed Settlement (the "Settlement") for a total of $37.5 million in cash that will resolve all of the claims asserted in the Action against Defendants (as defined below).**


***This Notice explains important rights you may have, including your possible receipt of cash from the Settlement.  Your legal rights will be affected whether or not you act.  Please read this Notice carefully!***


1.  **Statement of Class's Recovery:**  Pursuant to the Settlement described herein, a Settlement Amount consisting of $37.5 million in cash has been deposited in an interest bearing Escrow Account for the benefit of the Class.  Lead Plaintiff's damages expert estimates that there were approximately 48.75 million shares of Scottish Re Ordinary Shares, Non-Cumulative Perpetual Preferred Shares ("Preferred Shares") and Convertible Preferred Shares of Hybrid Capital Units ("HyCU Shares") traded during the Class Period which may have been damaged.  (Scottish Re's Ordinary Shares, Preferred Shares, and HyCU Shares are referred to collectively as "Scottish Re Securities.")  As discussed below, claims were asserted under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").  Not all Class Members have a claim under both acts.  Lead Plaintiff's damages expert estimates that the average recovery per damaged share under the Settlement is $0.76 per damaged Ordinary Share for Class Members who only have the Exchange Act claims and $1.01 per damaged Ordinary Share for Class Members who have both the Exchange Act and the Securities Act claims, $0.48  per damaged  Preferred Share (Class Members who purchased Preferred Shares have both the

Securities Act and Exchange Act claims); and $0.59 per damaged HyCU Share (Class Members who purchased HyCU Shares only have the Exchange Act claims) before deduction of Court-awarded attorneys' fees and expenses and the costs of administration.  A Class Member's actual recovery will be determined in accordance with the Plan of Allocation set forth on pages [___] below, if the Court approves the plan.  The Court may modify the proposed Plan of Allocation or adopt a different plan, without further notice to the Class.

2.   **Statement of Average Amount of Damages Per Security:** The parties disagree on both liability and damages, and do not agree on the average amount of damages per Scottish Re Security that would be recoverable if plaintiffs were to have prevailed on each claim alleged.  The issues on which the parties disagree include (a) the appropriate method for determining the amount by which the Scottish Re Securities were allegedly artificially inflated (if at all) during the Class Period; (b) the amount by which the Scottish Re Securities were allegedly artificially inflated (if at all) during the Class Period; (c) the effect of various market forces influencing the trading price of the Scottish Re Securities at various times during the Class Period; (d) the extent to which external factors, such as general market and industry conditions, influenced the trading price of the Scottish Re Securities at various times during the Class Period; (e) the extent to which the various matters that plaintiffs alleged were materially false or misleading influenced (if at all) the trading price of the Scottish Re Securities at various times during the Class Period; (f) the extent to which the various allegedly adverse material facts that plaintiffs alleged were omitted influenced (if at all) the trading price of the Scottish Re Securities at various times during the Class Period; and (g) whether the statements made or facts allegedly omitted were material or otherwise actionable under the federal securities laws.  Defendants deny that they are liable to Lead Plaintiff or the other members of the Class and deny that Lead Plaintiff or the other members of the Class have suffered any damages.

3.   **Statement of Attorneys' Fees and Expenses Sought:**  Lead Counsel is moving the Court to award attorneys' fees of 15% of the Settlement Amount ($5,625,000), and for reimbursement of expenses incurred in connection with the prosecution of this Action in an amount not to exceed $600,000.00 plus interest on both such amounts at the same rate as earned on the Settlement Amount.  The requested fees and expenses would amount to an average of approximately $0.13 per damaged share of the Scottish Re Securities in fees and expenses.  Application will also be made for reimbursement to the Lead Plaintiff for an amount not to exceed $10,000.00 for reimbursement of its reasonable costs and expenses directly related to the representation of the Class.  Plaintiffs' counsel have expended considerable time and effort in the prosecution of this litigation on a contingent fee basis, and have advanced the expenses of the litigation, in the expectation that if they were successful in obtaining a recovery for the Class they would be paid from such recovery.  In this type of litigation, it is customary for counsel to be awarded a percentage of the common fund recovery as their attorneys' fees.

4.   **Identification of Attorneys' Representatives:**  Lead Plaintiff and the Class are being represented by Bernstein Litowitz Berger & Grossmann LLP, Court-appointed Lead Counsel.  Any questions regarding the Settlement should be directed to: Salvatore J. Graziano, Bernstein Litowitz Berger & Grossmann LLP, 1285 Avenue of the Americas, New York, NY 10019, (800) 380-8496, blbg@blbglaw.com.

5.   **Reasons for the Settlement**:  For Lead Plaintiff, the principal reason for the Settlement is the benefit to be provided to the Class now.  This benefit must be considered in light of all the risks that Lead Plaintiff would face to succeed in proving liability and a larger amount of damages at a

trial.  Even if Lead Plaintiff was successful at trial, there would be further risks on appeal.  The $37.5 million in cash recovered now must be compared to the risks that no recovery, and importantly no larger recovery, might be achieved after a contested trial and likely appeals, possibly years into the future.

For Defendants, who deny all allegations of wrongdoing or liability whatsoever, the principal reason for the Settlement is to eliminate the expense, risks, and uncertain outcome of the litigation.

| YOUR LEGAL RIGHTS AND OPTIONS IN THESE SETTLEMENT: | |
|---|---|
| **REMAIN A MEMBER OF THE CLASS** | This is the only way to get a payment.  If you wish to obtain a payment as a Class Member, you will need to file a Proof of Claim form (which is included with this Notice) postmarked no later than _____, 2009. |
| **EXCLUDE YOURSELF FROM THE CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION *RECEIVED* NO LATER THAN _____, 2008** | Get no payment.  This is the only option that allows you to ever be part of any other lawsuit against any of the Defendants concerning the claims in this case. |
| **OBJECT TO THE SETTLEMENT BY SUBMITTING WRITTEN OBJECTIONS *RECEIVED* NO LATER THAN _____, 2008** | Write to the Court and explain why you do not like the Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of litigation expenses.  You cannot object to the Settlement unless you are a Class Member and do not exclude yourself. |
| **GO TO THE HEARING ON _____, 2008 AT _____ __.M., AND FILE A NOTICE OF INTENTION TO APPEAR *RECEIVED* NO LATER THAN _____, 2008** | Ask to speak in Court about the fairness of the Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of litigation expenses. |
| **DO NOTHING** | Get no payment.  Remain a Class Member.  Give up your rights. |

| WHAT THIS NOTICE CONTAINS |
|---|

Why Did I Get This Notice?     Page

What Is This Case About?  What Has Happened So Far?     Page

How Do I Know If I Am Affected By The Settlement?     Page

What Are The Lead Plaintiff's Reasons For The Settlement?     Page

What Might Happen If There Was No Settlement?     Page

How Much Will My Payment Be?     Page

What Rights Am I Giving Up By Agreeing To The Settlement?     Page

What Payment Are The Attorneys For The Class Seeking?

How Will The Lawyers And Class Representative Be Paid?    Page

How Do I Participate In The Settlement?  What Do I Need To Do?    Page

What If I Do Not Want To Be A Part Of The Settlement?  How Do I Exclude Myself?    Page

When And Where Will The Court Decide Whether To Approve The Settlement?

    Do I Have To Come To The Hearing?  May I Speak At The Hearing

    If I Don't Like The Settlement?    Page

What If I Bought Shares On Someone Else's Behalf?    Page

Can I See The Court File?  Whom Should I Contact If I Have Questions?    Page

---

### WHY DID I GET THIS NOTICE?

---

6.   This Notice is being sent to you pursuant to an Order of the United States District Court for the Southern District of New York (the "Court") because you or someone in your family may have purchased Scottish Re Securities during the period from February 17, 2005 through and including February 20, 2007 (the "Class Period").  The Court has directed us to send you this Notice because, as a potential Class Member, you have a right to know about your options before the Court rules on the proposed settlement of this case.  Additionally, you have the right to understand how a class action lawsuit may generally affect your legal rights.  If the Court approves the Settlement, the claims administrator selected by Lead Plaintiff and approved by the Court will make payments pursuant to the Settlement after any objections and appeals are resolved.

7.   In a class action lawsuit, the Court selects one or more people, known as class representatives, to sue on behalf of all people with similar claims, commonly known as the class or the class members.  In this Action, the Court has appointed the State Teachers Retirement System of Ohio ("Ohio STRS") to serve as "Lead Plaintiff" under a federal law governing lawsuits such as this one, and has approved Lead Plaintiff's selection of Bernstein Litowitz Berger & Grossmann LLP to serve as Lead Counsel in the Action.  A class action is a type of lawsuit in which the claims of a number of individuals are resolved together, thus providing the class members with both consistency and efficiency.  Once the class is certified, the Court must resolve all issues on behalf of all class members, except for any persons who choose to exclude themselves from the class.  (For more information on excluding yourself from the Class, please read "What If I Do Not Want To Be A Part Of The Settlement?  How Do I Exclude Myself?," located below.)

8.   The Court in charge of the case is the United States District Court for the Southern District of New York, and the case is known as *In re Scottish Re Group Securities Litigation,* Master File No. 06-cv-5853 (SAS).  The Judge presiding over this case is the Honorable Shira A. Scheindlin, United States District Judge.  The people who are suing are called plaintiffs, and those who are being sued are called defendants.  In this case, the plaintiff is referred to as the Lead Plaintiff, and it is suing on its own behalf and on behalf of the Class.  The Defendants are Scottish Re; certain of its current and former officers and directors of Scottish Re, namely, Scott Willkomm, Elizabeth Murphy, Dean E. Miller, Michael C. French, Michael Austin, William Caulfeild-Browne, Robert Chmely, Lord Norman Lamont, and Hazel O'Leary (the "Individual Defendants"); underwriters and forward purchasers of Scottish Re Securities sold in public offerings in July and December 2005, namely, Lehman Brothers Inc., Bear, Stearns & Co. Inc., Banc of America Securities LLC,

Keefe, Bruyette & Woods, Inc., Oppenheimer & Co. Inc., Advest, Inc., RBC Dain Rauscher Inc., Stifel, Nicolaus & Company, Incorporated, Goldman, Sachs & Co., Wachovia Capital Markets, LLC, A.G. Edwards & Sons, Inc., Fox-Pitt, Kelton Incorporated, Bear Stearns International Limited, and Lehman Brothers OTC Derivatives (the "Underwriter Defendants"); and Scottish Re's auditors during the Class Period, Ernst & Young LLP ("E&Y").

9.   This Notice explains the Action, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.  The purpose of this Notice is to inform you of this case, that it is a class action, how you might be affected, and how to exclude yourself from the Settlement if you wish to do so.  It also is being sent to inform you of the terms of the proposed Settlement, and of a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the proposed Settlement (the "Fairness Hearing").

10. The Fairness Hearing will be held on _____, at _____ __.m., before the Honorable Shira A. Scheindlin, at the United States District Court for the Southern District of New York, located at 500 Pearl Street, Courtroom 15C, New York, New York, to determine, among other things:

(i)   whether the proposed Settlement is fair, reasonable, and adequate and should be approved by the Court;

(ii)   whether the Court should enter the bar orders and permanent injunctions requested in the proposed Settlement;

(iii)   whether the claims against the Defendants should be dismissed with prejudice as set forth in the Stipulation and Agreement of Settlement;

(iv)   whether the proposed Plan of Allocation is fair and reasonable and should be approved by the Court; and

(v)   whether Lead Counsel's request for fees and reimbursement of expenses should be approved by the Court.

11.   This Notice does not express any opinion by the Court concerning the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement.  If the Court approves the Settlement, payments will be made after any appeals are resolved, and after the completion of all claims processing.  Please be patient.

| WHAT IS THIS CASE ABOUT?  WHAT HAS HAPPENED SO FAR? |
| --- |

12.   This Action is for alleged violations of the securities laws emanating from Defendants' alleged misrepresentations and omissions about the financial condition of Scottish Re and the reliability of its financial statements and internal controls between February 17, 2005 and February 20, 2007 which allegedly had the effect of artificially inflating the price of Scottish Re Securities. Lead Plaintiff alleged, among other things, that Scottish Re materially misstated its financial results by carrying an asset, the Deferred Tax Asset ("DTA"), on its balance sheet in an amount that it could not support in violation of Generally Accepted Accounting Principles ("GAAP"), and, that the certifications as to the adequacy of Scottish Re's internal controls, required by the Sarbanes Oxley Act of 2002, were materially false because Scottish Re had material deficiencies in its internal controls.  During the Class Period, Scottish Re had the following two public offerings of securities pursuant to registration statements and prospectuses (the "Scottish Re Offerings"): the July 2005 offering of the Preferred Shares, and the December 2005 offering of Ordinary Shares.

The Amended Complaint alleges that, in addition to other publicly issued statements, the registration statements and prospectuses for each of those offerings also contained materially false and misleading statements because they contained the allegedly false financial statements, including the year-end 2004 financial statements and defendant E&Y's unqualified auditor's report with respect to those statements (which is also alleged to be materially false and misleading), as well as allegedly false representations with respect to Scottish Re's internal controls.

13.   On July 31, 2006, Scottish Re issued a press release announcing that the Company expected to report a net loss of approximately $130 million for the second quarter ended June 30, 2006 due largely to "a valuation allowance on deferred tax assets of approximately $112 million." Deferred tax assets arise when a company will be able to benefit from a tax reduction in the future, against future income.  However, under GAAP, deferred tax assets may only be maintained on a company's balance sheet when it is "more likely than not" that they will be realized.  The Amended Complaint alleges that Scottish Re was relying on certain "tax planning strategies" that it knew or should have known did not support carrying those DTA's on its books because Scottish Re's securitization plans made it impossible for the Company to employ those strategies.[1]

14.   At the time of the July 31, 2006 announcement, the Amended Complaint alleges that Scottish Re had been and was continuing to rely on yet another improper tax planning strategy to support a significant part of its DTA.  On February 20, 2007, the last day of the Class Period, Scottish Re announced that it was taking a valuation allowance of $91 million against its DTA due to the failure of this second tax planning strategy.

15.   The Amended Complaint alleges that Scottish Re planned on securitizing the business it had acquired on December 31, 2004 to raise Regulation XXX reserves from the time of the earliest due diligence related to the acquisition.  Those securitization plans, Lead Plaintiff alleged, rendered the Company's DTA tax planning strategies neither prudent nor feasible (as they must be under GAAP), and, therefore, the Company should have recorded a valuation allowance and recognized material losses related to its DTA by no later than the start of the Class Period, February 17, 2005.  The Amended Complaint alleges that Scottish Re's failure to record those losses throughout the Class Period violated GAAP, and caused the Company's financial statements and other disclosures to be materially misstated at the time it conducted two large public offerings of Scottish Re Securities and throughout the Class Period.

---

[1]   Scottish Re, a corporation organized under the laws of the Cayman Islands, is a holding company engaged in the international reinsurance business.  Through its operating subsidiaries, Scottish Re is engaged in the reinsurance of life insurance, annuities and annuity-type products. As a life reinsurance company operating within the United States, Scottish Re is required by U.S. insurance regulations to maintain certain minimum levels of reserves.  As of January 1, 2000, some of those reserve requirements (known as "Regulation XXX" and "Regulation AXXX" reserves) were increased.  On December 31, 2004, Scottish Re acquired in-force life reinsurance business which substantially increased the Company's reserve requirements.  The Amended Complaint alleges that Scottish Re's plan was to fund those increased reserve requirements through the use of securitizations.  Once an asset is securitized, it is no longer capable of generating net income on the securitizing companies' books because the cash flows from that asset are committed to the debt holders of a separate entity.  In May 2006, Scottish Re completed a $2.1 billion securitization of assets acquired on December 31, 2004 that had Regulation XXX and AXXX reserve requirements through a special purpose entity called Ballantyne Re.

16.   Following the July 31, 2006 announcement that Scottish Re was taking a valuation allowance against its DTA, beginning on August 2, 2006, a number of lawsuits were filed on behalf of Scottish Re investors.  By Order entered October 13, 2006, the Court appointed Ohio STRS as Lead Plaintiff and approved its selection of Lead Counsel.  Also, by that Order, the Court consolidated all related cases for all purposes under Lead Plaintiff's direction.

17.   On December 4, 2006, Lead Plaintiff filed a Consolidated Class Action Complaint (the "First Complaint"), on behalf of a class consisting of all persons and entities who, during the period February 17, 2005 through and including July 31, 2006, purchased or otherwise acquired Scottish Re (i) Ordinary Shares (either on the open market or in the public offering that was completed in December 2005 pursuant to a registration statement and prospectus); (ii) Preferred Shares (either on the open market or in the public offering that was completed in July 2005 pursuant to a registration statement and prospectus); or (iii) HyCU Shares on the open market, and who were damaged by the alleged violations of the securities laws.  The First Complaint asserted two different sets of claims.  The first was a series of strict-liability and negligence-based claims under the Securities Act against the Defendants who allegedly would be statutorily responsible for the statements asserted to have been untrue in the registration statements and prospectuses filed in connection with the Scottish Re Offerings.  The second set of claims consisted of fraud-based claims under the Exchange Act against those Defendants who were alleged to have directly participated in the fraudulent scheme, and allegedly knew about the alleged fraud or were reckless in not discovering it.  The First Complaint alleged claims against: (i) Scottish Re under Sections 11 and 12(a)(2) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder; (ii) some or all of the Individual Defendants under Sections 11 and 15 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder; (iii)  some or all of the Underwriter Defendants under Sections 11 and 12(a)(2) of the Securities Act with respect to one or both of the Offerings; and (v) E&Y under Section 11 of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

18.   Defendants moved to dismiss the First Complaint in March 2007.  By Order dated November 1, 2007, the Court denied the motions, except with respect to the claim asserted against E&Y for violation of Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

19.   On December 21, 2007, Defendants filed their respective Answers to the First Complaint.

20.   On July 11, 2008, Lead Plaintiff filed the Amended Consolidated Class Action Complaint (the "Amended Complaint") which (i) extended the Class Period to add the period from August 1, 2006 through and including February 20, 2007 (the "Extended Class Period") based on allegations of additional misrepresentations and omissions relating to Scottish Re's accounting for its deferred tax assets and internal controls during the Extended Class Period, (ii) re-pleaded the previously dismissed Section 10(b) claim against E&Y; and (iii) added additional factual allegations relating to Lead Plaintiff's previously pleaded claims.

21.   On July 18, 2008, E&Y moved to dismiss the re-pled Section 10(b) claim against it, as well as the claim for the Extended Class Period and, on July 23, 2008, Scottish Re and the Individual Defendants and the Underwriter Defendants filed motions to dismiss the claims for the Extended Class Period.

22.   Defendants deny all allegations of misconduct contained in the First Complaint and the Amended Complaint and deny having engaged in any wrongdoing whatsoever.

23.    At the time the agreements in principle to settle the Action were reached, Lead Counsel had conducted substantial discovery and analysis in this Action, including: (i) a review and analysis of Scottish Re's public disclosures (filed with the Securities and Exchange Commission and otherwise); (ii) an analysis of Scottish Re's financial statements; (iii) a review of documents and information obtained through Lead Counsel's investigation; (iv) a review of millions of pages of documents produced by Defendants, and various non-parties pursuant to document requests; (v) consultations with various experts concerning damages, accounting, and insurance issues; and (vii) extensive research of the applicable law with respect to the claims asserted against the Defendants, and Defendants' potential defenses to those claims.

24.    The Settlement proposed in the Stipulation was achieved only after three full-day mediation sessions under the auspices of the Honorable Layn Phillips (ret.), a former Federal judge with significant experience in mediating complicated securities class actions, and follow-up negotiations thereafter.

25.    On _____, 2008, the Court preliminarily approved the Settlement, authorized this Notice to be sent to potential Class Members, and scheduled the Fairness Hearing to consider whether to grant final approval to the Settlement.

| HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT? |
| --- |

26.    If you are a Member of the Class, you are subject to the Settlement unless you timely request to be excluded.  The Class consists of all persons and entities who purchased or otherwise acquired Scottish Re Ordinary Shares, Preferred Shares and/or HyCU Shares in the Scottish Re Offerings, or on the open market, between February 17, 2005 and February 20, 2007, inclusive, and who, upon disclosure of certain facts alleged in the Amended Complaint, were injured thereby. Excluded from the Class are:  (a) Defendants; (b) Immediate Family Members of the Individual Defendants; (c) the majority-owned subsidiaries and affiliates of Defendants; (d) any person or entity who is or during the Class Period was a partner, executive officer, director, or controlling person of Scottish Re (including any of its subsidiaries of affiliates) or any other Defendant; (e) any entity in which any Defendant has a Controlling Interest provided that any Investment Vehicle shall not be deemed an excluded person or entity by definition); and (f) the legal representatives, heirs, successors and assigns of any such excluded party.  The Class also does not include those Persons who timely request exclusion from the Class pursuant to this Notice (see "What If I Do Not Want To Participate In The Settlement?  How Do I Exclude Myself," below).

**RECEIPT OF THIS NOTICE DOES NOT NECESSARILY MEAN THAT YOU ARE A CLASS MEMBER OR ARE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT.  IF YOU WISH TO PARTICIPATE IN THE SETTLEMENT, YOU ARE REQUIRED TO SUBMIT A CLAIM FORM.  YOU MUST RETURN THE CLAIM FORM POSTMARKED NO LATER THAN _____, __ 2009.**

<div style="border:1px solid black">

WHAT ARE THE LEAD PLAINTIFF'S REASONS FOR THE SETTLEMENT?

</div>

27.   Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants have merit.  Lead Plaintiff and Lead Counsel, however, recognize the expense and length of continued proceedings necessary to pursue their claims through trial and appeals, as well as the difficulties in establishing liability with respect to their allegations based on inflated deferred tax assets and weak internal controls.  There was considerable risk that Lead Plaintiff would not prevail at trial or on appeal.  Additionally, as to defendant Scottish Re, there was a very substantial risk that the Company would not have sufficient assets to satisfy a judgment even if Lead Plaintiff were to prevail at trial and on the appeals that would surely follow.

28.   While the Court had sustained Lead Plaintiff's claims against all the defendants named in the First Complaint with respect to violations of the Securities Act, and the claims against Scottish Re and certain of the Individual Defendants for violations of the Exchange Act, it dismissed the claim for violation of Section 10(b) of the Exchange Act against defendant E&Y.   At the time the parties reached agreement in principle to settle, Lead Plaintiff had filed the Amended Complaint, which extended the Class Period to February 20, 2007 with respect to all Defendants and re-pleaded the previously dismissed claim against E&Y.  All of the Defendants had moved to dismiss the claims for the Extended Class Period, and E&Y also moved to dismiss the re-pleaded Section 10(b) claim against it.  The motions were not fully briefed when the agreements to settle were reached, and Lead Plaintiff recognized that there was the chance that the Court would reject its amendment, in which case Lead Plaintiff and the Class would not be able to recover any damages based on the alleged misrepresentations and omissions during the Extended Class Period and the disclosure on February 20, 2007 and the overall claim against E&Y would also have been materially affected.

29.   In addition, before entering into the Settlement, Lead Counsel had undertaken substantial discovery, as described above.  Based on this work, Lead Plaintiff recognized that it faced a substantial risk that it might not be able to establish at trial that there were material misrepresentations, or Defendants' alleged "scienter" (i.e., Defendants' knowing or reckless misconduct) as it is required to do with respect to the Exchange Act claims, or even negligence as required for the Securities Act claims.  With respect to whether there had been any material misstatements with respect to the DTA carried on Scottish Re's balance sheet, Scottish Re would have argued (i) that the GAAP provisions setting forth the requirements for carrying the DTA are based management's judgment and belief; (ii) that, contrary to the allegations of the complaint, the valuation allowances taken were not caused by Ballantyne Re or any other securitization strategy, and that the Company had assets other than those that were securitized that were sufficient to support the DTA; (iii) that the losses announced and valuation allowances taken were caused by changed circumstances including liquidity and capital raising concerns and downgrades by rating agencies; and (iv) that the Company was never required to restate its financial statements with respect to the DTA carried.  Defendants would argue that all of these factors, for which they would be able to provide supporting evidence, demonstrated that the DTA carried on Scottish Re's balance sheet was not materially misstated during the Class Period.  With respect to the allegations of misrepresentations regarding internal controls, Scottish Re would cite to the fact that it had several outside auditing firms review the Company's compliance with Sarbanes Oxley and none of them required the Company to issue a statement that there were material deficiencies in the

Company's internal controls. The same factors that Scottish Re would point to in support of its contention that there were no material misstatements (and Lead Plaintiff recognizes that there is evidence that arguably could be deemed to support that position) also impacts Lead Plaintiff's ability to establish *scienter*, an element of its Section 10(b) claim that is recognized as being particularly difficult to establish. With respect to the claims against the Underwriter Defendants and E&Y for violations of the Securities Act, while the threshold for liability is lower, i.e., a negligence standard as opposed to knowing or reckless conduct, these defendants have a "due diligence" defense under the statute. Based on discovery already conducted, it is clear that these defendants would be able to mount a strong defense to the claims against them. Thus, for example, the Underwriter Defendants could very well have established that they made all the required inquiries and that they were entitled to rely on the representations at issue because they were contained in portions of the registration statements that were "expertised" by Scottish Re's auditors.

30.   In light of the amount of the Settlement, the immediacy of recovery to the Class, and the attendant risks in going forward with the prosecution of the Action, Lead Plaintiff and Lead Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Class. Lead Plaintiff and Lead Counsel believe that the Settlement provides a substantial benefit now, namely $37,500,000.00 in cash (less the various deductions described in this Notice), as compared to the risk that the claims in the Action would produce a similar, smaller, or no recovery after summary judgment, trial and appeals, possibly years in the future. Defendants have denied the claims asserted against them in the Action, and deny having engaged in any wrongdoing, violation of law or breach of duty. The Settlement may not be construed as an admission of Defendants' wrongdoing. Defendants have agreed to the Settlement solely to eliminate the burden and expense of continued litigation.

## WHAT MIGHT HAPPEN IF THERE WAS NO SETTLEMENT?

31.   If there was no Settlement, and Lead Plaintiff failed to establish any essential legal or factual element of its claims, neither Lead Plaintiff nor the other members of the Class would recover anything from Defendants. Also, if Defendants were successful in proving any of their defenses, the Class likely would recover substantially less than the amount provided in the Settlement, or nothing at all.

## HOW MUCH WILL MY PAYMENT BE?

## THE PROPOSED PLAN OF ALLOCATION:  GENERAL PROVISIONS

32.   Defendants have collectively agreed to pay $37,500,000 in cash.

33.   After approval of the Settlement by the Court, and upon satisfaction of the other conditions to the Settlement, the Net Settlement Fund will be distributed to Authorized Claimants in accordance with the Plan of Allocation. (If the Court approves the Settlement as to less than all of the Defendants, and Lead Plaintiff determines that it is in the Class's best interests to conclude the Settlement with those Defendants as to whom the Settlement is approved, the Net Settlement Fund will be reduced by the amount contributed by the Defendant as to whom the

Settlement was not approved less the proportionate share of any Taxes and Notice and Administration Expenses incurred or paid from the Escrow Account attributable to that amount.) If any funds remain in the Net Settlement Fund because of uncashed distributions or other reasons, then, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants cash their distribution checks, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of such funds shall be redistributed to Class Members who have cashed their initial distributions and who would receive at least $10.00 from such redistribution based on their Recognized Claim, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such redistribution, if in the opinion of Lead Counsel such redistribution would be cost-effective.  If any funds shall remain in the Net Settlement Fund after six (6) months after such redistribution, or if redistribution is not made because it was deemed not cost effective, then such balance shall be contributed to non-sectarian, not-for-profit 501(c)(3) organization(s) designated by Lead Counsel after notice to the Court and subject to direction, if any, by the Court.

34.    The Settlement Fund will be distributed as follows:

(i)    First, to pay all federal, state, and local taxes on any income earned by the Settlement Fund and to pay the reasonable costs incurred in connection with determining the amount of, and paying, taxes owed by the Settlement Fund (including reasonable expenses of tax attorneys and accountants);

(ii)    To pay costs and expenses in connection with providing Notice to Class Members and administering the Settlement on behalf of Class Members;

(iii)    To reimburse plaintiffs' counsel for the costs and expenses they incurred in commencing and prosecuting the Action, with interest on such money, if and to the extent allowed by the Court;

(iv)    To pay plaintiffs' counsel's attorneys' fees, with interest on such amount, to the extent allowed by the Court; and

(v)    To compensate Authorized Claimants with the balance of the Net Settlement Fund in accordance with the Plan of Allocation, subject to an Order of the Court approving the Settlement and the Plan of Allocation (or such other allocation plan as the Court may approve), and subject to such Order's becoming Final (meaning that the time for appeal or appellate review of the Order granting final approval has expired, or, if the Order is appealed, that the appeal is either decided without causing a material change in the Order or is upheld on appeal and no longer subject to appellate review by further appeal or writ of certiorari).

35.    The Net Settlement Fund will not be distributed until the Court has approved a Plan of Allocation, and the time for any petition for rehearing, appeal, or review, whether by certiorari or otherwise, has expired.

36.    Defendants are not entitled to get back any portion of the Settlement Fund once the Court's Order approving the Settlement becomes Final.  Defendants have no liability, obligation, or responsibility for the administration of the Settlement or disbursement of the Net Settlement Fund or the Plan of Allocation.

37.    Approval of the Settlement is independent from approval of the Plan of Allocation.  Any determination as to the Plan of Allocation will not affect the Settlement, if approved.

38.   Only those Class Members who purchased or acquired Scottish Re Ordinary Shares, Preferred Shares and/or HyCU Shares during the Class Period **AND WERE DAMAGED**, as set forth below, will be eligible to share in the distribution of the Net Settlement Fund. Each person wishing to participate in the distribution must timely submit a valid Proof of Claim form establishing  membership in the Class, and including all required documentation, postmarked no later than _____, 2009, to the address set forth in the Proof of Claim form that accompanies this Notice.  Unless the Court otherwise orders, any Class Member who fails to submit a Proof of Claim form postmarked no later than _____, 2009 shall be forever barred from receiving payments pursuant to the Settlement set forth in the Stipulation but will in all other respects remain a Class Member and be subject to the provisions of the Stipulation, including the terms of any Judgment entered and releases given.  This means that each Class Member releases the Plaintiffs' Released Claims against Defendants and is enjoined and prohibited from filing, prosecuting, or pursuing any of the Plaintiffs' Released Claims (as defined in ¶ __ below) against any of the Defendants regardless of whether or not such Class Member submits a Proof of Claim form.

39.   The Court has reserved continuing jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Class Member.

40.   The Court has also reserved the right to modify the Plan of Allocation without further notice to Class Members.  Any Orders regarding a modification of the Plan of Allocation will be posted on Lead Counsel's website, www.blbglaw.com, and the settlement website, www._____.com.

41.   Payment pursuant to the Plan of Allocation approved by the Court shall be conclusive against all Authorized Claimants.  No person shall have any claim against Lead Plaintiff, Lead Counsel, or the Claims Administrator or other agent designated by Lead Counsel arising from distributions made substantially in accordance with the Stipulation, the Plan of Allocation, or further orders of the Court.  Lead Plaintiff, Defendants, their respective counsel, and all other Releasees shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation, or the determination, administration, calculation, or payment of any Proof of Claim or nonperformance of the Claims Administrator, the payment or withholding of Taxes owed by the Settlement Fund, or any losses incurred in connection therewith.

42.   A "Recognized Loss Amount" will be calculated for each purchase or acquisition of Scottish Re Ordinary Shares, Preferred Shares and/or HyCU Shares that is listed in the Proof of Claim form, and for which adequate documentation is provided.  The calculation of the Recognized Loss Amount will depend upon several factors, including (i) when the Scottish Re Securities were purchased or acquired and (ii) whether they were held until the conclusion of the Class Period or sold during the Class Period, and if so, when they were sold.  The total of a Claimant's Recognized Loss Amounts shall be the Claimant's Recognized Claim.

43.   **Information Required on the Proof of Claim Form**:  Each Proof of Claim form must state and provide sufficient documentation for each Authorized Claimant's position in Scottish Re Ordinary Shares, Preferred Shares and/or HyCU Shares as of the close of trading on February 16, 2005, the day before the first day of the Class Period, and the closing position in Scottish Re Ordinary Shares, Preferred Shares and/or HyCU Shares as of the close of trading on February 20,

2007, the last day of the Class Period.  Each Proof of Claim form also must list and provide sufficient documentation for all transactions in those securities as set forth in the Proof of Claim.

44.   The objective of the Plan of Allocation is to equitably distribute the Settlement proceeds to those Class Members who suffered economic losses as a result of the alleged fraud and negligence, as opposed to losses caused by market and industry factors or Company specific factors not related to the alleged fraud or negligence.  The Plan of Allocation reflects Lead Plaintiff's damages expert's analysis undertaken to that end, including a review of publicly available information regarding Scottish Re and statistical comparisons of the price movements of the Scottish Re Securities with the price performance of relevant market and industry indices during the Class Period (February 17, 2005 – February 20, 2007).  Lead Plaintiff and Lead Plaintiff's Counsel, in consultation with Lead Plaintiff's damages expert, have estimated the artificial inflation in Scottish Re Ordinary Shares, Preferred Shares, and HyCU Shares during the Class Period, as reflected in Tables A, B and C, respectively, which fairly and reasonably reflects the relevant risks to recovery from Defendants.

45.   The Plan of Allocation covers the Scottish Re Securities, that is: (i) Ordinary Shares; (ii) Preferred Shares; and (iii) HyCU Shares.

46.   The Plan of Allocation generally measures the amount of loss that a Class Member can claim under the Settlement for the purpose of making *pro rata* allocations of the cash in the Net Settlement Fund to Class Members who submit acceptable Proofs of Claim.  In this case, the Net Settlement Fund is comprised of two parts: the Section 10(b) Fund and the Section 11 Fund.[2] The Plan of Allocation is not a formal damage analysis.  Recognized Loss Amounts are based on the level of alleged artificial inflation in the price of Scottish Re Securities at the time of purchase or acquisition and at the time of sale or other disposal.  In this case, Lead Plaintiff alleges that Defendants made false statements and omitted material facts between February 17, 2005, through and including February 20, 2007, regarding, among other things, the Company's business and operations, which had the effect of artificially inflating the prices of the Scottish Re Securities.  Defendants deny all such allegations.  The following proposed Plan of Allocation reflects plaintiffs' allegations that the price of Scottish Re Securities was artificially inflated

---

[2] The Section 11 Fund is comprised of $3.5 million from the Settlement Amount plus the interest accrued thereon less the proportionate share of the amounts deducted from the Settlement Fund to pay Notice and Administration Expenses, Taxes, and Court-awarded attorneys' fees and expenses.  Not all members of the Class have a Section 11 claim.  In order to be able to recover for this violation, a person had to have purchased securities that were issued pursuant to the registration statements for the Scottish Re Offerings.  All Class Members who purchased Preferred Shares during the Class Period have this claim, as the only Preferred Shares in the market are those that were offered pursuant to the registration statement for the July 2005 Offering.  With respect to the Ordinary Shares, however, since the December Offering was a secondary offering of Ordinary Shares (i.e, there were Ordinary shares trading in the market that were not issued pursuant to the registration statement for the December 2005 Offering), Claimants will be required to submit documentation to establish that the Ordinary Shares he, she or it purchased were issued pursuant to that registration statement.  To do so, Claimants will be required to submit documentation establishing that the Ordinary Shares were purchased in the offering and not in the aftermarket.

13

during the Class Period due to misrepresentations and/or omissions regarding Scottish Re's business and operations.

47.    In order to have recoverable damages, disclosure of the alleged misrepresentations must be the cause of the decline in the price of the security.  Corrective disclosures that removed the artificial inflation from the price of Scottish Re Securities occurred on July 31, 2006, and after market close on February 20, 2007 (the "Corrective Disclosure Dates").[3]  Accordingly, in order to have been damaged by the alleged fraud or negligence.

> •      a Scottish Re Security purchased or otherwise acquired during the Class Period from February 17, 2005 through July 30, 2006 must be held at least until July 31, 2006, the day of the first corrective disclosure;

> •      a Scottish Re Security purchased or otherwise acquired from July 31, 2006 through February 20, 2007 must be held at least until February 21, 2007, the day of the price impact of the second corrective disclosure (which occurred after market close on February 20, 2007).

48.    If you did not hold Scottish Re Securities to the dates indicated, the Recognized Loss Amount for those Scottish Re Securities is $0.   The Recognized Loss Amount for those transactions will be calculated as zero because it has been determined that the artificial inflation between each disclosure and arising from the circumstances underlying the allegations of Lead Plaintiff's Amended Complaint was constant, and any loss suffered is not compensable under the federal securities laws.

49.    To the extent a Claimant had a gain from his, her or its overall transactions in the Scottish Re Securities during the Class Period, the value of the Recognized Claim will be zero.  Such Claimants will in any event be bound by the Settlement.  You may wish to consider this when deciding whether to opt out.

## SPECIFIC RECOGNIZED LOSS AMOUNTS

50.    **Ordinary Shares:**

(a)      For Ordinary Shares purchased or acquired between February 17, 2005 and February 20, 2007, inclusive, and held as of the close of business on February 20, 2007, the Recognized Loss Amount is the lesser of:

---

[3]  With respect to the Scottish Re Ordinary Shares, artificial inflation was measured as the drop in the price of the shares, net of changes in market and industry indices, from July 31 through August 7, 2006, and from February 21 through February 23, 2007.  With respect to the Scottish Re Preferred Shares, artificial inflation was measured as the drop in the price of the shares, net of changes in market and industry indices, from July 31 through August 7, 2006, and on February 21, 2007.  With respect to the Scottish Re HyCU Shares, artificial inflation was measured as the drop in the price of the shares, net of changes in market and industry indices, from July 31 through August 7, 2006.

(i)     the purchase price *minus* the 90-day lookback price on the date of sale as set forth in Table A attached hereto (or the 90-day lookback price on May 21, 2007 if the security was not sold prior to May 21, 2007); or

(ii)    the amount of artificial inflation per Ordinary Share on the date of purchase or acquisition as set forth in Table A (however, if the Ordinary Shares were sold on February 21 or 22, 2007, the amount of artificial inflation per Ordinary Share on the date of purchase or acquisition as set forth in Table A *plus* the amount of offset per Ordinary Share on the date of sale as set forth in Table A).

(b)     For Ordinary Shares purchased or acquired between February 17, 2005 and July 30, 2006, inclusive, and sold at a loss between July 31, 2006, and February 20, 2007, inclusive, the Recognized Loss Amount is the lesser of:

(i)     the purchase price *minus* sales price; or

(ii)    the amount of artificial inflation per Ordinary Share on the date of purchase or acquisition as set forth in Table A *minus* the amount of artificial inflation per Ordinary Share on the date of sale as set forth in Table A (however, if the Ordinary Shares were sold on July 31 through August 4, 2007, the amount of artificial inflation per Ordinary Share on the date of purchase or acquisition as set forth in Table A *minus* the amount of artificial inflation per Ordinary Share on the date of sale as set forth in Table A *plus* the amount of offset per Ordinary Share on the date of sale as set forth in Table A).

An Authorized Claimant's Recognized Loss Amount shall be the basis for his, her or its allocated *pro rata* portion of the Section 10(b) Fund.

51.   For Ordinary Shares purchased or acquired pursuant to the registration statement filed in connection with the Company's secondary offering on or about December 23, 2005 (Claimants must show that they purchased or acquired Scottish Re Ordinary Shares pursuant to that registration statement), the Recognized Loss Amount shall be as calculated as set forth in the preceding paragraphs.  In addition to his, her or its allocated *pro rata* portion of the Section 10(b) Fund, an Authorized Claimant's Recognized Loss Amount for those Ordinary Shares only will be allocated his, her or its *pro rata* portion of the Section 11 Fund to reflect the fact that these Ordinary Shares were issued pursuant to and traceable to a registration statement.

**52.  Preferred Shares:**

(a)     For Preferred Shares purchased or acquired between their initial offering (beginning on or about June 28, 2005) and February 20, 2007, inclusive, and held as of the close of business on February 20, 2007, the Recognized Loss Amount is the lesser of:

(i)     the purchase price *minus* the 90-day lookback price on the date of sale as set forth in Table B attached hereto (or the 90-day lookback price on May 21, 2007 if the security was not sold prior to May 21, 2007); or

(ii)    the amount of artificial inflation per Preferred Share on the date of purchase or acquisition as set forth in Table B.

(b)     For Preferred Shares purchased or acquired between their initial offering (beginning on or about June 28, 2005) and July 30, 2006, inclusive, and sold at a loss between July 31, 2006, and February 20, 2007, inclusive, the Recognized Loss Amount is the lesser of:

> (i)     the purchase price *minus* sales price; or

> (ii)     the amount of artificial inflation per Preferred Share on the date of purchase or acquisition as set forth in Table B *minus* the amount of artificial inflation per Preferred Share on the date of sale as set forth in Table B (however, if the Preferred Shares were sold on July 31 through August 4, 2006, the amount of artificial inflation per Preferred Share on the date of purchase or acquisition as set forth in Table B *minus* the amount of artificial inflation per Preferred Share on the date of sale as set forth in Table B *plus* the amount of offset per Preferred Share on the date of sale as set forth in Table B).

An Authorized Claimant's Recognized Loss Amount shall be the basis for his, her or its allocated *pro rata* portion of the Section 10(b) Fund.

53.     In addition to his, her or its allocated *pro rata* portion of the Section 10(b) Fund, an Authorized Claimant's Recognized Loss Amount for his, her or its Preferred Shares will be allocated his, her or its *pro rata* portion of the Section 11 Fund to reflect the fact that these Preferred Shares were issued pursuant to and traceable to a registration statement.

54.     **HyCU Shares:**  On or about February 15, 2007, nearly all HyCU Shares were exchanged for Ordinary Shares.

(a)     For HyCU Shares purchased or acquired between February 17, 2005 and July 30, 2006, inclusive, and sold at a loss between July 31, 2006, and February 14, 2007, inclusive, or held as of the conversion on February 15, 2007, the Recognized Loss Amount is the lesser of:

> (i)     the purchase price *minus* sales price (or conversion price of $4.41, the closing price of Scottish Re Ordinary Shares on February 15, 2007, if held as of the conversion on February 15, 2007); or

> (ii)     the amount of artificial inflation per HyCU Share on the date of purchase or acquisition as set forth in Table C attached hereto *minus* the amount of artificial inflation per HyCU Share on the date of sale as set forth in Table C (however, if the HyCU Shares were sold on July 31 through August 4, 2006, the amount of artificial inflation per HyCU Share on the date of purchase or acquisition as set forth in Table C *plus* the amount of offset per HyCU Share on the date of sale as set forth in Table C).

(b)     For HyCU Shares held as of the close of business on February 14, 2007, as (nearly all) such HyCU Shares were converted to Ordinary Shares on or about February 15, 2007, the Recognized Loss Amount shall be calculated for the Ordinary Shares received pursuant to the conversion as follows, with the acquisition price considered as $4.41, the closing price of the Ordinary Shares on February 15, 2007.

(c)    For Ordinary Shares acquired on or about February 15, 2007, pursuant to the conversion, and held as of the close of business on February 20, 2007, the Recognized Loss Amount is the lesser of:

(i)    the acquisition price of $4.41 *minus* the 90-day lookback price on the date of sale as set forth in Table A (or the 90-day lookback price on May 21, 2007, if the security was not sold prior to May 21, 2007); or

(ii)    the amount of artificial inflation per Ordinary Share on the date of acquisition as set forth in Table A (however, if the Ordinary Shares were sold on February 21 or 22, 2007, the amount of artificial inflation per Ordinary Share on the date of acquisition as set forth in Table A *plus* the amount of offset per Ordinary Share on the date of sale as set forth in Table A).

An Authorized Claimant's Recognized Loss Amount shall be the basis for his, her or its allocated *pro rata* portion of the Section 10(b) Fund.

55.    If all of the Class Members submit Proof of Claim forms covering all damaged shares, each Class Member will receive approximately 9.9% before deduction of estimated fees and expenses (or 8.2% after deduction of all estimated fees and expenses) of his, her or its Recognized Loss with respect to his, her or its claims for violations of Section 10(b) of the Exchange Act; and 5.5% before deduction of estimated fees and expenses (or 4.5% after deduction of all estimated fees and expenses) of his, her or its Recognized Loss with respect to his, her or its claims for violations of Section 11 of the Securities Act.   These percentage recovery estimates are subject to final Court award of fees and expenses as well as the number of valid claims submitted.

## **ADDITIONAL PROVISIONS**

56.    The Net Settlement Fund will be allocated among all eligible Class Members.

57.    Each Authorized Claimant shall recover his, her, or its Recognized Claim.  If the sum total of Recognized Claims of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, however, each such Authorized Claimant shall be allocated *pro rata* shares of the Net Settlement Fund by type of fund (Section 10(b) Fund or Section 11 Fund) based on his, her or its Recognized Claim as compared to the total Recognized Claims of all Authorized Claimants.   Each Authorized Claimant shall be paid an amount determined by multiplying the total in the Net Settlement Fund by type of fund (Section 10(b) Fund or Section 11 Fund) by a fraction the numerator of which shall be his, her or its Recognized Claim and denominator of which shall be the Total Recognized Claims of all Authorized Claimants.  This computation weighs each Class Member's claim against every other Class Member's claim.  Each Authorized Claimant will receive *pro rata* shares of the Net Settlement Fund by type of fund (Section 10(b) Fund or Section 11 Fund) based on his, her or its Recognized Claim.  If the prorated payment calculates to less than $10, then such payment shall be equal to $10.

58.   If the Net Settlement Fund exceeds the sum total amount of the Recognized Claims of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the excess amount in the Net Settlement Fund shall be distributed *pro rata* to all Authorized Claimants entitled to receive payment.

59.   The amount of a Class Member's Recognized Claim as computed above is not intended to be an estimate of what a Class Member might have been able to recover at trial, and it is not an estimate of the amount that will be paid pursuant to this Settlement.  Instead, this computation is only a method to weigh Class Members' claims against one another.  Each Authorized Claimant will receive *pro rata* shares of the Net Settlement Fund by type of fund (Section 10(b) Fund or Section 11 Fund) based on his, her or its Recognized Claim.

60.   If a Class Member has more than one purchase/acquisition or sale of Scottish Re Securities, all purchases/acquisitions and sales of each type of security shall be matched on a First-In-First-Out ("FIFO") basis by type, Class Period sales will be matched first against any Scottish Re Securities held at the beginning of the Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period.  Purchases, acquisitions and sales of Scottish Re Securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.  The receipt or grant by gift, devise or operation of law of Scottish Re Securities during the Class Period shall not be deemed a purchase, acquisition or sale of these Scottish Re Securities for the calculation of an Authorized Claimant's Recognized Claim nor shall it be deemed an assignment of any claim relating to the purchase/acquisition of such Scottish Re Securities unless specifically provided in the instrument of gift or assignment.

61.   The date of covering a "short sale" is deemed to be the date of purchase or acquisition of Scottish Re Securities.  The date of a "short sale" is deemed to be the date of sale of Scottish Re Securities.  In accordance with the Plan of Allocation, however, the Recognized Loss Amount on "short sales" is zero.

62.   To the extent a Claimant had a market gain from his, her or its overall transactions in the Scottish Re Securities during the Class Period, the value of the Recognized Claim will be zero.  Such Claimants will in any event be bound by the Settlement.  To the extent a Claimant suffered an overall market loss on his, her or its overall transactions in the Scottish Re Securities during the Class Period, but that market loss was less than the Recognized Claim calculated above, then the Recognized Claim shall be limited to the amount of the actual market loss.

63.   For purposes of determining whether a Claimant had a gain from his, her or its overall transactions in Scottish Re Securities during the Class Period or suffered a loss, the Claims Administrator shall: (i) total the amount the Claimant paid for all Scottish Re Securities purchased and/or acquired during the Class Period (the "Total Purchase Amount"); (ii) match any sales of Scottish Re Securities during the Class Period first against the Claimant's opening position in the Scottish Re Securities (the proceeds of those sales will not be considered for purposes of calculating gains or losses); (iii) total the amount received for sales of the remaining Scottish Re Securities during the Class Period (the "Sales Proceeds"), and (iv) ascribe holding prices for Scottish Re Securities purchased and/or acquired during the Class Period and still held at the end of the Class Period, with such holding prices being $4.25 per Ordinary Share and $22.09 per Preferred Share (the HyCU Shares were converted to Ordinary Shares prior to the end of the Class Period) (the "Holding Value").  The difference between (x) the Total Purchase

Amount ((i) above) and (y) the sum of the Sales Proceeds ((iii) above) and the Holding Value ((iv) above) will be deemed a Claimant's gain or loss on his, her or its overall transactions in the Scottish Re Securities during the Class Period.

64.     The Plan of Allocation set forth herein is the Plan that is being proposed by Lead Plaintiff and Lead Counsel to the Court for approval.  The Court may approve this plan as proposed or it may modify the plan or approve a different plan of allocation without further notice to the Class.

<div style="border:1px solid black; text-align:center;">

**WHAT RIGHTS AM I GIVING UP BY AGREEING TO THE SETTLEMENT?**

</div>

65.     If the Settlement is approved, the Court will enter a judgment (the "Judgment").  The Judgment will dismiss with prejudice the claims against the Defendants and will provide that Lead Plaintiff and all other Class Members shall be deemed to have – and by operation of the Judgment shall have – fully, finally, and forever released, waived, discharged, and dismissed any and all Plaintiffs' Released Claims, including "Unknown Claims" (as defined in the Stipulation), against the Releasees (as defined in ¶__ below) and any claims or potential claims that were or could be asserted in connection with the Action that relate to the Plaintiffs' Released Claims.  If the Court approves the Settlement as to less than all of the Defendants, and Lead Plaintiff determines that it is in the Class's best interests to conclude the Settlement with those Defendants as to whom the fettlement in approved, the Judgment described in this paragraph will apply only to such Defendants.

66.     "Plaintiffs' Released Claims" means each and every Claim or Unknown Claim that Lead Plaintiff, or any other Class Member (*i*) asserted against any of the Releasees in the Action (including all Claims asserted in the First Complaint or the Amended Complaint) and (*ii*) could have asserted or could assert against any of the Releasees, whether arising under any federal, state, or foreign statutory or common-law rule, in any court, tribunal, agency, or other forum, that arises out of or relates to the conduct alleged in the First Complaint or the Amended Complaint and to the purchase, sale, other disposition of, or decision to hold, or any other Investment Decision concerning any securities of Scottish Re during the Class Period by any person or entity during the Class Period.

67.     The term "Releasee," which is fully defined in the Stipulation, includes, among other persons and entities, Scottish Re, the Underwriter Defendants and E&Y, and their respective past and present directors, executive committee members, officers, employees, members, partners, principals, agents, and insurers, and the Individual Defendants and their respective Immediate Family Members.

68.     The Judgment also will provide that Defendants shall be deemed to have – and by operation of the Judgment shall have – fully, finally, and forever released, waived, and discharged all Claims, whether known or unknown (including Unknown Claims), and whether arising under federal, state, or any other law, that have been or could have been asserted in the Action or in any court or forum, by Defendants against Lead Plaintiff, Lead Counsel, plaintiffs' counsel, and/or any of their agents, if such Claims arise out of or relate in any way to the institution, maintenance, or settlement of the Action, except Claims relating to the enforcement of the Settlement.

69.   Defendants have asked the Court to enter "bar orders" barring any person or entity from suing the Releasees – and barring those Releasees from suing any other person or entity – for any injury that relates to a Plaintiffs' Released Claim or arises from the barred person's or entity's alleged liability in this Action or payment in this Action to the Class or any Class Member.  Such a bar order would apply if, for example, the Court were to approve the Settlement as to less than all the Defendants, and Lead Plaintiff determines that it is in the Class's best interests to conclude the Settlement with those Defendants as to whom the Settlement is approved, a defendant as to whom the Settlement was not approved (a "nonsettling defendant") wanted to sue the Releasees of a Defendant as to whom the Settlement was approved for any money that the nonsettling defendant later had to pay to the Class.  The bar order would prevent the nonsettling defendant from filing such a claim.  In such a situation, the Class Members have agreed to reduce any judgment they might obtain against that nonsettling defendant by the greater of (*i*) the Releasees' contribution to the approved Settlement or (ii) the Releasees' percentage of responsibility for common damages allegedly caused jointly by the Releasees and the nonsettling defendant.

| WHAT PAYMENT ARE THE ATTORNEYS FOR THE CLASS SEEKING? HOW WILL THE LAWYERS AND THE CLASS REPRESENTATIVE BE PAID? |
| --- |

70.   Plaintiffs' counsel have not received any payment for their services in pursuing claims against Defendants on behalf of the Class, nor have they been reimbursed for their out-of-pocket expenses.  Before final approval of the Settlement, Lead Counsel intends to apply to the Court for an award of attorneys' fees from the Settlement Fund in the amount of 15% of the Settlement Amount ($5,625,000) together with interest thereon at the same rate as earned by the Escrow Account.  At the same time, Lead Counsel also intends to apply for the reimbursement of litigation expenses not to exceed $600,000.00 with interest thereon at the same rate as earned by the Escrow Account.  The Court will determine the amount of the award.

71.   Lead Counsel are also moving the Court to award a payment of up to $10,000 to Lead Plaintiff, for reimbursement of its reasonable costs and expenses directly related to the representation of the Class

| HOW DO I PARTICIPATE IN THE SETTLEMENT?  WHAT DO I NEED TO DO? |
| --- |

72.   If you are a person or entity that purchased or otherwise acquired Scottish Re Ordinary Shares, Preferred Shares and/or HyCU Shares in the Scottish Re Offerings, or on the open market, between February 17, 2005 and February 20, 2007, inclusive, and you are not excluded by the definition of the Class and you do not elect to exclude yourself from the Class, then you are a Class Member, and you will be bound by the proposed Settlement if the Court approves it, and by any judgment or determination of the Court affecting the Class.  If you are a Class Member, you must submit a Proof of Claim form and supporting documentation to establish your entitlement to share in the Settlement.  A Proof of Claim form is included with this Notice, or you may download copies of the Proof of Claim form from Lead Counsel's website, www.blbglaw.com, or the website maintained by the Claims Administrator for this Settlement, www._____.com. You may also request a Proof of Claim form by calling toll-free (800) ___-____.  Please retain all records of your ownership of, or transactions in, Scottish Re Securities, as they may be needed to document your claim.

73.   Those who exclude themselves from the Class, and those who do not submit timely and valid Proof of Claim forms with adequate supporting documentation, will not be entitled to share in the Settlement.

74.   As a Class Member, you are represented by Lead Plaintiff and Lead Counsel, unless you enter an appearance through counsel of your own choice at your own expense.  You are not required to retain your own counsel, but if you choose to do so, such counsel must file a notice of appearance on your behalf and must serve copies of his or her notice of appearance so that it is received no later than _____ on the attorneys listed in the section entitled "When and Where Will the Court Decide Whether to Approve the Settlement," below.

75.   If you do not wish to remain a Class Member, you may exclude yourself from the Class by following the instructions in the section entitled, "What If I Do Not Want To Be A Part Of The Settlement?  How Do I Exclude Myself," below.

76.   If you wish to object to the Settlement, or any of its terms, or to the Plan of Allocation or Lead Counsel's request for an award of attorneys' fees and reimbursement of expenses, and if you do not exclude yourself from the Class, you may present your objections by following the instructions in the section entitled "When and Where Will the Court Decide Whether to Approve the Settlement," below.

| |
|---|
| **WHAT IF I DO NOT WANT TO BE A PART OF THE SETTLEMENT?** **HOW DO I EXCLUDE MYSELF?** |

77.   Each Class Member will be bound by all determinations and judgments in this lawsuit, including those concerning the Settlement, whether favorable or unfavorable, unless such person or entity mails, by first-class mail (or its equivalent outside the U.S.), or otherwise delivers a written Request for Exclusion from the Class, addressed to *In re Scottish Re Group Securities Litigation*- EXCLUSIONS, - c/o [insert claims administrator's address].  The exclusion request must be *received* no later than _____.  You will not be able to exclude yourself from the Class after that date.  Each Request for Exclusion must (i) state the name and address of the person or entity requesting exclusion; (ii) state that such person or entity "requests exclusion from the Class in *In re Scottish Re Group Securities Litigation*, No. 06-cv-5853 (SAS)"; (iii) be signed by the person or entity requesting exclusion; (iv) provide a telephone number for that person or entity; and (v) provide the date(s), price(s), and number(s) of shares of all purchases and sales of Scottish Re Securities during the Class Period by security.  Requests for Exclusion will not be valid if they are not received within the time stated above, unless the Court otherwise determines.

78.   If you do not want to be part of the Class, you must follow these instructions for exclusion even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any Plaintiffs' Released Claims.

79.   If a person or entity requests to be excluded from the Class, that person or entity will not receive any benefit provided for in the Settlement.

80.   Defendants may terminate the Settlement, if requests for exclusion are received from potential Class Members whose allegedly damaged shares of Scottish Re Securities, in the aggregate, exceed an amount of the damaged Scottish Re Securities eligible to participate in the Settlement that was agreed to by Lead Plaintiff and Defendants.

> **WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?**
> **DO I HAVE TO COME TO THE HEARING?**
> **CAN I OBJECT TO THE SETTLEMENT?**
> **MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT?**

**81.   If you do not wish to object to the proposed Settlement, you do not need to attend the Fairness Hearing.  You may participate in the Settlement without attending the Hearing.**

82.   The Fairness Hearing will be held on _____, at _____ __.m., before the Honorable Shira A. Scheindlin, United States District Court for the Southern District of New York, 500 Pearl Street, Courtroom 15C, New York, New York.  The Court reserves the right to approve the Settlement or the Plan of Allocation at or after the Fairness Hearing without further notice to the members of the Class.

83.   Any Class Member who does not request exclusion received no later than _____ may object to the Settlement, the Plan of Allocation, or Lead Counsel's request for an award of attorneys' fees and reimbursement of litigation expenses.  Objections or oppositions must be in writing.  You must file any written objection or opposition, together with copies of all other papers (including proof of all purchases of Scottish Re Securities during the Class Period) and briefs, with the Clerk's Office at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007-1312, on or before _____.  You also must serve the papers on the following attorneys so that the papers are *received* on or before _____:

| **Lead Counsel for the Class** | **Counsel for Scottish Re and the Individual Defendants Other than Scott Willkomm** | **Counsel for the Underwriter Defendants** |
|---|---|---|
| BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP<br>Salvatore J. Graziano, Esq.<br>1285 Avenue of the Americas<br>New York, NY 10019 | DEWEY & LEBOEUF LLP<br>Lyle Roberts, Esq.<br>1101 New York Avenue, N.W.<br>Washington, D.C. 2005-4213 | LATHAM & WATKINS LLP<br>Jeff G. Hammel, Esq.<br>885 third Avenue<br>New York, NY 10022 |
| | **Counsel for Scott Willkomm** | **Counsel for Defendant E&Y** |
| | DAVIS POLK & WARDWELL<br>Dennis E. Glazer, Esq.<br>450 Lexington Avenue<br>New York, NY 10017 | HUGHES HUBBARD & REED LLP<br>William Maguire, Esq.<br>One Battery Park Plaza<br>New York, NY 10004 |

84.   The filing must demonstrate your membership in the Class, including the number of Ordinary Shares, Preferred Shares and/or HyCU Shares purchased or otherwise acquired during the Class Period and price(s) paid.  You may not object to the Settlement or any aspect of it if you excluded yourself from the Class.

85.   You may file a written objection without having to appear at the Fairness Hearing.  You may not appear at the Fairness Hearing to present your objection, however, unless you first filed and served a written objection in accordance with the procedures described above, unless the Court orders otherwise.

86.   If you wish to be heard orally at the hearing in opposition to the approval of the Settlement, the Plan of Allocation, or Lead Counsel's request for an award of attorneys' fees and reimbursement of expenses, and if you have filed and served a timely written objection as described above, you also must notify the above counsel on or before _____ concerning your intention to appear.  Persons who intend to object and desire to present evidence at the Fairness Hearing must include in their written objections the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing.

87.   You are not required to hire an attorney to represent you in making written objections or in appearing at the Fairness Hearing.  If you decide to hire an attorney, at your own expense, however, he or she must file a notice of appearance with the Court and serve it on all counsel listed in paragraph 81 above so that the notice is *received* by them on or before _____.

88.   The Fairness Hearing may be adjourned by the Court without further written notice to the Class.  If you intend to attend the Fairness Hearing, you should confirm the date and time with Lead Counsel.

**Unless the Court orders otherwise, any Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the Plan of Allocation, or Lead Counsel's request for an award of attorneys' fees and reimbursement of expenses. Class Members do not need to appear at the hearing or take any other action to indicate their approval.**

| WHAT IF I BOUGHT SHARES ON SOMEONE ELSE'S BEHALF? |
| --- |

89.   If you purchased or otherwise acquired Scottish Re Ordinary Shares, Preferred Shares and/or HyCU Shares during the Class Period for the beneficial interest of a person or organization other than yourself, you must either (i) request from the Claims Administrator, within fourteen (14) days after receipt of this Notice, additional copies of the Notice and Proof of Claim and within fourteen (14) days after receipt of the copies from the Claims Administrator mail them to the beneficial owners, or (ii) provide the names and addresses of such persons no later than fourteen (14) days after you receive this Notice to *In re Scottish Re Group Securities Litigation,* c/o [*Claims Administrator, Address to be provided*].   If you choose the second option, the Claims Administrator will send a copy of the Notice to the beneficial owner.  Upon full compliance with these directions, such nominees may seek reimbursement of their reasonable expenses actually incurred, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought.  Copies of this Notice may also be obtained from the Claims Administrator's website www._____ or by calling toll-free 1-800-___-____, or may be downloaded from the settlement website, www._____.com.

| CAN I SEE THE COURT FILE?  WHOM SHOULD I CONTACT IF I HAVE QUESTIONS? |
| --- |

90.   This Notice contains only a summary of the terms of the proposed Settlement.   More detailed information about the matters involved in the Action is available at www._____.com, including, among other documents, copies of the Stipulation, Proof of Claim form, the Court's Order on the Defendants' motions to dismiss the First Complaint and the

parties' submissions concerning those motions.  The Amended Complaint was filed under seal in accordance with the terms of the Stipulated Protective Order entered by the Court because it contains information that had been designated "confidential" by Defendants.

91.   All inquiries concerning this Notice should be directed to:

*In re Scottish Re Group Securities Litigation*
*% Claims Administrator*
*Address TBD*

**OR**

Salvatore J. Graziano, Esq.
Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(800) 380-8496
Email: blbg@blbglaw.com
**Lead Counsel**

**DO NOT CALL OR WRITE THE COURT OR THE OFFICE OF THE CLERK OF COURT REGARDING THIS NOTICE.**

Dated: _____, 2008                              By Order of the Clerk of Court
                                                     United States District Court
                                                     for the Southern District of New York

#322466.8

### Table A
### Scottish Re Ordinary Shares Artificial Inflation

| Date | Artificial Inflation Per Share |
|---|---|
| 2/17/2005 to 7/30/2006 | $9.02 |
| 7/31/2006 to 2/20/07 | $0.72 |

| Date | Offset Per Share |
|---|---|
| 07/31/06 | $3.70 |
| 08/01/06 | $0.82 |
| 08/02/06 | $1.09 |
| 08/03/06 | $0.90 |
| 08/04/06 | $0.22 |
| 02/21/07 | $0.31 |
| 02/22/07 | $0.10 |

| Date | Closing Price | 90-day Lookback Price Per Share |
|---|---|---|
| 02/21/07 | $3.38 | $3.38 |
| 02/22/07 | $3.59 | $3.49 |
| 02/23/07 | $3.68 | $3.55 |
| 02/26/07 | $3.65 | $3.58 |
| 02/27/07 | $3.68 | $3.60 |
| 02/28/07 | $3.68 | $3.61 |
| 03/01/07 | $3.94 | $3.66 |
| 03/02/07 | $4.36 | $3.75 |
| 03/05/07 | $4.35 | $3.81 |
| 03/06/07 | $4.34 | $3.87 |
| 03/07/07 | $4.27 | $3.90 |
| 03/08/07 | $4.21 | $3.93 |
| 03/09/07 | $4.17 | $3.95 |
| 03/12/07 | $3.80 | $3.94 |
| 03/13/07 | $3.70 | $3.93 |
| 03/14/07 | $3.95 | $3.93 |
| 03/15/07 | $4.09 | $3.94 |
| 03/16/07 | $4.06 | $3.94 |
| 03/19/07 | $4.08 | $3.96 |
| 03/20/07 | $3.93 | $3.95 |
| 03/21/07 | $3.97 | $3.95 |
| 03/22/07 | $4.00 | $3.95 |
| 03/23/07 | $4.07 | $3.96 |
| 03/26/07 | $4.01 | $3.96 |
| 03/27/07 | $3.97 | $3.96 |
| 03/28/07 | $4.01 | $3.96 |
| 03/29/07 | $3.99 | $3.96 |
| 03/30/07 | $4.02 | $3.97 |
| 04/02/07 | $3.86 | $3.96 |
| 04/03/07 | $3.99 | $3.96 |
| 04/04/07 | $3.89 | $3.96 |
| 04/05/07 | $4.05 | $3.96 |
| 04/09/07 | $4.03 | $3.97 |
| 04/10/07 | $4.01 | $3.97 |
| 04/11/07 | $4.04 | $3.97 |
| 04/12/07 | $4.36 | $3.98 |
| 04/13/07 | $4.44 | $3.99 |
| 04/16/07 | $4.42 | $4.00 |
| 04/17/07 | $4.51 | $4.02 |
| 04/18/07 | $4.46 | $4.03 |
| 04/19/07 | $4.44 | $4.04 |
| 04/20/07 | $4.48 | $4.05 |
| 04/23/07 | $4.48 | $4.06 |
| 04/24/07 | $4.48 | $4.07 |
| 04/25/07 | $4.50 | $4.08 |
| 04/26/07 | $4.49 | $4.09 |
| 04/27/07 | $4.47 | $4.09 |
| 04/30/07 | $4.43 | $4.10 |
| 05/01/07 | $4.39 | $4.11 |
| 05/02/07 | $4.16 | $4.11 |
| 05/03/07 | $4.38 | $4.11 |
| 05/04/07 | $4.46 | $4.12 |
| 05/07/07 | $4.66 | $4.13 |
| 05/08/07 | $4.81 | $4.14 |
| 05/09/07 | $4.93 | $4.16 |
| 05/10/07 | $4.87 | $4.17 |
| 05/11/07 | $4.80 | $4.18 |
| 05/14/07 | $4.91 | $4.19 |
| 05/15/07 | $4.71 | $4.20 |
| 05/16/07 | $4.78 | $4.21 |
| 05/17/07 | $4.66 | $4.22 |
| 05/18/07 | $5.07 | $4.24 |
| 05/21/07 | $5.23 | $4.25 |

Table B
## Scottish Re Non-cumulative Perpetual Preferred Shares Artificial Inflation

| Date | Artificial Inflation Per Share | | Date | Offset Per Share | | Date | Closing Price | 90-day Lookback Price Per Share |
|------|------|---|------|------|---|------|------|------|
| 2/17/2005 to 7/30/2006 | $5.03 | | 07/31/06 | $7.07 | | 02/21/07 | $20.60 | $20.60 |
| 7/31/2006-2/20/07 | $0.95 | | 08/01/06 | $2.93 | | 02/22/07 | $20.40 | $20.50 |
| | | | 08/02/06 | $3.39 | | 02/23/07 | $20.01 | $20.34 |
| | | | 08/03/06 | $3.44 | | 02/26/07 | $20.30 | $20.33 |
| | | | 08/04/06 | $0.90 | | 02/27/07 | $20.22 | $20.31 |
| | | | | | | 02/28/07 | $20.51 | $20.34 |
| | | | | | | 03/01/07 | $20.52 | $20.37 |
| | | | | | | 03/02/07 | $22.70 | $20.66 |
| | | | | | | 03/05/07 | $21.57 | $20.76 |
| | | | | | | 03/06/07 | $21.70 | $20.85 |
| | | | | | | 03/07/07 | $22.05 | $20.96 |
| | | | | | | 03/08/07 | $22.62 | $21.10 |
| | | | | | | 03/09/07 | $22.50 | $21.21 |
| | | | | | | 03/12/07 | $22.00 | $21.26 |
| | | | | | | 03/13/07 | $21.04 | $21.25 |
| | | | | | | 03/14/07 | $20.35 | $21.19 |
| | | | | | | 03/15/07 | $20.30 | $21.14 |
| | | | | | | 03/16/07 | $21.76 | $21.17 |
| | | | | | | 03/19/07 | $21.81 | $21.21 |
| | | | | | | 03/20/07 | $21.66 | $21.23 |
| | | | | | | 03/21/07 | $22.30 | $21.28 |
| | | | | | | 03/22/07 | $22.00 | $21.31 |
| | | | | | | 03/23/07 | $21.51 | $21.32 |
| | | | | | | 03/26/07 | $21.41 | $21.32 |
| | | | | | | 03/27/07 | $21.95 | $21.35 |
| | | | | | | 03/28/07 | $21.40 | $21.35 |
| | | | | | | 03/29/07 | $21.49 | $21.36 |
| | | | | | | 03/30/07 | $21.85 | $21.37 |
| | | | | | | 04/02/07 | $21.85 | $21.39 |
| | | | | | | 04/03/07 | $21.50 | $21.39 |
| | | | | | | 04/04/07 | $21.94 | $21.41 |
| | | | | | | 04/05/07 | $21.65 | $21.42 |
| | | | | | | 04/09/07 | $21.77 | $21.43 |
| | | | | | | 04/10/07 | $21.78 | $21.44 |
| | | | | | | 04/11/07 | $21.75 | $21.45 |
| | | | | | | 04/12/07 | $21.75 | $21.46 |
| | | | | | | 04/13/07 | $22.17 | $21.48 |
| | | | | | | 04/16/07 | $22.17 | $21.49 |
| | | | | | | 04/17/07 | $22.35 | $21.52 |
| | | | | | | 04/18/07 | $22.51 | $21.54 |
| | | | | | | 04/19/07 | $22.60 | $21.57 |
| | | | | | | 04/20/07 | $22.60 | $21.59 |
| | | | | | | 04/23/07 | $22.75 | $21.62 |
| | | | | | | 04/24/07 | $22.75 | $21.64 |
| | | | | | | 04/25/07 | $23.00 | $21.67 |
| | | | | | | 04/26/07 | $22.85 | $21.70 |
| | | | | | | 04/27/07 | $22.75 | $21.72 |
| | | | | | | 04/30/07 | $22.50 | $21.74 |
| | | | | | | 05/01/07 | $22.50 | $21.75 |
| | | | | | | 05/02/07 | $22.43 | $21.77 |
| | | | | | | 05/03/07 | $22.91 | $21.79 |
| | | | | | | 05/04/07 | $22.60 | $21.81 |
| | | | | | | 05/07/07 | $23.25 | $21.83 |
| | | | | | | 05/08/07 | $23.65 | $21.87 |
| | | | | | | 05/09/07 | $23.65 | $21.90 |
| | | | | | | 05/10/07 | $23.50 | $21.93 |
| | | | | | | 05/11/07 | $23.90 | $21.96 |
| | | | | | | 05/14/07 | $23.55 | $21.99 |
| | | | | | | 05/15/07 | $23.40 | $22.01 |
| | | | | | | 05/16/07 | $23.10 | $22.03 |
| | | | | | | 05/17/07 | $22.96 | $22.05 |
| | | | | | | 05/18/07 | $23.50 | $22.07 |
| | | | | | | 05/21/07 | $23.50 | $22.09 |

**Table C**

**Scottish Re Convertible Preferred Hybrid Capital Units Artificial Inflation**

| Date | Artificial Inflation Per Share |
| --- | --- |
| 2/17/2005 to 7/30/2006 | $9.37 |
| 7/31/2006 and thereafter | $0.00 |

| Date | Offset Per Share |
| --- | --- |
| 07/31/06 | $5.17 |
| 08/01/06 | $1.21 |
| 08/02/06 | $1.43 |
| 08/03/06 | $1.21 |
| 08/04/06 | $0.26 |

# Exhibit A-2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————x
                       :

**In re SCOTTISH RE GROUP**      :     **Master File No. 06-cv-5853 (SAS)**
**SECURITIES LITIGATION**      :
                       :

———————————————————————x

# PROOF OF CLAIM AND RELEASE

### *DEADLINE FOR SUBMISSION _____, 2009.*

## GENERAL INSTRUCTIONS

      1.     It is important that you completely read and understand the Notice of (1) Pendency and Proposed Settlement of Class Action and (2) Hearing on Proposed Settlement (the "Notice") that accompanies this Proof of Claim and Release, and the Plan of Allocation included in the Notice.  The Notice and the Plan of Allocation describe the proposed Settlement that will resolve this Action, how the Class Members are affected by the Settlement, and the manner in which the Settlement Fund will be distributed, if the Court approves the Settlement and the Plan of Allocation.  The Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Proof of Claim and Release.  By signing and submitting the Proof of Claim and Release, you will be certifying that you have read and that you understand the Notice.

      2.     TO PARTICIPATE IN THE SETTLEMENT, YOU MUST MAIL YOUR COMPLETED AND SIGNED PROOF OF CLAIM AND RELEASE, BY FIRST-CLASS MAIL POSTAGE PREPAID, POSTMARKED ON OR BEFORE _____, 2009, ADDRESSED TO:

<div align="center">

*In re Scottish Re Group Limited Securities Litigation*
c/o Claims Administrator
[Address TBD]

</div>

      3.     This Proof of Claim and Release is directed to all persons who purchased or otherwise acquired Scottish Re Ordinary Shares, Non-Cumulative Perpetual Preferred Shares ("Preferred Shares") and/or Convertible Preferred Shares of Hybrid Capital Units ("HyCUs") in offerings pursuant to registration statements in July 2005 and/or December 2005, or on the open market, between February 17, 2005 and February 20, 2007, inclusive (the "Class Period"), and who, upon disclosure of certain facts alleged in the Amended Complaint, were injured thereby. Excluded from the Class are:  (a) Defendants; (b) Immediate Family Members of the Individual Defendants; (c) the majority-owned subsidiaries and affiliates of Defendants; (d) any person or entity who is or during the Class Period was a partner, executive officer, director, or controlling person of Scottish Re (including any of its subsidiaries of affiliates) or any other Defendant; (e)

any entity in which any Defendant has a Controlling Interest, provided that any mutual fund families in which any Underwriter Defendant has or may have a direct or indirect interest shall not be deemed an excluded person or entity by definition; (f) Defendants' liability insurance carriers, and any affiliates or subsidiaries thereof; and (g) the legal representatives, heirs, successors and assigns of any such excluded party.  Also excluded from the Class are any persons who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.

4.     "Class Member" means any person who is included in the definition of the Class and who did not timely submit a proper request for exclusion in accordance with the requirements set forth in the Notice.

5.     "Authorized Claimant" means a Class Member who timely submits to the Claims Administrator a valid Proof of Claim and Release that is approved pursuant to the terms of the Stipulation.

6.     "Releasee" which is fully defined in the Stipulation, includes, among other persons and entities, Scottish Re, the Underwriter Defendants and E&Y, and their respective past and present directors, executive committee members, officers, employees, members, partners, principals, agents and insurers, and the Individual Defendants and their respective Immediate Family Members.

7.     IF YOU ARE NOT A CLASS MEMBER, OR IF YOU, OR SOMEONE ACTING ON YOUR BEHALF, FILED A REQUEST FOR EXCLUSION FROM THE CLASS, DO NOT SUBMIT A PROOF OF CLAIM AND RELEASE.  YOU MAY NOT, DIRECTLY OR INDIRECTLY, PARTICIPATE IN THE SETTLEMENT IF YOU ARE NOT A CLASS MEMBER.  THUS, IF YOU FILE A VALID REQUEST FOR EXCLUSION IN A TIMELY MANNER, ANY PROOF OF CLAIM AND RELEASE THAT YOU SUBMIT, OR THAT MAY BE SUBMITTED ON YOUR BEHALF, WILL NOT BE ACCEPTED.

8.     To recover as a Class Member, you must complete and sign this Proof of Claim and Release and mail it to the Claims Administrator postmarked on or before _____, 2009.  If you fail to file a timely, properly addressed, and completed Proof of Claim and Release, your claim may be rejected, and you may be precluded from receiving any distribution from the Net Settlement Fund.

9.     Submission of this Proof of Claim and Release does not ensure that you will share in the Net Settlement Fund.  Distributions from the Net Settlement Fund are governed by the Plan of Allocation approved by the Court.  The proposed Plan of Allocation, which is subject to the Court's approval, is included in the Notice.

10.     If you have questions concerning the Proof of Claim and Release, or need additional copies of the Proof of Claim and Release or the Notice, you may contact the Claims Administrator, A.B. Data Ltd., at the above address or by toll-free phone at (800) ___-____, or you may download the documents from Lead Counsel's website, www.blbglaw.com or the website maintained by the Claims Administrator for this Settlement, www._____.

11.     If you are a Class Member and you do not, or someone acting on your behalf does not, submit a timely request for exclusion from the Class, and if the Court approves the Settlement, you will be bound by the terms of any orders and judgments that the Court enters. You will be bound by such order and judgments whether or not you submit a Proof of Claim and Release.   The judgment enjoins the filing or continued prosecution of Plaintiffs' Released Claims, and also releases the Plaintiffs' Released Claims against the Releasees, including those that are subject to pending lawsuits or arbitrations.

12.     You are required to submit genuine and sufficient documentation for all your transactions in Scottish Re Securities (i.e., Scottish Re Ordinary Shares, Non-Cumulative Perpetual Preferred Shares and/or convertible preferred shares of Hybrid Capital Units) during the Class Period of February 17, 2005 through and including February 20, 2007.   Documentation may be photocopies of stockbrokers' confirmation slips or stockbrokers' monthly statements (reflecting your opening and closing balances for the months specified on the actual claim form, and in which transactions during the Class Period occurred).   If you purchased Scottish Re Ordinary Shares in the December 2005 Offering, please submit documentation that will establish that you purchased those shares in the Offering as opposed to in the open market.   IF SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN COPIES OR EQUIVALENT CONTEMPORANEOUS DOCUMENTS FROM YOUR BROKER.   FAILURE TO SUPPLY THIS DOCUMENTATION MAY RESULT IN REJECTION OF YOUR CLAIM. DO NOT SEND ORIGINAL STOCK CERTIFICATES.

13.     The date of covering a "short sale" is deemed to be the date of purchase of the Scottish Re Securities.   The date of a "short sale" is deemed to be the date of sale of the Scottish Re Securities.   However, please note that "short sales" are not covered by the Plan of Allocation.

14.     All joint purchasers must each sign this Proof of Claim and Release.

15.     Agents, executors, administrators, guardians, and trustees must complete and sign the Proof of Claim and Release on behalf of persons represented by them, and they must:

(a)     expressly state the capacity in which they are acting;

(b)     identify the name, account number, Social Security Number (or taxpayer identification number), address and telephone number of the beneficial owner of (or other person or entity on whose behalf they are acting with respect to) the Scottish Re Securities; and

(c)     furnish herewith evidence of their authority to bind to the Proof of Claim and Release the person or entity on whose behalf they are acting.   (Authority to complete and sign a Proof of Claim and Release cannot be established by stockbrokers demonstrating only that they have discretionary authority to trade stock in another person's accounts.)

16.     By submitting a signed Proof of Claim and Release, you will be swearing that you:

(a)      own(ed) the Scottish Re Securities you have listed in the Proof of Claim and Release; or

(b)      are expressly authorized to act on behalf of the owner thereof.

17.     By submitting a signed Proof of Claim and Release, you will be swearing to the truth of the statements contained therein and the genuineness of the documents attached thereto, subject to penalties of perjury under the laws of the United States of America.  The making of false statements, or the submission of forged or fraudulent documentation, will result in the rejection of your claim and may subject you to civil liability or criminal prosecution.

4

## *In re Scottish Re Group Limited Securities Litigation*

**PART I:  CLAIMANT IDENTIFICATION**

_____ / _____
Beneficial Owner's Name (First, Middle, Last)      / Joint Owner's Name

_____
Street Address

_____          _____
City                                              State                  Zip Code

_____          _____
Foreign Province                              Foreign Country

_____          _____ (Daytime)
Area Code                                      Telephone Number

_____          _____ (Evening)
Area Code                                      Telephone Number

_____   or    _____
Social Security Number       or    Taxpayer Identification Number

_____
Record Owner's Name (if different from beneficial owner listed above)

Check appropriate box (check only one box):

☐   Individual/Sole Proprietor   ☐   Joint Owners        ☐   Pension Plan
☐   Corporation                  ☐   Partnership         ☐   Trust
☐   IRA                          ☐   Other (describe:_____)

**NOTE:**  Separate Proofs of Claim should be submitted for each separate legal entity (*e.g.*, a claim from Joint Owners should not include separate transactions of just one of the Joint Owners; an Individual should not combine his or her IRA transactions with transactions made solely in the Individual's name). Conversely, a single Proof of Claim submitted on behalf of one legal entity should include all transactions made by that entity, no matter how many separate accounts that entity has (*e.g.*, a corporation with multiple brokerage accounts should include all transactions made in Scottish Re Securities during the Class Period on one Proof of Claim, no matter how many accounts the transactions were made in).  If you require additional room to list your transactions, please be sure to include your full name and the last four digits of your social security number or Tax ID number on each additional sheet.  Check here if additional transactions are included on additional schedules.   _____

**PART II:  SCOTTISH RE ORDINARY SHARES**

**A.**     **Opening Position As Of Close Of Trading On February 16, 2005:**  State the number of shares of Scottish Re Ordinary Shares the Claimant owned at the close of business on February 16, 2005.  If none, write "zero" or "0."  If other than zero, be sure to attach the required documentation.                                                                                                   _____

**B.**     **Purchases:**  List all purchases of Scottish Re Ordinary Shares made during the period February 17, 2005 through and including February 20, 2007.  (NOTE:  If you acquired your Scottish Re Ordinary Shares during this period other than by an open-market purchase or in the December 2005 Offering, please provide a complete description of the terms of the acquisition on a separate page.)  If you purchased any of your Scottish Re Ordinary Shares pursuant to the Registration Statement for the offering of Scottish Re Ordinary Shares in December 2005, please provide documentation that demonstrates that you purchased those shares "in the Offering."  You are required to establish that fact in order to be eligible to share in the Section 11 Fund in addition to the Section 10(b) Fund.  The Funds and how they will be allocated are described in the Notice.

| Trade Date(s) (List Chronologically) Month/Day/Year | Number of Shares Purchased | Purchase Price Per Share | Total Purchase Price* |
|---|---|---|---|
| ___/___/_____ | _____ | $_____ | $_____ |
| ___/___/_____ | _____ | $_____ | $_____ |
| ___/___/_____ | _____ | $_____ | $_____ |
| ___/___/_____ | _____ | $_____ | $_____ |

*excluding commissions, transfer taxes or other fees.

**C.**     **Sales:**  List all sales of Scottish Re Ordinary Shares made during the period February 17, 2005 through and including May 21, 2007.  Be sure to attach the required documentation.

| Trade Date(s) (List Chronologically) Month/Day/Year | Number of Shares Sold | Sales Price Per Share | Total Sales Price* |
|---|---|---|---|
| ___/___/_____ | _____ | $_____ | $_____ |
| ___/___/_____ | _____ | $_____ | $_____ |
| ___/___/_____ | _____ | $_____ | $_____ |
| ___/___/_____ | _____ | $_____ | $_____ |

*excluding commissions, transfer taxes or other fees

**D.**     **Position As Of Close Of Trading On February 20, 2007:**  State the number of shares of Scottish Re Ordinary Shares the Claimant owned at the close of business on February 20, 2007, the last day of the Class Period.  Be sure to attach the required documentation.  _____

2

**PART III:  SCOTTISH RE NON-CUMULATIVE PERPETUAL PREFERRED SHARES**
        **("PREFERRED SHARES")**

**A.      Opening Position As Of Close Of Trading On February 16, 2005:**  State the number of shares of Scottish Re Preferred Shares the Claimant owned at the close of business on February 16, 2005.  If none, write "zero" or "0."  If other than zero, be sure to attach the required documentation.                                     _____

**B.      Purchases:**  List all purchases of Scottish Re Preferred Shares made during the period February 17, 2005 through and including February 20, 2007.  (NOTE:  If you acquired your Scottish Re Preferred Shares during this period other than by an open-market purchase or in the July 2005 Offering, please provide a complete description of the terms of the acquisition on a separate page.)

| Trade Date(s) (List Chronologically) Month/Day/Year | Number of Shares Purchased | Purchase Price Per Share | Total Purchase Price* |
|---|---|---|---|
| ___/___/_____ | _____ | $_____ | $_____ |
| ___/___/_____ | _____ | $_____ | $_____ |
| ___/___/_____ | _____ | $_____ | $_____ |
| ___/___/_____ | _____ | $_____ | $_____ |

*excluding commissions, transfer taxes or other fees

**C.      Sales:**  List all sales of Scottish Re Preferred Shares made during the period February 17, 2005 through and including May 21, 2007.  Be sure to attach the required documentation.

| Trade Date(s) (List Chronologically) Month/Day/Year | Number of Shares Sold | Sales Price Per Share | Total Sales Price* |
|---|---|---|---|
| ___/___/_____ | _____ | $_____ | $_____ |
| ___/___/_____ | _____ | $_____ | $_____ |
| ___/___/_____ | _____ | $_____ | $_____ |
| ___/___/_____ | _____ | $_____ | $_____ |

*excluding commissions, transfer taxes or other fees

**D.      Position As Of Close Of Trading On February 20, 2007:**  State the number of shares of Scottish Re Preferred Shares the Claimant owned at the close of business on February 20, 2007, the last day of the Class Period.  Be sure to attach the required documentation. _____

**PART IV:  SCOTTISH RE CONVERTIBLE PREFERRED SHARES OF HYBRID CAPITAL UNITS ("HyCU Shares")**

**A.      Opening Position As Of Close Of Trading On February 16, 2005:**  State the number of Scottish Re HyCU Shares the Claimant owned at the close of business on February 16, 2005. If none, write "zero" or "0."  If other than zero, be sure to attach the required documentation. _____

**B.      Purchases:**  List all purchases of Scottish Re HyCU Shares made during the period February 17, 2005 through and including February 20, 2007.  (NOTE:  If you acquired your Scottish Re HyCU Shares during this period other than by an open-market purchase, please provide a complete description of the terms of the acquisition on a separate page.) Be sure to attach the required documentation.

| Trade Date(s) (List Chronologically) Month/Day/Year | Number of Shares Purchased | Purchase Price Per HyCU | Total Purchase Price* |
|---|---|---|---|
| ___/___/_____ | _____ | $_____ | $_____ |
| ___/___/_____ | _____ | $_____ | $_____ |
| ___/___/_____ | _____ | $_____ | $_____ |
| ___/___/_____ | _____ | $_____ | $_____ |

*excluding commissions, transfer taxes or other fees

**C.      Sales:**  List all sales of Scottish Re HyCU Shares made during the period February 17, 2005 through and including May 21, 2007.  Be sure to attach the required documentation.

| Trade Date(s) (List Chronologically) Month/Day/Year | Number of Shares Sold | Sales Price Per HyCU | Total Sales Price* |
|---|---|---|---|
| ___/___/_____ | _____ | $_____ | $_____ |
| ___/___/_____ | _____ | $_____ | $_____ |
| ___/___/_____ | _____ | $_____ | $_____ |
| ___/___/_____ | _____ | $_____ | $_____ |

*excluding commissions, transfer taxes or other fees

**D.      Position As Of Close Of Trading On February 20, 2007:**  State the number Scottish Re HyCU Shares the Claimant owned at the close of business on February 20, 2007, the last day of the Class Period.  Be sure to attach the required documentation. _____

4

**YOU MUST READ THE FOLLOWING RELEASE AND SIGN ON PAGE __.**

**<u>RELEASE OF CLAIMS</u>**

<u>Definitions</u>

For the purpose of the Proof of Claim, defined terms not already defined herein have the following meanings.  (Other defined terms have the meanings given them in the Stipulation and Agreement of Settlement dated August 21, 2008 (the "Stipulation").)

"<u>Final Judgment and Order of Dismissal</u>" means the judgment entered by the Court upon approval of the Settlement, as contemplated by the Stipulation, dismissing the Action with prejudice and without costs (except to the extent awarded by the Court) to any Releasee, releasing all Plaintiffs' Released Claims as against the Releasees, and enjoining Class Members from instituting, continuing, or prosecuting any action asserting any Plaintiffs' Released Claims against any Releasee.

"<u>Plaintiffs' Released Claims</u>" means each and every Claim or Unknown Claim that Lead Plaintiff, or any other Class Member (*i*) asserted against any of the Releasees in the Action (including all Claims asserted in the First Complaint or the Amended Complaint) and (*ii*) could have asserted or could assert against any of the Releasees, whether arising under any federal, state, or foreign statutory or common-law rule, in any other court, tribunal, agency, or other forum, that arises out of or relates to the conduct alleged in the First Complaint or the Amended Complaint and to the purchase, sale, other disposition of, or decision to hold or any other Investment Decision concerning, any securities of Scottish Re during the Class Period by any person or entity during the Class Period.

"<u>Releasees</u>" means (a) as to Scottish Re, the Underwriter Defendants and E&Y, the Scottish Re Releasees, the Underwriter Defendants' Releasees, and the E&Y Releasees and their respective past and present directors, executive committee members, officers, employees, members, partners, principals, agents, attorneys (including their General Counsel and other inside or outside attorneys employed by any of these Defendants), advisors, trustees, administrators, fiduciaries, consultants, representatives, accountants, accounting advisors, auditors, and insurance carriers for any actual or alleged conduct, act, or omission occurring or engaged in on behalf of their respective insureds at any time; and (b) the Individual Defendants and their respective Immediate Family Members.

The Scottish Re Releasees, the Underwriter Defendants' Releasees and the E&Y Releasees means Scottish Re, the Underwriter Defendants and E&Y and any and all of their respective parents, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), divisions, business units, subsidiaries, and entities in which Scottish Re, the Underwriter Defendants and E&Y respectively has a Controlling Interest or that have a Controlling Interest any of them.

"<u>Unknown Claims</u>" means any and all Plaintiffs' Released Claims that Lead Plaintiff, or any other Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Releasees, and any Defendants' Released Claims that the Releasees do not know or suspect to exist in their favor, which, if known by Lead Plaintiff, any other Class

<div align="center">5</div>

Member, or the Releasees, might have affected his, her, its, or their decision(s) with respect to the Settlement.  As to any and all Plaintiffs' Released Claims and Defendants' Released Claims, the Settling Parties stipulate and agree that, upon entry of the Final Judgment, Lead Plaintiff, and Defendants shall expressly waive, and each other Class Member shall be deemed to have waived, and by operation of the Final Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or of any other country, or any principle of common law, that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiff, and Defendants acknowledge, and the other Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Plaintiffs' Released Claims and Defendants' Released Claims was separately bargained for and was a key element of the Settlement.

### The Release

I (we) understand and acknowledge that, without further action by anyone, on and after entry of the Final Judgment and Order of Dismissal, each Class Member, ***including Class Members who have pending or later initiate any other actions, arbitrations, or other proceedings against any of Scottish Re, the Individual Defendants, the Underwriter Defendants, or E&Y relating to Plaintiffs' Released Claims that are pending when the Final Judgment is entered***, on behalf of themselves, their heirs, executors, administrators, successors, assigns, and any person they represent, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Judgment and Order of Dismissal shall have fully, finally, and forever released relinquished, settled, and discharged all Plaintiffs' Released Claims against each and every one of the Releasees, including such Plaintiffs' Released Claims as already may have been asserted in any pending actions, arbitrations, or other proceedings, and whether or not a Proof of Claim and Release is executed and delivered by, or on behalf of, such Class Member**.**

## SIGNATURE AND CERTIFICATIONS

By signing and submitting this Proof of Claim and Release, the Claimant or the person who represents the Claimant certifies, as follows:

1. that the Claimant is a Class Member, as defined in the Notice;

2. that I (we) have read and understand the contents of the Notice and the Proof of Claim;

3. that I (we) are not acting for any of the Defendants, nor am I (are we) such a Defendant or otherwise excluded from the Class;

4. that I (we) have not filed a request for exclusion from the Class and that I (we) do not know of any request for exclusion from the Class filed on my (our) behalf with respect to my (our) transactions in Scottish Re Securities;

5. that I (we) own(ed) the Scottish Re Securities identified in the Proof of Claim, or that, in signing and submitting this Proof of Claim, I (we) have the authority to act on behalf of the owner(s) thereof;

6. that Claimant may be entitled to receive a distribution from the Net Settlement Fund;

7. that Claimant desires to participate in the Settlement described in the Notice and agrees to the terms and conditions thereof;

8. that I (we) submit to the jurisdiction of the United States District Court for the Southern District of New York for purposes of investigation and discovery under the Federal Rules of Civil Procedure with respect to this Proof of Claim;

9. that I (we) agree to furnish such additional information with respect to this Proof of Claim as the parties or the Court may require;

10. that I (we) waive trial by jury, to the extent it exists, and agree to the Court's summary disposition of the determination of the validity or amount of the claim made by this Proof of Claim; and

11. that I (we) certify that I am (we are) not subject to backup withholding under the provisions of Section 3406(a)(1)(c) of the Internal Revenue Code.

**NOTE**: If you have been notified by the Internal Revenue Service that you are subject to backup withholding, please strike the language that you are not subject to backup withholding in the certification above. The Internal Revenue Service does not require your consent to any provision other than the certification required to avoid backup withholding.

I declare, under penalty of perjury under the laws of the United States of America, that the statements made and answers given in this Proof of Claim are true and correct and that the documents submitted herewith are true and genuine.

_____

Signature of Claimant


_____     _____

Print Name of Claimant                                                          Date


_____

Signature of Joint Claimant, if any


_____     _____

Print Name of Joint Claimant                                                 Date


***If Claimant is other than an individual, or is not the person completing this form,
the following also must be provided:***


_____

Signature of Person Completing Form


_____     _____

Print Name of Person Completing Form                               Date


_____

Capacity of Person Signing (Executor, President, Trustee, etc.)

8

## REMINDER CHECKLIST

1. Please sign the Proof of Claim on page __.

2. If this Claim is being made on behalf of Joint Claimants, then both must sign.

3. Please remember to attach supporting documents.  These must include documentation of: (a) all opening and closing balances, as set forth in the specific sections of the Claim Form; and (b) all purchases and sales of Scottish Re Securities during the Class Period of February 17, 2005 through and including February 20, 2007, as set forth in the specific sections of the Claim Form.

4. If you move, please send your new address to:

   *In re Scottish Re Group Securities Litigation*
   *c/o Claims Administrator [Address to Come]*

5. **DO NOT SEND** ORIGINALS OF ANY SUPPORTING DOCUMENTS.

6. Keep a copy of your Proof of Claim and all documentation submitted for your records.

7. **The Claims Administrator will acknowledge receipt of your Proof of Claim and Release by mail by mail within 60 days.  Your Proof of Claim is not deemed fully filed until you receive an acknowledgement postcard.  If you do not receive an acknowledgment postcard within 60 days, please call the Claims Administrator toll free at (800) ___-____.**

---

## ACCURATE CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME.
## THANK YOU FOR YOUR PATIENCE

# Exhibit A-3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————x
                :
**In re SCOTTISH RE GROUP**      :   **Master File No. 06-cv-5853 (SAS)**
**SECURITIES LITIGATION**       :
                :
———————————————————————x

SUMMARY NOTICE OF:
(1) PENDENCY AND PROPOSED SETTLEMENT OF
CLASS ACTION, AND (2) HEARING ON PROPOSED SETTLEMENT

TO:    ALL PERSONS WHO, DURING THE PERIOD FROM FEBRUARY 17, 2005, THROUGH FEBRUARY 20, 2007, INCLUSIVE (THE "CLASS PERIOD"), PURCHASED OR OTHERWISE ACQUIRED SCOTTISH RE GROUP LIMITED ("SCOTTISH RE") ORDINARY SHARES, NON-CUMULATIVE PERPETUAL PREFERRED SHARES ("PREFERRED SHARES") AND/OR CONVERTIBLE PREFERRED SHARES OF HYBRID CAPITAL UNITS ("HYCU SHARES") (THE "CLASS")

YOU ARE HEREBY NOTIFIED that the above-captioned action has been preliminarily certified as a class action and that the Lead Plaintiff has reached a proposed settlement for $37.5 million in cash to resolve all claims in the action.  A hearing will be held on _____, 2008, at _____ __.m. before the Honorable Shira A. Scheindlin, in the United States District Court, Southern District of New York, located at 500 Pearl Street, Courtroom 15C, New York, New York 10007-1312, to determine, among other things, (i) whether the proposed Settlement should be approved by the Court as fair, reasonable, and adequate; (ii) whether the proposed Plan of Allocation of the net proceeds of the Settlement should be approved by the Court as fair and reasonable; and (iii) to consider the application of Lead Counsel for attorneys' fees and reimbursement of expenses.

IF YOU ARE A MEMBER OF THE CLASS DESCRIBED ABOVE, YOUR RIGHTS WILL BE AFFECTED BY THIS SETTLEMENT, AND YOU MAY BE ENTITLED TO

SHARE IN THE SETTLEMENT FUND.  If you have not yet received the full printed Notice of: (1) Pendency of and Proposed Settlement of Class Action and (2) Hearing on Proposed Settlement (the "Notice") and a Proof of Claim form, you may obtain copies of these documents by contacting the Claims Administrator at:

*In re Scottish Re Group Securities Litigation*
c/o [Claims Administrator
Address
(800) ___-____.

Copies of the Notice and Proof of Claim form also may be downloaded from Lead Counsel's website at: www.blbglaw.com or the website maintained by the Claims Administrator for this settlement at www._____.com.  To be eligible to participate in the distribution of the net proceeds of the Settlement, you must submit a Proof of Claim form postmarked no later than _____, 2009.

    If you purchased or otherwise acquired Scottish Re Ordinary Shares, Preferred Shares and/or HyCU Shares in the Offerings, or on the open market, between February 17, 2005 and February 20, 2007, inclusive, and were injured thereby, you will be deemed to be a Member of the Class unless you expressly request to be excluded from the Class.  Any request for exclusion must be *received* **NO LATER THAN _____, 2008**.  Instructions on how to request exclusion from the Class are set forth in the Notice.  You will be bound by, and subject to, any judgment rendered in the class action unless you timely request exclusion from the Class in the manner set forth in the Notice.  If you submit a valid and timely request for exclusion, you will not be entitled to share in the proceeds of the Settlement, and you will not be bound by the Settlement or the Judgment.

    The Notice also describes how you may object to the proposed Settlement, Plan of Allocation and/or Lead Counsel's application for attorneys' fees and reimbursement of expenses.

All objections must be *received* by the Court and the lawyers listed in the Notice or before _____, 2008.

      Inquiries, other than requests for copies of the Notice and Proof of Claim form, may be directed to Lead Counsel:

<div align="center">

Salvatore J. Graziano
BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019
Email:  blbg@blbglaw.com

</div>

Dated:  _____, 2008                   BY ORDER OF THE COURT

#322467.4

**Exhibit B**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————x
                                          :
**In re SCOTTISH RE GROUP**          :        **Master File No. 06-cv-5853 (SAS)**
**SECURITIES LITIGATION**            :
                                          :
—————————————————————x

**[Proposed]**
<u>**ORDER AND FINAL JUDGMENT**</u>

On the _____ day of _____, 2008, a hearing having been held before this

Court to determine: (1) whether the proposed Settlement should be approved as fair, reasonable,

and adequate; (2) whether a Judgment should be entered dismissing the Action on the merits and

with prejudice as to Defendants, and whether the Class's release of the Plaintiffs' Released

Claims, as set forth in the Stipulation and Agreement of Settlement dated August 21, 2008 (the

"Stipulation"), should be provided to the Releasees; (3) whether the proposed Plan of Allocation

is fair and reasonable and should be approved by the Court; and (4) whether the Individual

Notice, Summary Notice, and the notice methodology implemented pursuant to the Stipulation

and the Court's Preliminary Approval Order (a) constituted the best practicable notice, (b)

constituted notice that was reasonably calculated, under the circumstances, to apprise potential

Class Members of the pendency of the Action, their right to object to the proposed Settlement,

their right to appear at the Fairness Hearing, and their right to exclude themselves from the Class,

(c) were reasonable and constituted due, adequate, and sufficient notice to all persons entitled to

notice, and (d) met all applicable requirements of the Federal Rules of Civil Procedure, the

United States Constitution (including the Due Process Clause), the Rules of the Court, the

Private Securities Litigation Reform Act (the "PSLRA"), and any other applicable law; and the

Court having considered all matters submitted to it at the hearing and otherwise; and it appearing

that an Individual Notice of the hearing substantially in the form approved by the Court was sent

to all reasonably identifiable potential Class Members, as shown by the records of Scottish Re's

transfer agent(s), at the respective addresses set forth in such records, and that a Summary Notice

of the hearing substantially in the form approved by the Court was published pursuant to the

Preliminary Approval Order, and all capitalized terms used herein having the meanings as set

forth and defined in the Stipulation;

       NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

       1.     **<u>Jurisdiction</u>.**  The Court has jurisdiction over the subject matter of the Action, the

Lead Plaintiff, and all other Class Members (as defined in the Appendix), and has jurisdiction to

enter this Order and Final Judgment (the "Judgment").

       2.     **<u>Certification of Class Solely for Purposes of the Settlement.</u>**

       (a)     The Court finds that the prerequisites for a class action under Federal

Rules of Civil Procedure 23 (a) and (b)(3) have been satisfied in that: (i) the number of Class

Members is so numerous that joinder of all members thereof is impracticable; (ii) there are

questions of law and fact common to the Class; (iii) the claims of the Class Representative are

typical of the claims of the Class it seeks to represent; (iv) the Class Representative and Lead

Counsel have and will fairly and adequately represent the interests of the Class; (v) the questions

of law and fact common to the members of the Class predominate over any questions affecting

only individual members of the Class; and (vi) a class action is superior to other available

methods for the fair and efficient adjudication of the controversy.

       (b)     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court

hereby certifies this action as a class action, for settlement purposes only, on behalf of a class

defined as: all persons and entities who purchased or otherwise acquired Scottish Re Ordinary

Shares, Non-Cumulative Perpetual Preferred Shares ("Preferred Shares") and/or Convertible

Preferred Shares of Hybrid Capital Units ("HyCU Shares") in the Offerings, or on the open

market, between February 17, 2005 and February 20, 2007, inclusive, and who, upon disclosure

of certain facts alleged in the Amended Complaint, were injured thereby (the "Class" or "Class

Members").  Excluded from the Class are:  (a) Defendants; (b) Immediate Family Members of

the Individual Defendants; (c) the majority-owned subsidiaries and affiliates of Defendants; (d)

any person or entity who is or during the Class Period was a partner, executive officer, director,

or controlling person of Scottish Re (including any of its subsidiaries of affiliates) or any other

Defendant; (e) any entity in which any Defendant has a Controlling Interest, provided that any

Investment Vehicle shall not be deemed an excluded person or entity by definition); and (f) the

legal representatives, heirs, successors and assigns of any such excluded party.  Also excluded

from the Class are those persons or entities listed on Exhibit 1 hereto who have submitted valid

and timely requests for exclusion from the Class. [OR No timely and valid requests for exclusion

from the Class were received.]

       (c)     The State Teachers Retirement System of Ohio is certified for purposes of

the Settlement only as Class Representative, and the law firm of Bernstein Litowitz Berger &

Grossmann LLP is appointed Class Counsel pursuant to Rule 23(g) of the Federal Rules of Civil

Procedure.

      3.     **Notice.**  The Court finds that the distribution of the Individual Notice and the

publication of the Summary Notice and the notice methodology as set forth in the Preliminary

Approval Order all were implemented in accordance with the Court's Preliminary Approval

Order.  The Court further finds that the Individual Notice, the Summary Notice, and the notice

methodology implemented pursuant to the Court's Preliminary Approval Order (*i*) constituted

the best practicable notice, (*ii*) constituted notice that was reasonably calculated, under the circumstances, to apprise potential Class Members of the pendency of the Action, of the effect of the Stipulation (including the release of claims), of their right to object to the proposed Settlement, of their right to exclude themselves from the Class, and of their right to appear at the Fairness Hearing, (*iii*) were reasonable and constituted due, adequate, and sufficient notice to all persons or entities entitled to receive notice, and (*iv*) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the PSLRA, the Rules of the Court, and any other applicable law.

4.    **Final Settlement Approval.**   The Settlement, as set forth in the Stipulation is hereby fully and finally approved as fair, reasonable, and adequate, consistent and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the PSLRA, and the Rules of the Court, and in the best interests of each of the Settling Parties and the Class Members.   The Settling Parties are directed to implement and consummate the Stipulation in accordance with its terms and provisions.   The Court approves the documents submitted to the Court in connection with the implementation of the Stipulation.

5.    **Plan of Allocation Approval.**   The Plan of Allocation set forth in the Individual Notice is approved as fair and reasonable, and Lead Counsel and the Claims Administrator are directed to administer the Settlement in accordance with the terms and provisions of the Plan of Allocation.

6.    **Dismissal of Action.**   The Action, including all Class claims that have been asserted, is hereby dismissed on the merits and with prejudice, without fees or costs to any Settling Party except as otherwise provided in the Stipulation.

7.      **Releases.**  The releases as set forth in Section VIII of the Stipulation, together with the respective definitions of Plaintiffs' Released Claims, Releasees, and Defendants' Released Claims, which are set out in the attached Appendix, are expressly incorporated herein in all respects.  As of the date this Judgment becomes Final:

(a)      The Plaintiffs' Released Claims against each and all of the Releasees are hereby released and dismissed with prejudice and on the merits, without costs to any party. Nothing in this Judgment shall release the Plaintiffs' Released Claims against the Releasees by any Person who submitted a timely, valid request for exclusion.

(b)      The Defendants' Released Claims against Lead Counsel, Lead Plaintiff, all other Class Members or their attorneys, that relate in any way to any and all acts directly or indirectly relating to the institution, prosecution, defense, or settlement of the Action are hereby released and dismissed with prejudice and on the merits, without costs to any party.

(c)      All Claims by Lead Counsel against Defendants' Counsel, and any or all of the Releasees that relate in any way to any and all acts directly or indirectly relating to the institution, prosecution, defense, or settlement of the Action or to the Stipulation are released. Notwithstanding the foregoing, nothing in this Judgment shall preclude any action to enforce the terms of the Stipulation.

8.      **Permanent Injunction.**  The Court permanently bars and enjoins (*i*) all Class Members (and their heirs, executors, administrators, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), and assigns) who have not filed timely, valid requests to opt out of the Class from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from any other lawsuit, arbitration, or other proceeding or order in any jurisdiction that is based upon, arises out of, or

relates to any Plaintiffs' Released Claim as to any Releasee, and (*ii*) all persons and entities from organizing any Class Members for purposes of pursuing as a purported class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action) any lawsuit that is based upon, arises out of, or relates to any Plaintiffs' Released Claim as to any Releasee, including, but not limited to, any claim that is based upon, arises out of, or relates to the Action and the transactions and occurrences referred to in the First Complaint or the Amended Complaint and that arises out of or relates to the purchase, sale, other disposition of, or decision to hold, or any other Investment Decision concerning the securities of Scottish Re during the Class Period.

9.    **Contribution Bar Order.**  In accordance with 15 U.S.C. § 78u-4(f)(7)(A), (i) Any person or entity is hereby permanently enjoined from commencing, prosecuting, or asserting against any of the Releasees any Claim, however denominated, where the Claim is, arises from, or relates to Plaintiffs' Released Claims or the alleged injury to such person or entity arises from that person's or entity's alleged liability in this Action or payment in this Action to the Class or any Class Member, and (ii) the Releasees are hereby permanently enjoined from commencing, prosecuting, or asserting against any person or entity any such claim, and (iii) such claims are hereby permanently barred, extinguished, discharged, satisfied, and unenforceable.   In accordance with 15 U.S.C. § 78u-4(f)(7)(B) and the agreement of the parties, any final verdict or judgment that might be obtained by or on behalf of the Class or a Class Member against any person or entity for loss for which such person or entity and any Releasee are found to be jointly liable shall be reduced by the greater of (i) an amount that corresponds to the percentage of responsibility of any such Releasee(s) for common damages or (ii) the amount paid to the Class by or on behalf of each such Releasee for common damages.

10.  **Complete Bar Order.**  To effectuate the Settlement, the Court hereby enters the following Complete Bar:

(a)  Any and all persons and entities, including, without limitation, Scottish Re, the Individual Defendants, the Underwriter Defendants, and E&Y, are permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any Releasee arising under any federal, state, or foreign statutory or common-law rule, contract, or otherwise, however styled, whether for indemnification or contribution or otherwise denominated, including, without limitation, Claims for breach of contract and for misrepresentation, where the Claim is, arises from, or relates to a Plaintiffs' Released Claim or the alleged injury to such person or entity arises from that person's or entity's alleged liability in this Action or payment in this Action to the Class or any Class Member, including, without limitation, any Claim in which a person or entity seeks to recover from any of the Releasees (*i*) any amounts such person or entity has or might become liable to pay to the Class or any Class Member and/or (*ii*) any costs, expenses, or attorneys' fees from defending any Claim by the Class or any Class Member.  All such Claims are hereby extinguished, discharged, satisfied, and unenforceable, subject to a hearing to be held by the Court, if necessary.  The provisions of this Complete Bar Order shall preclude any liability of any of the Releasees to any person or entity (including Scottish Re, the Individual Defendants, the Underwriter Defendants, and E&Y) for indemnification, contribution, or otherwise on any Claim that is, arises from, or relates to a Plaintiffs' Released Claim or where the alleged injury to such person or entity arises from that person's or entity's alleged liability in this Action or payment in this Action to the Class or any Class Member; *provided, however,* that if the Class or any Class Member obtains any judgment against any such person or entity based upon, arising out of, or relating to any Plaintiffs'

B-7

Released Claim for which such person or entity and any of the Releasees are found to be jointly liable, that person or entity shall be entitled to a judgment credit equal to an amount that is the greater of (*i*) an amount that corresponds to the percentage of responsibility of any such Releasee(s) for common damages or (*ii*) the amount paid to the Class by or on behalf of each such Releasee for common damages.

(b)      Each and every Releasee is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any other person or entity (including, without limitation, any other Releasee and any of the Defendants) arising under any federal, state, or foreign statutory or common-law rule, contract, or otherwise, however styled, whether for indemnification or contribution or otherwise denominated, including, without limitation, Claims for breach of contract and for misrepresentation, where the Claim is, arises from, or relates to a Plaintiffs' Released Claim or the alleged injury to such Releasee arises from that Releasee's alleged liability in this Action or payment in this Action to the Class or any Class Member, including, without limitation, any Claim in which any Releasee seeks to recover from any person or entity, including another Releasee or Scottish Re, the Individual Defendants, the Underwriter Defendants, and E&Y, (*i*) any amounts any such Releasee has or might become liable to pay to the Class or any Class Member and/or (*ii*) any costs, expenses, or attorneys' fees from defending any Claim by the Class or any Class Member.  All such Claims are hereby extinguished, discharged, satisfied and unenforceable.

(c)      Notwithstanding anything stated in this Complete Bar Order, if any person or entity (for purposes of this Complete Bar Order, a "petitioner") commences against any of the Releasees any action either (*i*) asserting a Claim that is or arises from a Plaintiffs' Released Claim or where the alleged injury to such person or entity arises from that person's or entity's

alleged liability in this Action or payment in this Action to the Class or any Class Member, or (*ii*) seeking contribution or indemnity for any liability or expenses incurred in connection with any such Claim, and if, despite the intentions of the Settling Parties, such action or Claim is not barred by a court pursuant to this Complete Bar Order, neither the Complete Bar Order nor the Stipulation shall bar Claims by that Releasee against (*i*) such petitioner, (*ii*) any person or entity who is or was controlled by, controlling, or under common control with the petitioner, whose assets or estate are or were controlled, represented, or administered by the petitioner, or as to whose Claims the petitioner has succeeded, and (*iii*) any person or entity that participated with any of the preceding persons or entities described in items (*i*) and (*ii*) of this subparagraph 10(c) in connection with the assertion of the Claim brought against the Releasee(s); *provided, however,* that the Stipulation and the Complete Bar Order shall not bar or enjoin the Class or any Class Member from bringing any and all Claims against any non-Releasee; *provided, further,* that nothing in this Complete Bar Order or the Stipulation shall prevent the Settling Parties from taking such steps as are necessary to enforce the terms of the Stipulation.

(d)     If any term of the Complete Bar Order entered by the Court is held to be unenforceable after the date the Court enters the Complete Bar Order, such provision shall be substituted with such other provision as may be necessary to afford all of the Releasees the fullest protection permitted by law from any Claim that is based upon, arises out of, or relates to any Plaintiffs' Released Claim.

(e)     Notwithstanding the Complete Bar Order or anything else in the Stipulation, nothing shall release, interfere with, limit, or bar the assertion by any Releasee of any Claim for insurance coverage under any insurance, reinsurance, or indemnity insurance policy that provides coverage respecting the conduct at issue in the Action.

(f)      Neither the PSLRA Contribution Bar Order nor the Complete Bar Order shall affect any Scottish Re obligation to indemnify and hold harmless each of the Underwriter Defendants for the Underwriter Defendants' costs of defending this Action or otherwise, pursuant to (i) an Underwriting Agreement, dated June 28, 2005, that Scottish Re entered into with Lehman Brothers Inc. on behalf of itself and as representative of Banc of America Securities LLC; Keefe, Bruyette & Woods, Inc.; Oppenheimer & Co. Inc.; Advest, Inc.; RBC Dain Rauscher Inc.; Stifel, Nicolaus & Company, Incorporated; and (ii) an Underwriting Agreement, dated December 15, 2005, that Scottish Re entered into with Lehman Brothers Inc. and Bear, Stearns & Co. Inc. on behalf of themselves and as representatives of Banc of America Securities LLC, Goldman, Sachs & Co.; Wachovia Capital Markets, LLC; A.G. Edwards & Sons, Inc.; Fox-Pitt, Kelton Incorporated and Oppenheimer & Co. Inc.

11.      **No Admissions.**  This Judgment, the Stipulation, the offer of the Stipulation, and compliance with this Judgment or the Stipulation shall not constitute or be construed as an admission by any of the Releasees of any wrongdoing or liability.  This Judgment and the Stipulation are to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Amended Complaint and of the Plaintiffs' Released Claims.  The Settling Parties agree that no party was or is a "prevailing party" in this case.  In no event shall this Judgment, the Stipulation, any of their provisions, or any negotiations, statements, or court proceedings relating to their provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or any judicial, administrative, regulatory, or other proceeding, except a proceeding to enforce the Stipulation. Without limiting the foregoing, neither this Judgment, the Stipulation, nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used

as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, any of the Defendants, or as a waiver by any of the Defendants of any applicable defense, or as a waiver by Lead Plaintiff or the Class of any Claims, causes of action, or remedies; *provided, however,* that this Judgment and the Stipulation may be filed in any action against or by any Defendant or the Releasees to support a defense of *res judicata*, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim.

12.    **Modification of Stipulation.**    Without further approval from the Court, the Settling Parties are hereby authorized to agree to and adopt such amendments, modifications, and expansions of the Stipulation and all exhibits attached to the Stipulation as (*i*) are not materially inconsistent with the Judgment and (*ii*) do not materially limit the rights of Class Members under the Stipulation.

13.    **Retention of Jurisdiction.**    Without in any way affecting the finality of this Judgment, the Court expressly retains continuing and exclusive jurisdiction over the Settling Parties and the Class Members for all matters relating to the Action, including the administration, consummation, interpretation, effectuation, or enforcement of the Stipulation and of this Judgment, and for any other reasonably necessary purpose, including, without limitation,

(a)    enforcing the terms and conditions of the Stipulation (including, without limitation, enforcing the Complete Bar Order, the Contribution Bar Order, and the permanent injunction);

(b)    resolving any disputes, claims, or causes of action that, in whole or in part, are related to or arise out of the Stipulation or this Judgment (including, without limitation,

whether a person or entity is or is not a Class Member, and whether claims or causes of action allegedly related to the Action are or are not barred by this Judgment or the releases);

(c)      entering such additional orders as may be necessary or appropriate to protect or effectuate this Judgment, and

(d)      entering any other necessary or appropriate orders to protect and effectuate this Court's retention of continuing jurisdiction.

Nothing in this paragraph is intended to restrict the ability of the Settling Parties to exercise their rights under paragraph 12 of this Order.

14.     **Rule 11 Findings.**  The Court finds that all of the complaints in the Action were filed on a good-faith basis in accordance with the PSLRA and with Rule 11 of the Federal Rules of Civil Procedure based upon all publicly available information.  The Court finds that all Settling Parties and their counsel have complied with each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein.

15.     **Termination.**   In the event that the Settlement does not become Final in accordance with the terms of the Stipulation, or is terminated pursuant to Section  XII of the Stipulation, this Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation.

16.     **Entry of Judgment.**  There is no just reason to delay the entry of this Order and Final Judgment, and immediate entry by the Clerk of the Court is expressly directed.

Dated:          New York, New York
                _____, 2008


                                        _____
                                            Shira A. Scheindlin
                                        United States District Judge

B-12

## APPENDIX OF SELECTED TERMS AND DEFINITIONS

**"Class"**

"Class" or "Class Members" means all persons and entities who purchased or otherwise acquired Scottish Re Ordinary Shares, Non-Cumulative Perpetual Preferred Shares ("Preferred Shares") and/or Convertible Preferred Shares of Hybrid Capital Units ("HyCU Shares") in the Offerings, or on the open market, between February 17, 2005 and February 20, 2007, inclusive, and who, upon disclosure of certain facts alleged in the Amended Complaint, were injured thereby. Excluded from the Class are:  (a) Defendants; (b) Immediate Family Members of the Individual Defendants; (c) the majority-owned subsidiaries and affiliates of Defendants; (d) any person or entity who is or during the Class Period was a partner, executive officer, director, or controlling person of Scottish Re (including any of its subsidiaries of affiliates) or any other Defendant; (e) any entity in which any Defendant has a Controlling Interest, provided that any Investment Vehicle shall not be deemed an excluded person or entity by definition); and (f) the legal representatives, heirs, successors and assigns of any such excluded party.  Also excluded from the Class are any persons who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.

**"Plaintiffs' Released Claims"**

"Plaintiffs' Released Claims" means each and every Claim or Unknown Claim that Lead Plaintiff, or any other Class Member (*i*) asserted against any of the Releasees in the Action (including all Claims asserted in the First Complaint or the Amended Complaint) and (*ii*) could have asserted or could assert against any of the Releasees, whether arising under any federal, state, or foreign statutory or common-law rule, in any other court, tribunal, agency, or other forum, that arises out of or relates to the conduct alleged in the First Complaint or the Amended

Complaint and to the purchase, sale, other disposition of, or decision to hold or any other Investment Decision concerning, any securities of Scottish Re during the Class Period by any person or entity during the Class Period.

**"Defendants' Released Claims"**

"Defendants' Released Claims" means each and every Claim or Unknown Claim that has been or could have been asserted in the Action by any of the Defendants and their respective Releasees against the Lead Plaintiff, other Class Members, or their attorneys arising out of or relating in any way to the institution, prosecution, or settlement of the Action (except for claims to enforce the Settlement).

**"Releasees"**

"Releasee" means each and every one of, and "Releasees" means all of the following:

1.      As to Scottish Re, the Underwriter Defendants and E&Y, the Scottish Re Releasees, the Underwriter Defendants' Releasees, and the E&Y Releasees and their respective past and present directors, executive committee members, officers, employees, members, partners, principals, agents, attorneys (including their General Counsel and other inside or outside attorneys employed by any of these Defendants), advisors, trustees, administrators, fiduciaries, consultants, representatives, accountants, accounting advisors, auditors, and insurance carriers for any actual or alleged conduct, act, or omission occurring or engaged in on behalf of their respective insureds at any time; and

2.      The Individual Defendants and their respective Immediate Family Members.

**Release and Waiver:**

1.      Pursuant to the Final Judgment and Order of Dismissal, without further action by anyone, and whether or not a Proof of Claim has been executed and/or delivered by or on behalf

of any such Class Member, and subject to Subsection 4 below, on and after the Final Settlement Date, Lead Plaintiff, and any and all Class Members, on behalf of themselves, their heirs, executors, administrators, beneficiaries, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), and assigns, and any person or entity claiming by or through any of the Class Members, for good and sufficient consideration, shall be deemed to have, and by operation of law and of the Final Judgment and Order of Dismissal shall have, fully, finally, and forever released, relinquished, settled, and discharged:

(a)     all Plaintiffs' Released Claims against each and every one of the Releasees;

(b)     all Claims, damages, and liability as to any or all of the Lead Plaintiff, Lead Counsel, Defendants' Counsel, and each and every one of the Releasees that relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, the prosecution, defense, or settlement of the Action or to this Settlement Agreement; and

(c)     all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Lead Counsel or other counsel representing Lead Plaintiff, or the other Class Members (or any of them) in the Action, or any of them, in connection with or related in any manner to the Action, the settlement of the Action, or the administration of the Action and/or its settlement except to the extent otherwise specified in the Stipulation.

2.     Pursuant to the Final Judgment and Order of Dismissal, without further action by anyone, and subject to Subsection 4 below, on and after the Final Settlement Date, Defendants' Counsel and any or all Releasees, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), assigns, any person

or entity claiming by or through any of the Defendants, and any person or entity representing Defendants, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Judgment and Order of Dismissal shall have, fully, finally, and forever released, relinquished, settled, and discharged Lead Counsel, Lead Plaintiff and all other named plaintiffs in the cases consolidated in the Action and their respective counsel from any and all Claims, whether known Claims or Unknown Claims, that relate in any way to any and all acts directly or indirectly relating to the initiation, prosecution, defense, or settlement of the Action, or to the Stipulation.

3.      Pursuant to the Final Judgment and Order of Dismissal, without further action by anyone, and subject to Subsection 4 below, on and after the Final Settlement Date, Lead Counsel, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), assigns, and any person or entity claiming by or through any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Judgment and Order of Dismissal shall have, fully, finally, and forever released, relinquished, settled, and discharged Defendants' Counsel and all Releasees from any and all Claims, whether known Claims or Unknown Claims, that relate in any way to any and all acts directly or indirectly relating to the prosecution, defense, or settlement of the Action, or to the Stipulation.

4.      Notwithstanding paragraphs 1, 2, and 3 above, nothing in the Final Judgment and Order of Dismissal shall bar any action or Claim by the Settling Parties to enforce the terms of the Stipulation or the Final Judgment and Order of Dismissal.

5.      The releases and waivers contained in this Section were separately bargained for and are essential elements of the Stipulation.

# 322464.7