# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————x
                                              :
In re SCOTTISH RE GROUP          :    Master File No. 06-cv-5853 (SAS)
SECURITIES LITIGATION            :
                                              :
———————————————————————————x


NOTICE OF: (1) PENDENCY AND PROPOSED SETTLEMENT OF
CLASS ACTION AND (2) HEARING ON PROPOSED SETTLEMENT

*A Federal Court authorized this Notice.  This is not a solicitation from a lawyer.*

NOTICE OF PENDENCY OF CLASS ACTION:  **Please be advised that your rights may be affected by a class action lawsuit pending in this Court (the "Action") if, during the period from February 17, 2005 through and including February 20, 2007, you purchased or otherwise acquired Scottish Re Group Limited ("Scottish Re") Ordinary Shares, Non-Cumulative Perpetual Preferred Shares and/or Convertible Preferred Shares of Hybrid Capital Units.**

NOTICE OF SETTLEMENT:  **Please also be advised that Lead Plaintiff, on behalf of the Class (as defined below), has reached a proposed Settlement (the "Settlement") for a total of $37.5 million in cash that will resolve all of the claims asserted in the Action against Defendants (as defined below).**

***This Notice explains important rights you may have, including your possible receipt of cash from the Settlement.  Your legal rights will be affected whether or not you act.  Please read this Notice carefully!***

1.        **Statement of Class's Recovery:**  Pursuant to the Settlement described herein, a Settlement Amount consisting of $37.5 million in cash has been deposited in an interest bearing Escrow Account for the benefit of the Class.  Lead Plaintiff's damages expert estimates that there were approximately 48.75 million shares of Scottish Re Ordinary Shares, Non-Cumulative Perpetual Preferred Shares ("Preferred Shares") and Convertible Preferred Shares of Hybrid Capital Units ("HyCU Shares") traded during the Class Period which may have been damaged. (Scottish Re's Ordinary Shares, Preferred Shares, and HyCU Shares are referred to collectively as "Scottish Re Securities.")  As discussed below, claims were asserted under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").  Not all Class Members have a claim under both acts.   Lead Plaintiff's damages expert estimates that the average recovery per damaged share under the Settlement is $0.76 per damaged Ordinary Share for Class Members who only have the Exchange Act claims and $1.01 per damaged Ordinary Share for Class Members who have both the Exchange Act and the Securities Act claims, $0.48 per damaged Preferred Share (Class Members who purchased Preferred Shares have both

the Securities Act and Exchange Act claims); and $0.59 per damaged HyCU Share (Class Members who purchased HyCU Shares only have the Exchange Act claims) before deduction of Court-awarded attorneys' fees and expenses and the costs of administration. A Class Member's actual recovery will be determined in accordance with the Plan of Allocation set forth on pages [____] below, if the Court approves the plan. The Court may modify the proposed Plan of Allocation or adopt a different plan, without further notice to the Class.

2. **Statement of Average Amount of Damages Per Security:** The parties disagree on both liability and damages, and do not agree on the average amount of damages per Scottish Re Security that would be recoverable if plaintiffs were to have prevailed on each claim alleged. The issues on which the parties disagree include (a) the appropriate method for determining the amount by which the Scottish Re Securities were allegedly artificially inflated (if at all) during the Class Period; (b) the amount by which the Scottish Re Securities were allegedly artificially inflated (if at all) during the Class Period; (c) the effect of various market forces influencing the trading price of the Scottish Re Securities at various times during the Class Period; (d) the extent to which external factors, such as general market and industry conditions, influenced the trading price of the Scottish Re Securities at various times during the Class Period; (e) the extent to which the various matters that plaintiffs alleged were materially false or misleading influenced (if at all) the trading price of the Scottish Re Securities at various times during the Class Period; (f) the extent to which the various allegedly adverse material facts that plaintiffs alleged were omitted influenced (if at all) the trading price of the Scottish Re Securities at various times during the Class Period; and (g) whether the statements made or facts allegedly omitted were material or otherwise actionable under the federal securities laws. Defendants deny that they are liable to Lead Plaintiff or the other members of the Class and deny that Lead Plaintiff or the other members of the Class have suffered any damages.

3. **Statement of Attorneys' Fees and Expenses Sought:** Lead Counsel is moving the Court to award attorneys' fees of 15% of the Settlement Amount ($5,625,000), and for reimbursement of expenses incurred in connection with the prosecution of this Action in an amount not to exceed $600,000.00 plus interest on both such amounts at the same rate as earned on the Settlement Amount. The requested fees and expenses would amount to an average of approximately $0.13 per damaged share of the Scottish Re Securities in fees and expenses. Application will also be made for reimbursement to the Lead Plaintiff for an amount not to exceed $10,000.00 for reimbursement of its reasonable costs and expenses directly related to the representation of the Class. Plaintiffs' counsel have expended considerable time and effort in the prosecution of this litigation on a contingent fee basis, and have advanced the expenses of the litigation, in the expectation that if they were successful in obtaining a recovery for the Class they would be paid from such recovery. In this type of litigation, it is customary for counsel to be awarded a percentage of the common fund recovery as their attorneys' fees.

4. **Identification of Attorneys' Representatives:** Lead Plaintiff and the Class are being represented by Bernstein Litowitz Berger & Grossmann LLP, Court-appointed Lead Counsel. Any questions regarding the Settlement should be directed to: Salvatore J. Graziano, Bernstein Litowitz Berger & Grossmann LLP, 1285 Avenue of the Americas, New York, NY 10019, (800) 380-8496, blbg@blbglaw.com.

5. **Reasons for the Settlement:** For Lead Plaintiff, the principal reason for the Settlement is the benefit to be provided to the Class now. This benefit must be considered in light

of all the risks that Lead Plaintiff would face to succeed in proving liability and a larger amount of damages at a trial. Even if Lead Plaintiff was successful at trial, there would be further risks on appeal. The $37.5 million in cash recovered now must be compared to the risks that no recovery, and importantly no larger recovery, might be achieved after a contested trial and likely appeals, possibly years into the future.

For Defendants, who deny all allegations of wrongdoing or liability whatsoever, the principal reason for the Settlement is to eliminate the expense, risks, and uncertain outcome of the litigation.

| YOUR LEGAL RIGHTS AND OPTIONS IN THESE SETTLEMENT: | |
| --- | --- |
| **REMAIN A MEMBER OF THE CLASS** | This is the only way to get a payment. If you wish to obtain a payment as a Class Member, you will need to file a Proof of Claim form (which is included with this Notice) postmarked no later than _____, 2009. |
| **EXCLUDE YOURSELF FROM THE CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION *RECEIVED* NO LATER THAN _____, 2008** | Get no payment. This is the only option that allows you to ever be part of any other lawsuit against any of the Defendants concerning the claims in this case. |
| **OBJECT TO THE SETTLEMENT BY SUBMITTING WRITTEN OBJECTIONS *RECEIVED* NO LATER THAN _____, 2008** | Write to the Court and explain why you do not like the Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of litigation expenses. You cannot object to the Settlement unless you are a Class Member and do not exclude yourself. |
| **GO TO THE HEARING ON _____, 2008 AT _____ __.M., AND FILE A NOTICE OF INTENTION TO APPEAR *RECEIVED* NO LATER THAN _____, 2008** | Ask to speak in Court about the fairness of the Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of litigation expenses. |
| **DO NOTHING** | Get no payment. Remain a Class Member. Give up your rights. |

| WHAT THIS NOTICE CONTAINS |
| --- |

Why Did I Get This Notice?
Page
What Is This Case About? What Has Happened So Far?
Page
How Do I Know If I Am Affected By The Settlement?          Page
What Are The Lead Plaintiff's Reasons For The Settlement?          Page
What Might Happen If There Was No Settlement?
Page

3

How Much Will My Payment Be?
Page
What Rights Am I Giving Up By Agreeing To The Settlement?                    Page
What Payment Are The Attorneys For The Class Seeking?
    How Will The Lawyers And Class Representative Be Paid?
       Page
How Do I Participate In The Settlement?  What Do I Need To Do?
Page
What If I Do Not Want To Be A Part Of The Settlement?  How Do I Exclude Myself?Page
When And Where Will The Court Decide Whether To Approve The Settlement?
    Do I Have To Come To The Hearing?  May I Speak At The Hearing
    If I Don't Like The Settlement?                                    Page
What If I Bought Shares On Someone Else's Behalf?                    Page
Can I See The Court File?  Whom Should I Contact If I Have Questions?
Page

| WHY DID I GET THIS NOTICE? |
| --- |

6.      This Notice is being sent to you pursuant to an Order of the United States District Court for the Southern District of New York (the "Court") because you or someone in your family may have purchased Scottish Re Securities during the period from February 17, 2005 through and including February 20, 2007 (the "Class Period").  The Court has directed us to send you this Notice because, as a potential Class Member, you have a right to know about your options before the Court rules on the proposed settlement of this case.  Additionally, you have the right to understand how a class action lawsuit may generally affect your legal rights.  If the Court approves the Settlement, the claims administrator selected by Lead Plaintiff and approved by the Court will make payments pursuant to the Settlement after any objections and appeals are resolved.

7.      In a class action lawsuit, the Court selects one or more people, known as class representatives, to sue on behalf of all people with similar claims, commonly known as the class or the class members.  In this Action, the Court has appointed the State Teachers Retirement System of Ohio ("Ohio STRS") to serve as "Lead Plaintiff" under a federal law governing lawsuits such as this one, and has approved Lead Plaintiff's selection of Bernstein Litowitz Berger & Grossmann LLP to serve as Lead Counsel in the Action.  A class action is a type of lawsuit in which the claims of a number of individuals are resolved together, thus providing the class members with both consistency and efficiency.  Once the class is certified, the Court must resolve all issues on behalf of all class members, except for any persons who choose to exclude themselves from the class.  (For more information on excluding yourself from the Class, please read "What If I Do Not Want To Be A Part Of The Settlement?  How Do I Exclude Myself?," located below.)

8.      The Court in charge of the case is the United States District Court for the Southern District of New York, and the case is known as *In re Scottish Re Group Securities Litigation*, Master File No. 06-cv-5853 (SAS).  The Judge presiding over this case is the Honorable Shira A. Scheindlin, United States District Judge.  The people who are suing are called plaintiffs, and those who are being sued are called defendants.  In this case, the plaintiff is referred to as the Lead

Plaintiff, and it is suing on its own behalf and on behalf of the Class. The Defendants are Scottish Re; certain of its current and former officers and directors of Scottish Re, namely, Scott Willkomm, Elizabeth Murphy, Dean E. Miller, Michael C. French, Michael Austin, William Caulfeild-Browne, Robert Chmely, Lord Norman Lamont, and Hazel O'Leary (the "Individual Defendants"); underwriters and forward purchasers of Scottish Re Securities sold in public offerings in July and December 2005, namely, Lehman Brothers Inc., Bear, Stearns & Co. Inc., Banc of America Securities LLC, Keefe, Bruyette & Woods, Inc., Oppenheimer & Co. Inc., Advest, Inc., RBC Dain Rauscher Inc., Stifel, Nicolaus & Company, Incorporated, Goldman, Sachs & Co., Wachovia Capital Markets, LLC, A.G. Edwards & Sons, Inc., Fox-Pitt, Kelton Incorporated, Bear Stearns International Limited, and Lehman Brothers OTC Derivatives (the "Underwriter Defendants"); and Scottish Re's auditors during the Class Period, Ernst & Young LLP ("E&Y").

9.     This Notice explains the Action, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them. The purpose of this Notice is to inform you of this case, that it is a class action, how you might be affected, and how to exclude yourself from the Settlement if you wish to do so. It also is being sent to inform you of the terms of the proposed Settlement, and of a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the proposed Settlement (the "Fairness Hearing").

10.     The Fairness Hearing will be held on _____, at _____ __.m., before the Honorable Shira A. Scheindlin, at the United States District Court for the Southern District of New York, located at 500 Pearl Street, Courtroom 15C, New York, New York, to determine, among other things:

(i)     whether the proposed Settlement is fair, reasonable, and adequate and should be approved by the Court;

(ii)    whether the Court should enter the bar orders and permanent injunctions requested in the proposed Settlement;

(iii)   whether the claims against the Defendants should be dismissed with prejudice as set forth in the Stipulation and Agreement of Settlement;

(iv)    whether the proposed Plan of Allocation is fair and reasonable and should be approved by the Court; and

(v)     whether Lead Counsel's request for fees and reimbursement of expenses should be approved by the Court.

11. This Notice does not express any opinion by the Court concerning the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement. If the Court approves the Settlement, payments will be made after any appeals are resolved, and after the completion of all claims processing. Please be patient.

| WHAT IS THIS CASE ABOUT?  WHAT HAS HAPPENED SO FAR? |
| --- |

12. This Action is for alleged violations of the securities laws emanating from Defendants' alleged misrepresentations and omissions about the financial condition of Scottish Re and the reliability of its financial statements and internal controls between February 17, 2005 and February 20, 2007 which allegedly had the effect of artificially inflating the price of Scottish Re Securities. Lead Plaintiff alleged, among other things, that Scottish Re materially misstated its financial

results by carrying an asset, the Deferred Tax Asset ("DTA"), on its balance sheet in an amount that it could not support in violation of Generally Accepted Accounting Principles ("GAAP"), and, that the certifications as to the adequacy of Scottish Re's internal controls, required by the Sarbanes Oxley Act of 2002, were materially false because Scottish Re had material deficiencies in its internal controls.  During the Class Period, Scottish Re had the following two public offerings of securities pursuant to registration statements and prospectuses (the "Scottish Re Offerings"): the July 2005 offering of the Preferred Shares, and the December 2005 offering of Ordinary Shares.  The Amended Complaint alleges that, in addition to other publicly issued statements, the registration statements and prospectuses for each of those offerings also contained materially false and misleading statements because they contained the allegedly false financial statements, including the year-end 2004 financial statements and defendant E&Y's unqualified auditor's report with respect to those statements (which is also alleged to be materially false and misleading), as well as allegedly false representations with respect to Scottish Re's internal controls.

13. On July 31, 2006, Scottish Re issued a press release announcing that the Company expected to report a net loss of approximately $130 million for the second quarter ended June 30, 2006 due largely to "a valuation allowance on deferred tax assets of approximately $112 million."  Deferred tax assets arise when a company will be able to benefit from a tax reduction in the future, against future income.  However, under GAAP, deferred tax assets may only be maintained on a company's balance sheet when it is "more likely than not" that they will be realized.  The Amended Complaint alleges that Scottish Re was relying on certain "tax planning strategies" that it knew or should have known did not support carrying those DTA's on its books because Scottish Re's securitization plans made it impossible for the Company to employ those strategies.[1]

14. At the time of the July 31, 2006 announcement, the Amended Complaint alleges that Scottish Re had been and was continuing to rely on yet another improper tax planning strategy to support a significant part of its DTA.  On February 20, 2007, the last day of the Class Period, Scottish Re announced that it was taking a valuation allowance of $91 million against its DTA due to the failure of this second tax planning strategy.

15. The Amended Complaint alleges that Scottish Re planned on securitizing the business it had acquired on December 31, 2004 to raise Regulation XXX reserves from the time of the earliest due diligence related to the acquisition.  Those securitization plans, Lead Plaintiff alleged, rendered the

---

[1]  Scottish Re, a corporation organized under the laws of the Cayman Islands, is a holding company engaged in the international reinsurance business.  Through its operating subsidiaries, Scottish Re is engaged in the reinsurance of life insurance, annuities and annuity-type products.   As a life reinsurance company operating within the United States, Scottish Re is required by U.S. insurance regulations to maintain certain minimum levels of reserves.  As of January 1, 2000, some of those reserve requirements (known as "Regulation XXX" and "Regulation AXXX" reserves) were increased.  On December 31, 2004, Scottish Re acquired in-force life reinsurance business which substantially increased the Company's reserve requirements.  The Amended Complaint alleges that Scottish Re's plan was to fund those increased reserve requirements through the use of securitizations.  Once an asset is securitized, it is no longer capable of generating net income on the securitizing companies' books because the cash flows from that asset are committed to the debt holders of a separate entity.  In May 2006, Scottish Re completed a $2.1 billion securitization of assets acquired on December 31, 2004 that had Regulation XXX and AXXX reserve requirements through a special purpose entity called Ballantyne Re.

Company's DTA tax planning strategies neither prudent nor feasible (as they must be under GAAP), and, therefore, the Company should have recorded a valuation allowance and recognized material losses related to its DTA by no later than the start of the Class Period, February 17, 2005. The Amended Complaint alleges that Scottish Re's failure to record those losses throughout the Class Period violated GAAP, and caused the Company's financial statements and other disclosures to be materially misstated at the time it conducted two large public offerings of Scottish Re Securities and throughout the Class Period.

16. Following the July 31, 2006 announcement that Scottish Re was taking a valuation allowance against its DTA, beginning on August 2, 2006, a number of lawsuits were filed on behalf of Scottish Re investors.  By Order entered October 13, 2006, the Court appointed Ohio STRS as Lead Plaintiff and approved its selection of Lead Counsel.  Also, by that Order, the Court consolidated all related cases for all purposes under Lead Plaintiff's direction.

17. On December 4, 2006, Lead Plaintiff filed a Consolidated Class Action Complaint (the "First Complaint"), on behalf of a class consisting of all persons and entities who, during the period February 17, 2005 through and including July 31, 2006, purchased or otherwise acquired Scottish Re (i) Ordinary Shares (either on the open market or in the public offering that was completed in December 2005 pursuant to a registration statement and prospectus); (ii) Preferred Shares (either on the open market or in the public offering that was completed in July 2005 pursuant to a registration statement and prospectus); or (iii) HyCU Shares on the open market, and who were damaged by the alleged violations of the securities laws.  The First Complaint asserted two different sets of claims.  The first was a series of strict-liability and negligence-based claims under the Securities Act against the Defendants who allegedly would be statutorily responsible for the statements asserted to have been untrue in the registration statements and prospectuses filed in connection with the Scottish Re Offerings.  The second set of claims consisted of fraud-based claims under the Exchange Act against those Defendants who were alleged to have directly participated in the fraudulent scheme, and allegedly knew about the alleged fraud or were reckless in not discovering it.  The First Complaint alleged claims against: (i) Scottish Re under Sections 11 and 12(a)(2) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder; (ii) some or all of the Individual Defendants under Sections 11 and 15 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder; (iii)  some or all of the Underwriter Defendants under Sections 11 and 12(a)(2) of the Securities Act with respect to one or both of the Offerings; and (v) E&Y under Section 11 of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

18. Defendants moved to dismiss the First Complaint in March 2007.  By Order dated November 1, 2007, the Court denied the motions, except with respect to the claim asserted against E&Y for violation of Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

19. On December 21, 2007, Defendants filed their respective Answers to the First Complaint.

20. On July 11, 2008, Lead ~~Plaintiffs~~Plaintiff filed the Amended Consolidated Class Action Complaint (the "Amended Complaint") which (i) extended the Class Period to add the period from August 1, 2006 through and including February 20, 2007 (the "Extended Class Period") based on allegations of additional misrepresentations and omissions relating to Scottish Re's accounting for its deferred tax assets and internal controls during the Extended Class Period, (ii) re-pleaded the previously dismissed Section 10(b) claim against E&Y; and (iii) added additional factual allegations relating to Lead Plaintiff's previously pleaded claims.

21. On July 18, 2008, E&Y moved to dismiss the re-pled Section 10(b) claim against it, as well as the claim for the Extended Class Period and, on July 23, 2008, Scottish Re and the Individual Defendants and the Underwriter Defendants filed motions to dismiss the claims for the Extended Class Period.

22. Defendants deny all allegations of misconduct contained in the First Complaint and the Amended Complaint and deny having engaged in any wrongdoing whatsoever.

23. At the time the agreements in principle to settle the Action were reached, Lead Counsel had conducted substantial discovery and analysis in this Action, including: (i) a review and analysis of Scottish Re's public disclosures (filed with the Securities and Exchange Commission and otherwise); (ii) an analysis of Scottish Re's financial statements; (iii) a review of documents and information obtained through Lead Counsel's investigation; (iv) a review of millions of pages of documents produced by Defendants, and various non-parties pursuant to document requests; (v) consultations with various experts concerning damages, accounting, and insurance issues; and (vii) extensive research of the applicable law with respect to the claims asserted against the Defendants, and Defendants' potential defenses to those claims.

24. The Settlement proposed in the Stipulation was achieved only after three full-day mediation sessions under the auspices of the Honorable Layn Phillips (ret.), a former Federal judge with significant experience in mediating complicated securities class actions, and follow-up negotiations thereafter.

25. On _____, 2008, the Court preliminarily approved the Settlement, authorized this Notice to be sent to potential Class Members, and scheduled the Fairness Hearing to consider whether to grant final approval to the Settlement.

| HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT? |
| --- |

26. If you are a Member of the Class, you are subject to the Settlement unless you timely request to be excluded.  The Class consists of all persons and entities who purchased or otherwise acquired Scottish Re Ordinary Shares, Preferred Shares and/or HyCU Shares in the Scottish Re Offerings, or on the open market, between February 17, 2005 and February 20, 2007, inclusive, and who, upon disclosure of certain facts alleged in the Amended Complaint, were injured thereby. Excluded from the Class are:  (a) Defendants; (b) Immediate Family Members of the Individual Defendants; (c) the majority-owned subsidiaries and affiliates of Defendants; (d) any person or entity who is or during the Class Period was a partner, executive officer, director, or controlling person of Scottish Re (including any of its subsidiaries or affiliates) or any other Defendant; (e) any entity in which any Defendant has a Controlling Interest provided that any Investment Vehicle shall not be deemed an excluded person or entity by definition); and (f) the legal representatives, heirs, successors and assigns of any such excluded party.  The Class also does not include those Persons who timely request exclusion from the Class pursuant to this Notice (see "What If I Do Not Want To Participate In The Settlement?  How Do I Exclude Myself," below).

**RECEIPT OF THIS NOTICE DOES NOT NECESSARILY MEAN THAT YOU ARE A CLASS MEMBER OR ARE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT.  IF YOU WISH TO PARTICIPATE IN THE SETTLEMENT, YOU ARE**

**REQUIRED TO SUBMIT A CLAIM FORM.  YOU MUST RETURN THE CLAIM FORM POSTMARKED NO LATER THAN _____, __ 2009.**

| |
|---|
| WHAT ARE THE LEAD PLAINTIFF'S REASONS FOR THE SETTLEMENT? |

27. Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants have merit.  Lead Plaintiff and Lead Counsel, however, recognize the expense and length of continued proceedings necessary to pursue their claims through trial and appeals, as well as the difficulties in establishing liability with respect to their allegations based on inflated deferred tax assets and weak internal controls.  There was considerable risk that Lead Plaintiff would not prevail at trial or on appeal.  Additionally, as to defendant Scottish Re, there was a very substantial risk that the Company would not have sufficient assets to satisfy a judgment even if Lead Plaintiff were to prevail at trial and on the appeals that would surely follow.

28. While the Court had sustained Lead Plaintiff's claims against all the defendants named in the First Complaint with respect to violations of the Securities Act, and the claims against Scottish Re and certain of the Individual Defendants for violations of the Exchange Act, it dismissed the claim for violation of Section 10(b) of the Exchange Act against defendant E&Y.     At the time the parties reached agreement in principle to settle, Lead Plaintiff had filed the Amended Complaint, which extended the Class Period to February 20, 2007 with respect to all Defendants and re-pleaded the previously dismissed claim against E&Y.  All of the Defendants had moved to dismiss the claims for the Extended Class Period, and E&Y also moved to dismiss the re-pleaded Section 10(b) claim against it.  The motions were not fully briefed when the agreements to settle were reached, and Lead Plaintiff recognized that there was the chance that the Court would reject its amendment, in which case Lead Plaintiff and the Class would not be able to recover any damages based on the alleged misrepresentations and omissions during the Extended Class Period and the disclosure on February 20, 2007 and the overall claim against E&Y would also have been materially affected.

29. In addition, before entering into the Settlement, Lead Counsel had undertaken substantial discovery, as described above.  Based on this work, Lead Plaintiff recognized that it faced a substantial risk that it might not be able to establish at trial that there were material misrepresentations, or Defendants' alleged "scienter" (i.e., Defendants' knowing or reckless misconduct) as it is required to do with respect to the Exchange Act claims, or even negligence as required for the Securities Act claims.  With respect to whether there had been any material misstatements with respect to the DTA carried on Scottish Re's balance sheet, Scottish Re would have argued (i) that the GAAP provisions setting forth the requirements for carrying the DTA are based management's judgment and belief; (ii) that, contrary to the allegations of the complaint, the valuation allowances taken were not caused by Ballantyne Re or any other securitization strategy, and that the Company had assets other than those that were securitized that were sufficient to support the DTA; (iii) that the losses announced and valuation allowances taken were caused by changed circumstances including liquidity and capital raising concerns and downgrades by rating agencies; and (iv) that the Company was never required to restate its financial statements with respect to the DTA carried.  Defendants would argue that all of these factors, for which they would

be able to provide supporting evidence, demonstrated that the DTA carried on Scottish Re's balance sheet was not materially misstated during the Class Period.  With respect to the allegations of misrepresentations regarding internal controls, Scottish Re would cite to the fact that it had several outside auditing firms review the Company's compliance with Sarbanes Oxley and none of them required the Company to issue a statement that there were material deficiencies in the Company's internal controls.  The same factors that Scottish Re would point to in support of its contention that there were no material misstatements (and Lead Plaintiff recognizes that there is evidence that arguably could be deemed to support that position) also impacts Lead Plaintiff's ability to establish *scienter*, an element of its Section 10(b) claim that is recognized as being particularly difficult to establish.  With respect to the claims against the Underwriter Defendants and E&Y for violations of the Securities Act, while the threshold for liability is lower, i.e., a negligence standard as opposed to knowing or reckless conduct, these defendants have a "due diligence" defense under the statute.  Based on discovery already conducted, it is clear that these defendants would be able to mount a strong defense to the claims against them.  Thus, for example, the Underwriter Defendants could very well have established that they made all the required inquiries and that they were entitled to rely on the representations at issue because they were contained in portions of the registration statements that were "expertised" by Scottish Re's auditors.

   30. In light of the amount of the Settlement, the immediacy of recovery to the Class, and the attendant risks in going forward with the prosecution of the Action, Lead Plaintiff and Lead Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Class.  Lead Plaintiff and Lead Counsel believe that the Settlement provides a substantial benefit now, namely $37,500,000.00 in cash (less the various deductions described in this Notice), as compared to the risk that the claims in the Action would produce a similar, smaller, or no recovery after summary judgment, trial and appeals, possibly years in the future.  Defendants have denied the claims asserted against them in the Action, and deny having engaged in any wrongdoing, violation of law or breach of duty.  The Settlement may not be construed as an admission of Defendants' wrongdoing.  Defendants have agreed to the Settlement solely to eliminate the burden and expense of continued litigation.

### WHAT MIGHT HAPPEN IF THERE WAS NO SETTLEMENT?

   31. If there was no Settlement, and Lead Plaintiff failed to establish any essential legal or factual element of its claims, neither Lead Plaintiff nor the other members of the Class would recover anything from Defendants.  Also, if Defendants were successful in proving any of their defenses, the Class likely would recover substantially less than the amount provided in the Settlement, or nothing at all.

### HOW MUCH WILL MY PAYMENT BE?

### THE PROPOSED PLAN OF ALLOCATION:  GENERAL PROVISIONS

   32.   Defendants have collectively agreed to pay $37,500,000 in cash.

10

33.   After approval of the Settlement by the Court, and upon satisfaction of the other conditions to the Settlement, the Net Settlement Fund will be distributed to Authorized Claimants in accordance with the Plan of Allocation.  (If the Court approves the Settlement as to less than all of the Defendants, and Lead Plaintiff determines that it is in the Class's best interests to conclude the Settlement with those Defendants as to whom the Settlement is approved, the Net Settlement Fund will be reduced by the amount contributed by the Defendant as to whom the Settlement was not approved less the proportionate share of any Taxes and Notice and Administration Expenses incurred or paid from the Escrow Account attributable to that amount.)  If any funds remain in the Net Settlement Fund because of uncashed distributions or other reasons, then, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants cash their distribution checks, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of such funds shall be redistributed to Class Members who have cashed their initial distributions and who would receive at least $10.00 from such redistribution based on their Recognized Claim, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such redistribution, if in the opinion of Lead Counsel such redistribution would be cost-effective.  If any funds shall remain in the Net Settlement Fund after six (6) months after such redistribution, or if redistribution is not made because it was deemed not cost effective, then such balance shall be contributed to non-sectarian, not-for-profit 501(c)(3) organization(s) designated by Lead Counsel after notice to the Court and subject to direction, if any, by the Court.

34.   The Settlement Fund will be distributed as follows:

(i)   First, to pay all federal, state, and local taxes on any income earned by the Settlement Fund and to pay the reasonable costs incurred in connection with determining the amount of, and paying, taxes owed by the Settlement Fund (including reasonable expenses of tax attorneys and accountants);

(ii)   To pay costs and expenses in connection with providing Notice to Class Members and administering the Settlement on behalf of Class Members;

(iii)  To reimburse plaintiffs' counsel for the costs and expenses they incurred in commencing and prosecuting the Action, with interest on such money, if and to the extent allowed by the Court;

(iv)  To pay plaintiffs' counsel's attorneys' fees, with interest on such amount, to the extent allowed by the Court; and

(v)   To compensate Authorized Claimants with the balance of the Net Settlement Fund in accordance with the Plan of Allocation, subject to an Order of the Court approving the Settlement and the Plan of Allocation (or such other allocation plan as the Court may approve), and subject to such Order's becoming Final (meaning that the time for appeal or appellate review of the Order granting final approval has expired, or, if the Order is appealed, that the appeal is either decided without causing a material change in the Order or is upheld on appeal and no longer subject to appellate review by further appeal or writ of certiorari).

11

35.   The Net Settlement Fund will not be distributed until the Court has approved a Plan of Allocation, and the time for any petition for rehearing, appeal, or review, whether by certiorari or otherwise, has expired.

36.   Defendants are not entitled to get back any portion of the Settlement Fund once the Court's Order approving the Settlement becomes Final.  Defendants have no liability, obligation, or responsibility for the administration of the Settlement or disbursement of the Net Settlement Fund or the Plan of Allocation.

37.   Approval of the Settlement is independent from approval of the Plan of Allocation.  Any determination as to the Plan of Allocation will not affect the Settlement, if approved.

38.   Only those Class Members who purchased or acquired Scottish Re Ordinary Shares, Preferred Shares and/or HyCU Shares during the Class Period **AND WERE DAMAGED**, as set forth below, will be eligible to share in the distribution of the Net Settlement Fund. Each person wishing to participate in the distribution must timely submit a valid Proof of Claim form establishing  membership in the Class, and including all required documentation, postmarked no later than _____, 2009, to the address set forth in the Proof of Claim form that accompanies this Notice.  Unless the Court otherwise orders, any Class Member who fails to submit a Proof of Claim form postmarked no later than _____, 2009 shall be forever barred from receiving payments pursuant to the Settlement set forth in the Stipulation but will in all other respects remain a Class Member and be subject to the provisions of the Stipulation, including the terms of any Judgment entered and releases given.  This means that each Class Member releases the Plaintiffs' Released Claims against Defendants and is enjoined and prohibited from filing, prosecuting, or pursuing any of the Plaintiffs' Released Claims (as defined in ¶ ___– below) against any of the Defendants regardless of whether or not such Class Member submits a Proof of Claim form.

39.   The Court has reserved continuing jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Class Member.

40.   The Court has also reserved the right to modify the Plan of Allocation without further notice to Class Members.  Any Orders regarding a modification of the Plan of Allocation will be posted on Lead Counsel's website, www.blbglaw.com, and the settlement website, www._____.com.

41.   Payment pursuant to the Plan of Allocation approved by the Court shall be conclusive against all Authorized Claimants.  No person shall have any claim against Lead Plaintiff, Lead Counsel, or the Claims Administrator or other agent designated by Lead Counsel arising from distributions made substantially in accordance with the Stipulation, the Plan of Allocation, or further orders of the Court.  Lead Plaintiff, Defendants, their respective counsel, and all other Releasees shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation, or the determination, administration, calculation, or payment of any Proof of Claim or nonperformance of the Claims Administrator, the payment or withholding of Taxes owed by the Settlement Fund, or any losses incurred in connection therewith.

42.   A "Recognized Loss Amount" will be calculated for each purchase or acquisition of Scottish Re Ordinary Shares, Preferred Shares and/or HyCU Shares that is listed in the Proof of Claim form, and for which adequate documentation is provided.   The calculation of the Recognized Loss Amount will depend upon several factors, including (i) when the Scottish Re Securities were purchased or acquired and (ii) whether they were held until the conclusion of the Class Period or sold during the Class Period, and if so, when they were sold.   The total of a Claimant's Recognized Loss Amounts shall be the Claimant's Recognized Claim.

43.   **Information Required on the Proof of Claim Form**:   Each Proof of Claim form must state and provide sufficient documentation for each Authorized Claimant's position in Scottish Re Ordinary Shares, Preferred Shares and/or HyCU Shares as of the close of trading on February 16, 2005, the day before the first day of the Class Period, and the closing position in Scottish Re Ordinary Shares, Preferred Shares and/or HyCU Shares as of the close of trading on February 20, 2007, the last day of the Class Period.   Each Proof of Claim form also must list and provide sufficient documentation for all transactions in those securities as set forth in the Proof of Claim.

44.   The objective of the Plan of Allocation is to equitably distribute the Settlement proceeds to those Class Members who suffered economic losses as a result of the alleged fraud and negligence, as opposed to losses caused by market and industry factors or Company specific factors not related to the alleged fraud or negligence.   The Plan of Allocation reflects Lead Plaintiff's damages expert's analysis undertaken to that end, including a review of publicly available information regarding Scottish Re and statistical comparisons of the price movements of the Scottish Re Securities with the price performance of relevant market and industry indices during the Class Period (February 17, 2005 – February 20, 2007).   Lead Plaintiff and Lead Plaintiff's Counsel, in consultation with Lead Plaintiff's damages expert, have estimated the artificial inflation in Scottish Re Ordinary Shares, Preferred Shares, and HyCU Shares during the Class Period, as reflected in Tables A, B and C, respectively, which fairly and reasonably reflects the relevant risks to recovery from Defendants.

45.   The Plan of Allocation covers the Scottish Re Securities, that is: (i) Ordinary Shares; (ii) Preferred Shares; and (iii) HyCU Shares.

46.   The Plan of Allocation generally measures the amount of loss that a Class Member can claim under the Settlement for the purpose of making *pro rata* allocations of the cash in the Net Settlement Fund to Class Members who submit acceptable Proofs of Claim.   In this case, the Net

Settlement Fund is comprised of two parts: the Section 10(b) Fund and the Section 11 Fund.[2] The Plan of Allocation is not a formal damage analysis. Recognized Loss Amounts are based on the level of alleged artificial inflation in the price of Scottish Re Securities at the time of purchase or acquisition and at the time of sale or other disposal. In this case, Lead Plaintiff alleges that Defendants made false statements and omitted material facts between February 17, 2005, through and including February 20, 2007, regarding, among other things, the Company's business and operations, which had the effect of artificially inflating the prices of the Scottish Re Securities. Defendants deny all such allegations. The following proposed Plan of Allocation reflects plaintiffs' allegations that the price of Scottish Re Securities was artificially inflated during the Class Period due to misrepresentations and/or omissions regarding Scottish Re's business and operations.

47. In order to have recoverable damages, disclosure of the alleged misrepresentations must be the cause of the decline in the price of the security. Corrective disclosures that removed the artificial inflation from the price of Scottish Re Securities occurred on July 31, 2006, and after market close on February 20, 2007 (the "Corrective Disclosure Dates").[3] Accordingly, in order to have been damaged by the alleged fraud or negligence.

- a Scottish Re Security purchased or otherwise acquired during the Class Period from February 17, 2005 through July 30, 2006 must be held at least until July 31, 2006, the day of the first corrective disclosure;

- a Scottish Re Security purchased or otherwise acquired from July 31, 2006 through February 20, 2007 must be held at least until February 21, 2007, the day of the price impact of the second corrective disclosure (which occurred after market close on February 20, 2007).

[2] The Section 11 Fund is comprised of $3.5 million from the Settlement Amount plus the interest accrued thereon less the proportionate share of the amounts deducted from the Settlement Fund to pay Notice and Administration Expenses, Taxes, and Court-awarded attorneys' fees and expenses. Not all members of the Class have a Section 11 claim. In order to be able to recover for this violation, a person had to have purchased securities that were issued pursuant to the registration statements for the Scottish Re Offerings. All Class Members who purchased Preferred Shares during the Class Period have this claim, as the only Preferred Shares in the market are those that were offered pursuant to the registration statement for the July 2005 Offering. With respect to the Ordinary Shares, however, since the December Offering was a secondary offering of Ordinary Shares (i.e, there were Ordinary shares trading in the market that were not issued pursuant to the registration statement for the December 2005 Offering), Claimants will be required to submit documentation to establish that the Ordinary Shares he, she or it purchased were issued pursuant to that registration statement. To do so, Claimants will be required to submit documentation establishing that the Ordinary Shares were purchased in the offering and not in the aftermarket.

[3] With respect to the Scottish Re Ordinary Shares, artificial inflation was measured as the drop in the price of the shares, net of changes in market and industry indices, from July 31 through August 7, 2006, and from February 21 through February 23, 2007. With respect to the Scottish Re Preferred Shares, artificial inflation was measured as the drop in the price of the shares, net of changes in market and industry indices, from July 31 through August 7, 2006, and on February 21, 2007. With respect to the Scottish Re HyCU Shares, artificial inflation was measured as the drop in the price of the shares, net of changes in market and industry indices, from July 31 through August 7, 2006.

48.   If you did not hold Scottish Re Securities to the dates indicated, the Recognized Loss Amount for those Scottish Re Securities is $0.   The Recognized Loss Amount for those transactions will be calculated as zero because it has been determined that the artificial inflation between each disclosure and arising from the circumstances underlying the allegations of Lead Plaintiff's Amended Complaint was constant, and any loss suffered is not compensable under the federal securities laws.

49.   To the extent a Claimant had a gain from his, her or its overall transactions in the Scottish Re Securities during the Class Period, the value of the Recognized Claim will be zero.   Such Claimants will in any event be bound by the Settlement.   You may wish to consider this when deciding whether to opt out.

**SPECIFIC RECOGNIZED LOSS AMOUNTS**

50.   **Ordinary Shares:**

(a) For Ordinary Shares purchased or acquired between February 17, 2005 and February 20, 2007, inclusive, and held as of the close of business on February 20, 2007, the Recognized Loss Amount is the lesser of:

    (i)    the purchase price *minus* the 90-day lookback price on the date of sale as set forth in Table A attached hereto (or the 90-day lookback price on May 21, 2007 if the security was not sold prior to May 21, 2007); or

    (ii)   the amount of artificial inflation per Ordinary Share on the date of purchase or acquisition as set forth in Table A (however, if the Ordinary Shares were sold on February 21 or 22, 2007, the amount of artificial inflation per Ordinary Share on the date of purchase or acquisition as set forth in Table A *plus* the amount of offset per Ordinary Share on the date of sale as set forth in Table A).

(b) For Ordinary Shares purchased or acquired between February 17, 2005 and July 30, 2006, inclusive, and sold at a loss between July 31, 2006, and February 20, 2007, inclusive, the Recognized Loss Amount is the lesser of:

    (i)    the purchase price *minus* sales price; or

    (ii)   the amount of artificial inflation per Ordinary Share on the date of purchase or acquisition as set forth in Table A *minus* the amount of artificial inflation per Ordinary Share on the date of sale as set forth in Table A (however, if the Ordinary Shares were sold on July 31 through August 4, 2007, the amount of artificial inflation per Ordinary Share on the date of purchase or acquisition as set forth in Table A *minus* the amount of artificial inflation per Ordinary Share on the date of sale as set

15

forth in Table A *plus* the amount of offset per Ordinary Share on the date of sale as set forth in Table A).

An Authorized Claimant's Recognized Loss Amount shall be the basis for his, her or its allocated *pro rata* portion of the Section 10(b) Fund.

51.   For Ordinary Shares purchased or acquired pursuant to the registration statement filed in connection with the Company's secondary offering on or about December 23, 2005 (Claimants must show that they purchased or acquired Scottish Re Ordinary Shares pursuant to that registration statement), the Recognized Loss Amount shall be as calculated as set forth in the preceding paragraphs.  In addition to his, her or its allocated *pro rata* portion of the Section 10(b) Fund, an Authorized Claimant's Recognized Loss Amount for those Ordinary Shares only will be allocated his, her or its *pro rata* portion of the Section 11 Fund to reflect the fact that these Ordinary Shares were issued pursuant to and traceable to a registration statement.

52.   **Preferred Shares:**

(a) For Preferred Shares purchased or acquired between their initial offering (beginning on or about June 28, 2005) and February 20, 2007, inclusive, and held as of the close of business on February 20, 2007, the Recognized Loss Amount is the lesser of:

(i)      the purchase price *minus* the 90-day lookback price on the date of sale as set forth in Table B attached hereto (or the 90-day lookback price on May 21, 2007 if the security was not sold prior to May 21, 2007); or

(ii)     the amount of artificial inflation per Preferred Share on the date of purchase or acquisition as set forth in Table B.

(b) For Preferred Shares purchased or acquired between their initial offering (beginning on or about June 28, 2005) and July 30, 2006, inclusive, and sold at a loss between July 31, 2006, and February 20, 2007, inclusive, the Recognized Loss Amount is the lesser of:

(i)      the purchase price *minus* sales price; or

(ii)     the amount of artificial inflation per Preferred Share on the date of purchase or acquisition as set forth in Table B *minus* the amount of artificial inflation per Preferred Share on the date of sale as set forth in Table B (however, if the Preferred Shares were sold on July 31 through August 4, 2006, the amount of artificial inflation per Preferred Share on the date of purchase or acquisition as set forth in Table B *minus* the amount of artificial inflation per Preferred Share on the date of sale as set forth in Table B *plus* the amount of offset per Preferred Share on the date of sale as set forth in Table B).

An Authorized Claimant's Recognized Loss Amount shall be the basis for his, her or its allocated *pro rata* portion of the Section 10(b) Fund.

16

53.   In addition to his, her or its allocated *pro rata* portion of the Section 10(b) Fund, an Authorized Claimant's Recognized Loss Amount for his, her or its Preferred Shares will be allocated his, her or its *pro rata* portion of the Section 11 Fund to reflect the fact that these Preferred Shares were issued pursuant to and traceable to a registration statement.

54.   **HyCU Shares:**  On or about February 15, 2007, nearly all HyCU Shares were exchanged for Ordinary Shares.

(a) For HyCU Shares purchased or acquired between February 17, 2005 and July 30, 2006, inclusive, and sold at a loss between July 31, 2006, and February 14, 2007, inclusive, or held as of the conversion on February 15, 2007, the Recognized Loss Amount is the lesser of:

(i)  the purchase price *minus* sales price (or conversion price of $4.41, the closing price of Scottish Re Ordinary Shares on February 15, 2007, if held as of the conversion on February 15, 2007); or

(ii) the amount of artificial inflation per HyCU Share on the date of purchase or acquisition as set forth in Table C attached hereto *minus* the amount of artificial inflation per HyCU Share on the date of sale as set forth in Table C (however, if the HyCU Shares were sold on July 31 through August 4, 2006, the amount of artificial inflation per HyCU Share on the date of purchase or acquisition as set forth in Table C *plus* the amount of offset per HyCU Share on the date of sale as set forth in Table C).

(b) For HyCU Shares held as of the close of business on February 14, 2007, as (nearly all) such HyCU Shares were converted to Ordinary Shares on or about February 15, 2007, the Recognized Loss Amount shall be calculated for the Ordinary Shares received pursuant to the conversion as follows, with the acquisition price considered as $4.41, the closing price of the Ordinary Shares on February 15, 2007.

(c) For Ordinary Shares acquired on or about February 15, 2007, pursuant to the conversion, and held as of the close of business on February 20, 2007, the Recognized Loss Amount is the lesser of:

(i)     the acquisition price of $4.41 *minus* the 90-day lookback price on the date of sale as set forth in Table A (or the 90-day lookback price on May 21, 2007, if the security was not sold prior to May 21, 2007); or

(ii)    the amount of artificial inflation per Ordinary Share on the date of acquisition as set forth in Table A (however,    if the Ordinary Shares were sold on February 21 or 22, 2007, the amount of artificial inflation per Ordinary Share on the date of acquisition as set forth in Table A *plus* the amount of offset per Ordinary Share on the date of sale as set forth in Table A).

An Authorized Claimant's Recognized Loss Amount shall be the basis for his, her or its allocated *pro rata* portion of the Section 10(b) Fund.

17

55.   If all of the Class Members submit Proof of Claim forms covering all damaged shares, each Class Member will receive approximately 9.9% before deduction of estimated fees and expenses (or 8.2% after deduction of all estimated fees and expenses) of his, her or its Recognized Loss with respect to his, her or its claims for violations of Section 10(b) of the Exchange Act; and 5.5% before deduction of estimated fees and expenses (or 4.5% after deduction of all estimated fees and expenses) of his, her or its Recognized Loss with respect to his, her or its claims for violations of Section 11 of the Securities Act.   These percentage recovery estimates are subject to final Court award of fees and expenses as well as the number of valid claims submitted.

## ADDITIONAL PROVISIONS

56.   55.  The Net Settlement Fund will be allocated among all eligible Class Members.

57.   56.  Each Authorized Claimant shall recover his, her, or its Recognized Claim.  If the sum total of Recognized Claims of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, however, each such Authorized Claimant shall be allocated *pro rata* shares of the Net Settlement Fund by type of fund (Section 10(b) Fund or Section 11 Fund) based on his, her or its Recognized Claim as compared to the total Recognized Claims of all Authorized Claimants.  Each Authorized Claimant shall be paid an amount determined by multiplying the total in the Net Settlement Fund by type of fund (Section 10(b) Fund or Section 11 Fund) by a fraction the numerator of which shall be his, her or its Recognized Claim and denominator of which shall be the Total Recognized Claims of all Authorized Claimants.  This computation weighs each Class Member's claim against every other Class Member's claim.  Each Authorized Claimant will receive *pro rata* shares of the Net Settlement Fund by type of fund (Section 10(b) Fund or Section 11 Fund) based on his, her or its Recognized Claim.  If the prorated payment calculates to less than $10, then such payment shall be equal to $10.

58.   57.  If the Net Settlement Fund exceeds the sum total amount of the Recognized Claims of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the excess amount in the Net Settlement Fund shall be distributed *pro rata* to all Authorized Claimants entitled to receive payment.

59.   58.  The amount of a Class Member's Recognized Claim as computed above is not intended to be an estimate of what a Class Member might have been able to recover at trial, and it is not an estimate of the amount that will be paid pursuant to this Settlement.  Instead, this computation is only a method to weigh Class Members' claims against one another.  Each Authorized Claimant will receive *pro rata* shares of the Net Settlement Fund by type of fund (Section 10(b) Fund or Section 11 Fund) based on his, her or its Recognized Claim.

60.   59.  If a Class Member has more than one purchase/acquisition or sale of Scottish Re Securities, all purchases/acquisitions and sales of each type of security shall be matched on a First-In-First-Out ("FIFO") basis by type, Class Period sales will be matched first against any Scottish Re Securities held at the beginning of the Class Period, and then against

purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period.  Purchases, acquisitions and sales of Scottish Re Securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.  The receipt or grant by gift, devise or operation of law of Scottish Re Securities during the Class Period shall not be deemed a purchase, acquisition or sale of these Scottish Re Securities for the calculation of an Authorized Claimant's Recognized Claim nor shall it be deemed an assignment of any claim relating to the purchase/acquisition of such Scottish Re Securities unless specifically provided in the instrument of gift or assignment.

61.   60. The date of covering a "short sale" is deemed to be the date of purchase or acquisition of Scottish Re Securities.  The date of a "short sale" is deemed to be the date of sale of Scottish Re Securities.   In accordance with the Plan of Allocation, however, the Recognized Loss Amount on "short sales" is zero.

62.   61. To the extent a Claimant had a market gain from his, her or its overall transactions in the Scottish Re Securities during the Class Period, the value of the Recognized Claim will be zero.  Such Claimants will in any event be bound by the Settlement.  To the extent a Claimant suffered an overall market loss on his, her or its overall transactions in the Scottish Re Securities during the Class Period, but that market loss was less than the Recognized Claim calculated above, then the Recognized Claim shall be limited to the amount of the actual market loss.

63.   62. For purposes of determining whether a Claimant had a gain from his, her or its overall transactions in Scottish Re Securities during the Class Period or suffered a loss, the Claims Administrator shall: (i) total the amount the Claimant paid for all Scottish Re Securities purchased and/or acquired during the Class Period (the "Total Purchase Amount"); (ii) match any sales of Scottish Re Securities during the Class Period first against the Claimant's opening position in the Scottish Re Securities (the proceeds of those sales will not be considered for purposes of calculating gains or losses); (iii) total the amount received for sales of the remaining Scottish Re Securities during the Class Period (the "Sales Proceeds"), and (iv) ascribe holding prices for Scottish Re Securities purchased and/or acquired during the Class Period and still held at the end of the Class Period, with such holding prices being $4.25 per Ordinary Share and $22.09 per Preferred Share (the HyCU Shares were converted to Ordinary Shares prior to the end of the Class Period) (the "Holding Value").   The difference between (x) the Total Purchase Amount ((i) above) and (y) the sum of the Sales Proceeds ((iii) above) and the Holding Value ((iv) above) will be deemed a Claimant's gain or loss on his, her or its overall transactions in the Scottish Re Securities during the Class Period.

64.   63. The Plan of Allocation set forth herein is the Plan that is being proposed by Lead Plaintiff and Lead Counsel to the Court for approval.  The Court may approve this plan as proposed or it may modify the plan or approve a different plan of allocation without further notice to the Class.

19

| WHAT RIGHTS AM I GIVING UP BY AGREEING TO THE SETTLEMENT? |
|---|

65. 64. If the Settlement is approved, the Court will enter a judgment (the "Judgment").  The Judgment will dismiss with prejudice the claims against the Defendants and will provide that Lead Plaintiff and all other Class Members shall be deemed to have – and by operation of the Judgment shall have – fully, finally, and forever released, waived, discharged, and dismissed any and all Plaintiffs' Released Claims, including "Unknown Claims" (as defined in the Stipulation), against the Releasees (as defined in ¶66__ below) and any claims or potential claims that were or could be asserted in connection with the Action that relate to the Plaintiffs' Released Claims.  If the Court approves the Settlement as to less than all of the Defendants, and Lead Plaintiff determines that it is in the Class's best interests to conclude the Settlement with those Defendants as to whom the fettlement in approved, the Judgment described in this paragraph will apply only to such Defendants.

66. 65. "Plaintiffs' Released Claims" means each and every Claim or Unknown Claim that Lead Plaintiff, or any other Class Member (*i*) asserted against any of the Releasees in the Action (including all Claims asserted in the First Complaint or the Amended Complaint) and (*ii*) could have asserted or could assert against any of the Releasees, whether arising under any federal, state, or foreign statutory or common-law rule, in any court, tribunal, agency, or other forum, that arises out of or relates to the conduct alleged in the First Complaint or the Amended Complaint and to the purchase, sale, other disposition of, or decision to hold, or any other Investment Decision concerning any securities of Scottish Re during the Class Period by any person or entity during the Class Period.

67. 66. The term "Releasee," which is fully defined in the Stipulation, includes, among other persons and entities, Scottish Re, the Underwriter Defendants and E&Y, and their respective past and present directors, executive committee members, officers, employees, members, partners, principals, agents, and insurers, and the Individual Defendants and their respective Immediate Family Members.

68. 67. The Judgment also will provide that Defendants shall be deemed to have – and by operation of the Judgment shall have – fully, finally, and forever released, waived, and discharged all Claims, whether known or unknown (including Unknown Claims), and whether arising under federal, state, or any other law, that have been or could have been asserted in the Action or in any court or forum, by Defendants against Lead Plaintiff, Lead Counsel, plaintiffs' counsel, and/or any of their agents, if such Claims arise out of or relate in any way to the institution, maintenance, or settlement of the Action, except Claims relating to the enforcement of the Settlement.

69. 68. Defendants have asked the Court to enter "bar orders" barring any person or entity from suing the Releasees – and barring those Releasees from suing any other person or entity – for any injury that relates to a Plaintiffs' Released Claim or arises from the barred person's or entity's alleged liability in this Action or payment in this Action to the Class or any Class Member.  Such a bar order would apply if, for example, the Court were to approve the Settlement as to less than all the Defendants, and Lead Plaintiff determines that it is in the Class's best interests to conclude the Settlement with those Defendants as to whom the Settlement is approved, a defendant as to whom the Settlement was not approved (a "nonsettling defendant") wanted to sue the Releasees of a

20

Defendant as to whom the Settlement was approved for any money that the nonsettling defendant later had to pay to the Class.  The bar order would prevent the nonsettling defendant from filing such a claim.  In such a situation, the Class Members have agreed to reduce any judgment they might obtain against that nonsettling defendant by the greater of (*i*) the Releasees' contribution to the approved Settlement or (ii) the Releasees' percentage of responsibility for common damages allegedly caused jointly by the Releasees and the nonsettling defendant.

> **WHAT PAYMENT ARE THE ATTORNEYS FOR THE CLASS SEEKING?**
> **HOW WILL THE LAWYERS AND THE CLASS REPRESENTATIVE BE PAID?**

70. 69. Plaintiffs' counsel have not received any payment for their services in pursuing claims against Defendants on behalf of the Class, nor have they been reimbursed for their out-of-pocket expenses.  Before final approval of the Settlement, Lead Counsel intends to apply to the Court for an award of attorneys' fees from the Settlement Fund in the amount of 15% of the Settlement Fund Amount ($5,625,000) together with interest thereon at the same rate as earned by the Escrow Account.  At the same time, Lead Counsel also intends to apply for the reimbursement of litigation expenses not to exceed $600,000.00 with interest thereon at the same rate as earned by the Escrow Account.  The Court will determine the amount of the award.

71. Lead Counsel are also moving the Court to award a payment of up to $10,000 to Lead Plaintiff, for reimbursement of its reasonable costs and expenses directly related to the representation of the Class

> **HOW DO I PARTICIPATE IN THE SETTLEMENT?  WHAT DO I NEED TO DO?**

72. 70. If you are a person or entity that purchased or otherwise acquired Scottish Re Ordinary Shares, Preferred Shares and/or HyCU Shares in the Scottish Re Offerings, or on the open market, between February 17, 2005 and February 20, 2007, inclusive, and you are not excluded by the definition of the Class and you do not elect to exclude yourself from the Class, then you are a Class Member, and you will be bound by the proposed Settlement if the Court approves it, and by any judgment or determination of the Court affecting the Class.  If you are a Class Member, you must submit a Proof of Claim form and supporting documentation to establish your entitlement to share in the Settlement.  A Proof of Claim form is included with this Notice, or you may download copies of the Proof of Claim form from Lead Counsel's website, www.blbglaw.com, or the website maintained by the Claims Administrator for this Settlement, www._____.com.  You may also request a Proof of Claim form by calling toll-free (800) ___-____.  Please retain all records of your ownership of, or transactions in, Scottish Re Securities, as they may be needed to document your claim.

73. 71. Those who exclude themselves from the Class, and those who do not submit timely and valid Proof of Claim forms with adequate supporting documentation, will not be entitled to share in the Settlement.

74. 72. As a Class Member, you are represented by Lead Plaintiff and Lead Counsel, unless you enter an appearance through counsel of your own choice at your own expense.  You are not required to retain your own counsel, but if you choose to do so, such counsel must file a notice of

appearance on your behalf and must serve copies of his or her notice of appearance so that it is received no later than _____ on the attorneys listed in the section entitled "When and Where Will the Court Decide Whether to Approve the Settlement," below.

75. ~~73.~~ If you do not wish to remain a Class Member, you may exclude yourself from the Class by following the instructions in the section entitled, "What If I Do Not Want To Be A Part Of The Settlement?  How Do I Exclude Myself," below.

76. ~~74.~~ If you wish to object to the Settlement, or any of its terms, or to the Plan of Allocation or Lead Counsel's request for an award of attorneys' fees and reimbursement of expenses, and if you do not exclude yourself from the Class, you may present your objections by following the instructions in the section entitled "When and Where Will the Court Decide Whether to Approve the Settlement," below.

> ## WHAT IF I DO NOT WANT TO BE A PART OF THE SETTLEMENT?
> ## HOW DO I EXCLUDE MYSELF?

77. ~~75.~~ Each Class Member will be bound by all determinations and judgments in this lawsuit, including those concerning the Settlement, whether favorable or unfavorable, unless such person or entity mails, by first-class mail (or its equivalent outside the U.S.), or otherwise delivers a written Request for Exclusion from the Class, addressed to *In re Scottish Re Group Securities Litigation-* EXCLUSIONS, - c/o [insert claims administrator's address].  The exclusion request must be *received* no later than _____.  You will not be able to exclude yourself from the Class after that date.  Each Request for Exclusion must (i) state the name and address of the person or entity requesting exclusion; (ii) state that such person or entity "requests exclusion from the Class in *In re Scottish Re Group Securities Litigation*, No. 06-cv-5853 (SAS)"; (iii) be signed by the person or entity requesting exclusion; (iv) provide a telephone number for that person or entity; and (v) provide the date(s), price(s), and number(s) of shares of all purchases and sales of Scottish Re Securities during the Class Period by security.  Requests for Exclusion will not be valid if they are not received within the time stated above, unless the Court otherwise determines.

78. ~~76.~~ If you do not want to be part of the Class, you must follow these instructions for exclusion even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any Plaintiffs' Released Claims.

79. ~~77.~~ If a person or entity requests to be excluded from the Class, that person or entity will not receive any benefit provided for in the Settlement.

80. ~~78.~~ Defendants may terminate the Settlement, if requests for exclusion are received from potential Class Members whose allegedly damaged shares of Scottish Re Securities, in the aggregate, exceed an amount of the damaged Scottish Re Securities eligible to participate in the Settlement that was agreed to by Lead Plaintiff and Defendants.

> ## WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?
> ## DO I HAVE TO COME TO THE HEARING?
> ## CAN I OBJECT TO THE SETTLEMENT?

22

> ### MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT?

81. 79. **If you do not wish to object to the proposed Settlement, you do not need to attend the Fairness Hearing.  You may participate in the Settlement without attending the Hearing.**

82. 80. The Fairness Hearing will be held on _____, at _____ __.m., before the Honorable Shira A. Scheindlin, United States District Court for the Southern District of New York, 500 Pearl Street, Courtroom 15C, New York, New York.  The Court reserves the right to approve the Settlement or the Plan of Allocation at or after the Fairness Hearing without further notice to the members of the Class.

83. 81. Any Class Member who does not request exclusion received no later than _____ may object to the Settlement, the Plan of Allocation, or Lead Counsel's request for an award of attorneys' fees and reimbursement of litigation expenses.  Objections or oppositions must be in writing.  You must file any written objection or opposition, together with copies of all other papers (including proof of all purchases of Scottish Re Securities during the Class Period) and briefs, with the Clerk's Office at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007-1312, on or before _____.  You also must serve the papers on the following attorneys so that the papers are *received* on or before _____:

| **Lead Counsel for the Class** | **Counsel for Scottish Re and the Individual Defendants Other than Scott Willkomm** | **Counsel for the Underwriter Defendants** |
|---|---|---|
| BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP<br>Salvatore J. Graziano, Esq.<br>1285 Avenue of the Americas<br>New York, NY 10019 | DEWEY & LEBOEUF LLP<br>Lyle Roberts, Esq.<br>1101 New York Avenue, N.W.<br>Washintgon, D.C. 2005-4213 | LATHAM & WATKINS LLP<br>Jeff G. Hammel, Esq.<br>885 third Avenue<br>New York, NY 10022 |
| | **Counsel for Scott Willkomm** | **Counsel for Defendant E&Y** |
| | DAVIS POLK & WARDWELL<br>Dennis E. Glazer, Esq.<br>450 Lexington Avenue<br>New York, NY 10017 | HUGHES HUBBARD & REED LLP<br>William Maguire, Esq.<br>One Battery Park Plaza<br>New York, NY 10004 |

84. 82. The filing must demonstrate your membership in the Class, including the number of Ordinary Shares, Preferred Shares and/or HyCU Shares purchased or otherwise acquired during the Class Period and price(s) paid.  You may not object to the Settlement or any aspect of it if you excluded yourself from the Class.

85. 83. You may file a written objection without having to appear at the Fairness Hearing.  You may not appear at the Fairness Hearing to present your objection, however, unless you first filed and served a written objection in accordance with the procedures described above, unless the Court orders otherwise.

86. 84. If you wish to be heard orally at the hearing in opposition to the approval of the Settlement, the Plan of Allocation, or Lead Counsel's request for an award of attorneys' fees and

23

reimbursement of expenses, and if you have filed and served a timely written objection as described above, you also must notify the above counsel on or before _____ concerning your intention to appear.  Persons who intend to object and desire to present evidence at the Fairness Hearing must include in their written objections the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing.

87. 85. You are not required to hire an attorney to represent you in making written objections or in appearing at the Fairness Hearing.  If you decide to hire an attorney, at your own expense, however, he or she must file a notice of appearance with the Court and serve it on all counsel listed in paragraph —81 above so that the notice is *received* by them on or before _____.

88. 86. The Fairness Hearing may be adjourned by the Court without further written notice to the Class.  If you intend to attend the Fairness Hearing, you should confirm the date and time with Lead Counsel.

**Unless the Court orders otherwise, any Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the Plan of Allocation, or Lead Counsel's request for an award of attorneys' fees and reimbursement of expenses. Class Members do not need to appear at the hearing or take any other action to indicate their approval.**

WHAT IF I BOUGHT SHARES ON SOMEONE ELSE'S BEHALF?

89. 87. If you purchased or otherwise acquired Scottish Re Ordinary Shares, Preferred Shares and/or HyCU Shares during the Class Period for the beneficial interest of a person or organization other than yourself, you must either (i) request from the Claims Administrator, within fourteen (14) days after receipt of this Notice, additional copies of the Notice and Proof of Claim and within fourteen (14) days after receipt of the copies from the Claims Administrator mail them to the beneficial owners, or (ii) provide the names and addresses of such persons no later than fourteen (14) days after you receive this Notice to *In re Scottish Re Group Securities Litigation,* c/o [*Claims Administrator, Address to be provided*].  If you choose the second option, the Claims Administrator will send a copy of the Notice to the beneficial owner.  Upon full compliance with these directions, such nominees may seek reimbursement of their reasonable expenses actually incurred, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought.  Copies of this Notice may also be obtained from the Claims Administrator's website www._____ or by calling toll-free 1-800-___-____, or may be downloaded from the settlement website, www._____.com.

CAN I SEE THE COURT FILE?  WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?

90. 88. This Notice contains only a summary of the terms of the proposed Settlement.  More detailed information about the matters involved in the Action is available at www._____.com, including, among other documents, copies of the Stipulation, Proof of Claim form, the Court's Order on the Defendants' motions to dismiss the First Complaint and the

24

parties' submissions concerning those motions.  The Amended Complaint was filed under seal in accordance with the terms of the Stipulated Protective Order entered by the Court because it contains information that had been designated "confidential" by Defendants.

91. 89. All inquiries concerning this Notice should be directed to:

*In re Scottish Re Group Securities Litigation*
*% Claims Administrator*
*Address TBD*

**OR**

Salvatore J. Graziano, Esq.
Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(800) 380-8496
Email: blbg@blbglaw.com
**Lead Counsel**

**DO NOT CALL OR WRITE THE COURT OR THE OFFICE OF THE CLERK OF COURT REGARDING THIS NOTICE.**

Dated: _____, 2008

By Order of the Clerk of Court
United States District Court
for the Southern District of New York

#322466.7
#322466.8

25

**Table A**
**Scottish Re Ordinary Shares Artificial Inflation**

| Date | Artificial Inflation Per Share |
|---|---|
| 2/17/2005 to 7/30/2006 | $9.02 |
| 7/31/2006 to 2/20/07 | $0.72 |

| Date | Offset Per Share |
|---|---|
| 07/31/06 | $3.70 |
| 08/01/06 | $0.82 |
| 08/02/06 | $1.09 |
| 08/03/06 | $0.90 |
| 08/04/06 | $0.22 |
| 02/21/07 | $0.31 |
| 02/22/07 | $0.10 |

| Date | Closing Price | 90-day Lookback Price Per Share |
|---|---|---|
| 02/21/07 | $3.38 | $3.38 |
| 02/22/07 | $3.59 | $3.49 |
| 02/23/07 | $3.68 | $3.55 |
| 02/26/07 | $3.65 | $3.58 |
| 02/27/07 | $3.68 | $3.60 |
| 02/28/07 | $3.68 | $3.61 |
| 03/01/07 | $3.94 | $3.66 |
| 03/02/07 | $4.36 | $3.75 |
| 03/05/07 | $4.35 | $3.81 |
| 03/06/07 | $4.34 | $3.87 |
| 03/07/07 | $4.27 | $3.90 |
| 03/08/07 | $4.21 | $3.93 |
| 03/09/07 | $4.17 | $3.95 |
| 03/12/07 | $3.80 | $3.94 |
| 03/13/07 | $3.70 | $3.93 |
| 03/14/07 | $3.95 | $3.93 |
| 03/15/07 | $4.09 | $3.94 |
| 03/16/07 | $4.06 | $3.94 |
| 03/19/07 | $4.06 | $3.95 |
| 03/20/07 | $3.93 | $3.95 |
| 03/21/07 | $3.97 | $3.95 |
| 03/22/07 | $4.00 | $3.95 |
| 03/23/07 | $4.07 | $3.96 |
| 03/26/07 | $4.01 | $3.96 |
| 03/27/07 | $3.97 | $3.96 |
| 03/28/07 | $4.01 | $3.96 |
| 03/29/07 | $3.99 | $3.96 |
| 03/30/07 | $4.02 | $3.97 |
| 04/02/07 | $3.86 | $3.96 |
| 04/03/07 | $3.99 | $3.96 |
| 04/04/07 | $3.89 | $3.96 |
| 04/05/07 | $4.05 | $3.96 |
| 04/09/07 | $4.03 | $3.97 |
| 04/10/07 | $4.01 | $3.97 |
| 04/11/07 | $4.04 | $3.97 |
| 04/12/07 | $4.36 | $3.98 |
| 04/13/07 | $4.44 | $3.99 |
| 04/16/07 | $4.42 | $4.00 |
| 04/17/07 | $4.51 | $4.02 |
| 04/18/07 | $4.46 | $4.03 |
| 04/19/07 | $4.44 | $4.04 |
| 04/20/07 | $4.48 | $4.06 |
| 04/23/07 | $4.48 | $4.06 |
| 04/24/07 | $4.48 | $4.07 |
| 04/25/07 | $4.50 | $4.08 |
| 04/26/07 | $4.49 | $4.09 |
| 04/27/07 | $4.47 | $4.09 |
| 04/30/07 | $4.43 | $4.10 |
| 05/01/07 | $4.39 | $4.11 |
| 05/02/07 | $4.16 | $4.11 |
| 05/03/07 | $4.38 | $4.11 |
| 05/04/07 | $4.46 | $4.12 |
| 05/07/07 | $4.66 | $4.13 |
| 05/08/07 | $4.81 | $4.14 |
| 05/09/07 | $4.93 | $4.16 |
| 05/10/07 | $4.87 | $4.17 |
| 05/11/07 | $4.80 | $4.18 |
| 05/14/07 | $4.91 | $4.19 |
| 05/15/07 | $4.71 | $4.20 |
| 05/16/07 | $4.78 | $4.21 |
| 05/17/07 | $4.66 | $4.22 |
| 05/18/07 | $5.07 | $4.24 |
| 05/21/07 | $5.23 | $4.25 |

Table B
**Scottish Re Non-cumulative Perpetual Preferred Shares Artificial Inflation**

| Date | Artificial Inflation Per Share |
|---|---|
| 2/17/2005 to 7/30/2006 | $6.03 |
| 7/31/2006-2/20/07 | $0.95 |

| Date | Offset Per Share |
|---|---|
| 07/31/06 | $7.07 |
| 08/01/08 | $2.93 |
| 08/02/08 | $3.39 |
| 08/03/08 | $3.44 |
| 08/04/08 | $0.90 |

| Date | Closing Price | 90-day Lookback Price Per Share |
|---|---|---|
| 02/21/07 | $20.60 | $20.60 |
| 02/22/07 | $20.40 | $20.50 |
| 02/23/07 | $20.01 | $20.34 |
| 02/26/07 | $20.30 | $20.33 |
| 02/27/07 | $20.22 | $20.31 |
| 02/28/07 | $20.51 | $20.34 |
| 03/01/07 | $20.52 | $20.37 |
| 03/02/07 | $22.70 | $20.66 |
| 03/05/07 | $21.57 | $20.76 |
| 03/06/07 | $21.70 | $20.85 |
| 03/07/07 | $22.05 | $20.98 |
| 03/08/07 | $22.62 | $21.10 |
| 03/09/07 | $22.50 | $21.21 |
| 03/12/07 | $22.00 | $21.26 |
| 03/13/07 | $21.04 | $21.25 |
| 03/14/07 | $20.35 | $21.19 |
| 03/15/07 | $20.30 | $21.14 |
| 03/16/07 | $21.76 | $21.17 |
| 03/19/07 | $21.81 | $21.21 |
| 03/20/07 | $21.66 | $21.23 |
| 03/21/07 | $22.30 | $21.28 |
| 03/22/07 | $22.00 | $21.31 |
| 03/23/07 | $21.51 | $21.32 |
| 03/26/07 | $21.41 | $21.32 |
| 03/27/07 | $21.96 | $21.35 |
| 03/28/07 | $21.40 | $21.35 |
| 03/29/07 | $21.49 | $21.36 |
| 03/30/07 | $21.85 | $21.37 |
| 04/02/07 | $21.85 | $21.39 |
| 04/03/07 | $21.50 | $21.39 |
| 04/04/07 | $21.94 | $21.41 |
| 04/05/07 | $21.65 | $21.42 |
| 04/09/07 | $21.77 | $21.43 |
| 04/10/07 | $21.78 | $21.44 |
| 04/11/07 | $21.75 | $21.45 |
| 04/12/07 | $21.75 | $21.46 |
| 04/13/07 | $22.17 | $21.46 |
| 04/16/07 | $22.17 | $21.49 |
| 04/17/07 | $22.35 | $21.52 |
| 04/18/07 | $22.51 | $21.54 |
| 04/19/07 | $22.60 | $21.57 |
| 04/20/07 | $22.60 | $21.59 |
| 04/23/07 | $22.75 | $21.62 |
| 04/24/07 | $22.75 | $21.64 |
| 04/25/07 | $23.00 | $21.67 |
| 04/26/07 | $22.85 | $21.70 |
| 04/27/07 | $22.75 | $21.72 |
| 04/30/07 | $22.50 | $21.74 |
| 05/01/07 | $22.50 | $21.75 |
| 05/02/07 | $22.43 | $21.77 |
| 05/03/07 | $22.91 | $21.79 |
| 05/04/07 | $22.60 | $21.81 |
| 05/07/07 | $23.25 | $21.83 |
| 05/08/07 | $23.65 | $21.87 |
| 05/09/07 | $23.65 | $21.90 |
| 05/10/07 | $23.50 | $21.93 |
| 05/11/07 | $23.90 | $21.96 |
| 05/14/07 | $23.55 | $21.99 |
| 05/15/07 | $23.40 | $22.01 |
| 05/16/07 | $23.10 | $22.03 |
| 05/17/07 | $22.96 | $22.05 |
| 05/18/07 | $23.50 | $22.07 |
| 05/21/07 | $23.50 | $22.09 |

**Table C**

**Scottish Re Convertible Preferred Hybrid Capital Units Artificial Inflation**

| Date | Artificial Inflation Per Share |
|---|---|
| 2/17/2005 to 7/30/2006 | $9.37 |
| 7/31/2006 and thereafter | $0.00 |

| Date | Offset Per Share |
|---|---|
| 07/31/06 | $5.17 |
| 08/01/06 | $1.21 |
| 08/02/06 | $1.43 |
| 08/03/06 | $1.21 |
| 08/04/06 | $0.26 |

Document comparison by Workshare Professional on Wednesday, September 03, 2008 2:58:08 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://BLBG/322466/7 |
| Description | BLBG-#322466-v7-Scottish_Re_Individual_Notice |
| Document 2 ID | PowerDocs://BLBG/322466/8 |
| Description | BLBG-#322466-v8-Scottish_Re_Individual_Notice |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 20 |
| Deletions | 44 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 64 |